IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| AARON GOINS et al., )<br>)<br>    Plaintiffs/Counter Defendants, )<br>)<br>v. )<br>)<br>)<br>TITLEMAX OF VIRGINIA, et al., )<br>)<br>    Defendants/Counter Claimants. ) | Civil Action No. 19-cv-489 |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO
COMPEL ARBITRATIONS AND STAY PROCEEDINGS**

NOW COME Plaintiffs/Counter Defendants identified in Exhibits 1 and 6 hereto ("the moving Plaintiffs") through their counsel and respectfully submit this Brief in support of their Motion for an Order of the Court compelling arbitration of each moving Plaintiff's claims against Defendants/Counter Claimants TITLEMAX OF VIRGINIA, et al. (Defendants) and staying the proceedings in this civil action. As will be shown herein, Defendants' car title loan agreements giving rise to the moving Plaintiffs' claims against Defendants contain valid and enforceable arbitration agreements and the Court should allow the moving Plaintiffs' motion.

**STATEMENT OF THE CASE**

Plaintiffs filed the North Carolina state court Complaint that initiated this civil action on April 4, 2019. (DN 3) Plaintiffs filed their Complaint because Defendants were refusing to voluntarily produce Plaintiffs' arbitration agreements and to stop the running

1

of the applicable statutes of limitation on their claims.[1] (DN3, ¶9) Defendants removed this case to this Court on May 10, 2019. (DN 1)

Defendants in this case are car title loan lenders organized and existing under the laws of states other than North Carolina. A "car title loan" is a short term loan product that is secured by the title to the borrower's motor vehicle. Car title lenders charge extremely high annual rates of interest that greatly exceed the interest rates allowed under the North Carolina usury laws.[2] These rates of interest are in excess of 100% per annum and, in some cases, exceed 200% per annum. For example, in the case of Borrower Treshaun Warren, Defendant TitleMax of Virginia, Inc. charged him an annual rate of interest of 217.16%. (Exhibit 2)

Plaintiffs in this case are all North Carolina residents to whom Defendants have made car title loans at annual rates of interest that far exceed the allowable rates of interest under North Carolina law. By their Complaint, each Plaintiff seeks to recover all statutory and punitive damages due them as a result of Defendants' predatory lending practices, including treble damages and attorneys' fees recoverable pursuant to N.C.G.S. §75-1.1, *et seq*.

## STATEMENT OF THE FACTS

Each Plaintiff has alleged they are a citizen and resident of North Carolina.

---

[1] *See Hawley v. Preferred Mutual Ins. Co.*, 88 Mass. App. Ct. 360, 36 N.E.3d 1284 (2015)(recognizing that some courts have ruled that the initiation of arbitration without the filing of a companion lawsuit does not toll the statute of limitations).

[2] The maximum lawful interest rate in North Carolina is 16% per annum pursuant to N.C.G.S. §24-1.1 or 30% per annum pursuant to N.C.G.S. §53-176 for a licensee under the North Carolina Consumer Finance Act (which Defendants are not).

Complaint. (DN 3, ¶1)  Each Plaintiff has alleged they obtained a usurious car title loan from Defendants. (DN 3, ¶¶ 1,16,17)  Each Plaintiff has alleged Defendants routinely come into North Carolina to solicit or otherwise conduct activities in connection with their car title loan businesses. (DN 3, ¶¶ 4,10, 11,12,13,19,20)  Each Plaintiff has alleged they gave Defendants their North Carolina motor vehicle title and Defendants thereafter perfected a security interest in each Plaintiff's motor vehicle by placing a lien on that motor vehicle through the North Carolina Department of Motor Vehicles in Raleigh. Complaint. (DN 6, ¶ 21)

## SUMMARY OF THE DISPUTE

The North Carolina Consumer Finance Act, N.C.G.S. § 55-164, *et seq*. (the "Act"), without question applies to the alleged conduct and activities of Defendants with regard to the car title loan agreements between Plaintiffs and Defendants.  The Act expressly addresses "Loans Made Elsewhere." at N.C.G.S. § 53-190.  To avoid application of the Act, car title loans "made elsewhere" must meet the requirement that "all contractual activities, including solicitation, discussion, negotiation, offer, acceptance, signing of documents, and delivery and receipt of funds occur entirely outside North Carolina." N.C.G.S. § 53-190(a).  Further, the Act applies when the lender or agent of the lender "comes into this State to solicit or otherwise conduct activities in regard to such loan contracts, " such as,  without limitation,  Defendants' use of the North Carolina DMV to perfect their security interests in Plaintiffs' motor vehicles and their repossession of motor vehicles from North Carolina.  N.C.G.S. § 53-190(b). Finally, the interest laws of North Carolina, incorporated by the Act, deem the loan agreements to be agreements to lend

made in North Carolina. When measured against the allegations contained in Plaintiffs' Complaint, the Act clearly applies.

## QUESTION PRESENTED

By their motion, the moving Plaintiffs present the following question to the Court:

Have the moving Plaintiffs and Defendants entered into arbitration agreements that cover their disputes such that the Court should compel arbitrations of those disputes?

## ARGUMENT

### I. The Moving Plaintiffs And Defendants Have Agreed To Arbitration.

Each of the subject loan agreements contain an arbitration provision that allows the moving Plaintiffs to pursue their claims against Defendants in arbitration. In their Answer (DN 2), at Paragraph 48, Defendants have admitted on information and belief that "each of the agreements that exist between any Plaintiff and any Defendant contains an arbitration provision governing all the claims Plaintiffs assert."

Based upon Defendants' Court-ordered production of the loan agreements they entered into with the moving Plaintiffs, there are ten versions of loan agreements presently before the Court. Each moving Plaintiff entered into at least one of these ten agreements with Defendants. These agreements bear the following document identification numbers:

TM-SC-Customer Agr-V 2.0-04.20.2007

TM-SC-Customer Agr-2nd Lien-V.1.0-02.10.2010

TM-SC-Customer Agr-2d Lien-V.1 0-06.24.2010

TM-SC Supervised Loan Agreement-V.1.04.07.2011

TM-VA-Motor Vehicle Title Loan Agreement-V.1.0-06.13.2011

TM-VA Consumer Finance Loan Agreement -V.1.0-08.23.2013

TM-SC-Supervised Loan Agreement-V.2.1-01.15.2016

TM.TB–SC Supervised Loan Agreement- V3-08.23.2017

TitleMax–VA Motor Vehicle Title Loan Agreement – V.2.1 02.22.2018

TitleMax-Title Bucks–SC Supervised Loan Agreement – V.3. 03.28.2018

The moving Plaintiffs have attached hereto collectively as Exhibit 3 true and accurate exemplar copies of these ten loan agreements.[3] Exhibit 1 identifies for each moving Plaintiff the version of the loan agreement he or she entered into with Defendants.

In all ten versions of these agreements, the parties have expressly agreed that the arbitration provisions shall be governed by the Federal Arbitration Act, 9 U.S.C. §§1 – 16 (the "FAA") Depending on the applicable version of the arbitration agreement the parties have further agreed that each moving Plaintiff shall have the contractual right to have his or her arbitration proceeding administered by either the American Arbitration Association and/or JAMS and/or The National Arbitration Forum.

## II.     The Arbitration Agreements are Favored, Valid and Enforceable.

The FAA establishes a strong federal policy in favor of enforcing arbitration agreements. *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 83 (2002). When a party

---

[3] Plaintiffs are mindful of the Court's admonition against filing voluminous materials unless the materials are essential (LR 7.1(d)) and are not attaching 361 loan agreements. However, if the Court wishes to review each Plaintiff's agreement Counsel will deliver to the Court a disk containing all 361 loan agreements.

5

seeking to compel arbitration proves that the parties entered into a valid arbitration agreement and the claim at issue falls within the scope of the agreement, the court should compel arbitration. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). This prevents parties from ignoring their contractual commitments and running to court whenever the prospect of arbitration appears uninviting. *Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001). To allow otherwise would undermine the clear federal directive in favor of arbitration. *Id.* Indeed, the presumption in favor of arbitration requires the courts to rigorously enforce arbitration agreements, *Moses H. Cone Mem. Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and any doubts regarding the arbitrability of claims must be resolved in favor of arbitration. *Id.*

This Court has recognized that a litigant can compel arbitration under the FAA if he can demonstrate: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *The Estate of Lloyd Jack Trantham, Jr. v. SSC Lexington Operating Company, LLC*, 1:15-CV-726, at *3 (M.D.N.C., January 20, 2016)(Exhibit 4)(citing *Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002). All of these requirements are met here.

### A. A Dispute Exists Between the Moving Plaintiffs and Defendants.

In their Complaint, Plaintiffs have alleged that Defendants, by engaging in the in-state activities set forth in N.C.G.S. § 53-190 and thereafter charging annual rates of interest that exceed the rates of interest allowed under North Carolina law have engaged

6

in predatory lending practices that violate the North Carolina Consumer Finance Act, N.C.G.S. § 55-164, *et seq*., North Carolina interest laws, N.C.G.S. § 24-1.1, *et seq*., and the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1-1 *et seq*. Plaintiffs also allege Defendants are liable to them for punitive damages on account of their predatory lending activities in North Carolina. In their Answer (DN 2) Defendants deny any and all liabilities to Plaintiffs and have counterclaimed against them for both declaratory relief and monetary damages. A clear dispute exists between the parties.

### B. Each Moving Plaintiff's Arbitration Agreement Covers His or Her Dispute with Defendants.

Arbitration is particularly favored in consumer disputes of the type presently before the Court. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280 (1995) (recognizing that arbitration offers advantages to individuals who need a less expensive alternative to litigation). *See also Harris v. Green Tree Fin. Corp.*, 183 F.3d 173 (3d Cir. 1999)( enforcing arbitration provision between borrower and consumer finance company.)

Exhibit 3 contains three different versions of the provision of the agreement which describes the scope of the arbitration agreement to which the parties agreed, all three of which cover each moving Plaintiff's claims and Defendants' Second Defense, Second, Third and Fourth Affirmative Defenses and all of Defendants' Counterclaims.

Agreements TM-SC-Customer Agr-V 2.0-04.20.2007, TM-SC-Customer Agr-2nd Lien-V.1.0-02.10.2010, TM-SC-Customer Agr-2d Lien-V.1 0-06.24.2010, TM-SC Supervised Loan Agreement-V.1.04.07.2011, TM-VA-Motor Vehicle Title Loan

Agreement-V.1.0-06.13.2011 and TM-VA Consumer Finance Loan Agreement-V.1.0-

08.23.2013 define the scope of the arbitration provision as follows:

For purposes of this Waiver of Jury Trial and Arbitration Provision (hereinafter the "Arbitration Provision"), the word "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of the Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Loan Agreement (including the Arbitration Provision), the information you gave us before entering into the Loan Agreement, and/or any past agreement or agreements between you and us; (c) all counterclaims, cross-claims, and third party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based on upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors , managers, members, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity against us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (j) all claims arising from or indirectly to the disclosure by us or related third parties of any non-public personal information about you.

Agreement TM-SC-Supervised Loan Agreement-V.2.1-01.15.2016 defines the

scope of the arbitration provision as follows:

This Clause covers Disputes that would usually be decided in Court and are between us (or a Related Party) and you. In this Clause, the word Disputes has the broadest meaning. It includes all claims related to your application, this Loan Agreement, the Vehicle, the Loan, any Other Loan or your relationship with us. It includes extensions, renewals, refinancings, or payment plans. It includes claims related to collections, privacy and customer information. It includes claims related to the validity of this Loan Agreemen.

Agreements TM.TB–SC Supervised Loan Agreement- V3-08.23.2017, TitleMax –

VA Motor Vehicle Title Loan Agreement–V.2.1 02.22.2018 and TitleMax-Title Bucks –

SC Supervised Loan Agreement–V.3. 03.28.2018 define the scope of the arbitration

8

provision as follows:

In this Clause, "*Dispute*" has a broad meaning. "*Dispute"* includes all claims and disagreements related to my application, this Note, the Vehicle and Loan, or my dealings with Lender. It includes claims and disagreements about any prior applications and agreements. It includes extensions, renewals, refinancings, and payment plans. It includes claims related to collections, privacy, and customer information. It includes claims and disagreements that usually would be resolved in courts. "Dispute' also includes claims and disagreements I have with Related Parties.

This Clause covers disputes that involve Lender (or a Related Party) and me.

Plainly, each moving Plaintiff's claims against Defendants for violations of the North Carolina Consumer Finance Act, N.C.G.S. § 55-164, *et seq.*, the North Carolina usury statutes, N.C.G.S. §24-1.1, *et seq.* and the North Carolina Unfair and Deceptive Trade Practices Act. N.C.G.S. §75-1.1 *et seq.*, are state statutory claims that have arisen directly from the subject loan agreements and, in particular, directly from the most critical term of those agreements - the usurious annual rates of interest – and are within the scope of all of the arbitration agreements. Defendants' defenses and counterclaims, including their claims for declaratory relief, are equally covered by the agreements.

### C. The Loan Agreements in Question Involve Interstate Commerce.

The FAA provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2.

All moving Plaintiffs are residents of North Carolina, Defendants are foreign entities and, at the instruction of Defendants' representatives each moving Plaintiff travelled out of state to memorialize the car title loan transactions at issue. (DN3 ¶ 17).

9

Furthermore, all versions of the arbitration agreements specifically provide that they shall be governed by the Federal Arbitration Act. Courts consider such language as evidence of the satisfaction of the interstate commerce requirement. *Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 954 (N.D. Ohio 2009). *See also Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 479 (1989) (holding that the courts must "rigorously enforce [arbitration] agreements according to their terms."). The loan transactions here easily meet the "involving commerce" requirement.

### D. Defendants Have refused to Participate in Arbitration Absent Court Order.

In their Answer, Defendants, while admitting that all of the loan agreements between moving Plaintiffs and Defendants contain arbitration provisions, have thus far refused to meaningfully participate in arbitrations, including the making of payment of arbitration fees, absent a Court Order. *See* Exhibit 5.

### III. The Moving Plaintiffs Have Not Waived Their Right To Arbitrate By Filing The State Court Action.

Based upon national policy favoring arbitration, the courts will not find a waiver of the right to arbitration resting "mechanically on some act such as the filing of a complaint … ." *Batson Yarn and Fabrics Machinery Group, Inc. v. Sauer-Allma Gmb-Allgauer Maschinenbau*, 311 F. Supp. 68 (D.S.C. 1970). Rather, the party opposing arbitration must establish prejudice or some unduly burden caused by a delay by the party making the demand for arbitration. *Id. See also Almacenes Fernandez, S.A. v. Golodetz*, 148 F.2d 625 (2d Cir. 1945) (justifying the denial of a claim of waiver of the right to arbitration by finding that no "steps of any importance" had occurred in the case.) Here,

10

other than Plaintiffs' filing of the state court action and Defendants' subsequent removal of the case to this Court, there have been no other activities in the cause. No written discovery has been exchanged, no depositions have been taken and, other than the matter presently before the Court, there has been no motion practice. Indeed, the moving Plaintiffs moved the Court to compel arbitration when they filed their complaint in state court. (DN 3, ¶49)

**IV. The Court Should Also Order To Arbitration The Claims Of Those Plaintiffs With Active NCDMV Liens For Whom Defendants Have Not Produced Loan Agreements.**

Finally, in addition to the claims of the Moving Defendants identified in Exhibit 1 the Court should order to arbitration the claims of a subset of Plaintiffs whose motor vehicle titles are encumbered by liens Defendants recorded with the NCDMV. As of this date, and despite repeated requests, Defendants have produced no loan agreements for these particular Plaintiffs. As shown by Exhibit 6 hereto, which are NCDMV generated lien verifications, that subset of Plaintiffs consists of Plaintiffs Shenita Melton, Whitley Teaster, Charmaine Wilson, Leslie McSwain and Jeanette Morgan. This subset of Plaintiffs also includes Anesha McGlockton, Krysal McCree, Wayteria Thomas, Marva Price, Teala Tanton and Ricky Adams.[4]

Obviously, Defendants could not have recorded car title liens with the NCDMV

---

[4] These Plaintiffs are subjects of Plaintiffs' two pending Motions to Amend/Correct the spellings of the names of certain of the Plaintiffs. Plaintiffs have requested the Court to correct the spellings of the names of these Plaintiffs to Anesha McGlocking, Krystal McCree, Yateria Thomas, Marva Prince, Teala Stanton and Rickey Adams, respectively.

11

unless this subset of Plaintiffs had granted Defendants security interests in their motor vehicles when they signed their loan agreements. This subset of Plaintiffs has no reason to believe their loan agreements are in any material respects different from the loan agreements attached hereto as Exhibit 3. They also have no reason to believe their loan agreements do not contain arbitration provisions identical to one of the three versions shown in Exhibit 3. Therefore, this subset of Plaintiffs respectfully asks the Court to order arbitrations of their claims against Defendants, and further, to order that Defendants produce their loan agreements that gave rise to the NCDMV liens identified in Exhibit 6 hereto.

## **CONCLUSION**

For the reasons stated herein, each moving Plaintiffs identified in Exhibits 1 and 6 respectfully pray the Court for an Order compelling arbitration of her or her claims against Defendants and staying the proceedings in this civil action pending the completion of arbitration. The moving Plaintiffs further pray the Court to Order that these arbitrations proceed pursuant to and in strict compliance with the terms of each moving Plaintiff's arbitration agreement with Defendants, including all terms and provisions concerning the payment of arbitration fees and expenses.

This is the 30th day of September, 2019.

*/s/ Andrew H. Brown*
Andrew H. Brown
N.C. State Bar No. 28450
Attorney for Plaintiffs

12

**FOR THE FIRM:**

**BROWN, FAUCHER, PERALDO & BENSON, PLLC**.
822 North Elm Street, Suite 200
Greensboro, NC  27401
(336) 458-0058 (telephone)
(336) 273-5597 (facsimile)
drew@greensborolawcenter.com

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing document complies with the word count limits contained in LR 7.3(d)(1).

>*/s/ Andrew H. Brown*
>Andrew H. Brown
>N.C. State Bar No. 28450
>Attorney for Plaintiffs

**FOR THE FIRM:**

**BROWN, FAUCHER, PERALDO & BENSON, PLLC**.
822 North Elm Street, Suite 200
Greensboro, NC  27401
(336) 458-0058 (telephone)
(336) 273-5597 (facsimile)
drew@greensborolawcenter.com

## CERTIFICATE OF SERVICE

       This is to certify that on September 30, 2019, a copy of the foregoing BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATIONS AND STAY PROCEEDINGS was filed with the Clerk of Court using CM/ECF system, which will send notification of such filing to the following:

Christopher W. Jones (Chris.Jones@wbd-us.com)
Samuel B. Hartzell (Sam.Hartzrll@wbd-us.com)
Scott D. Anderson (Scott.D.Anderson@wbd-us.com)

                                        */s/ Andrew H. Brown*
                                        Andrew H. Brown
                                        N.C. State Bar No. 28450
                                        Attorney for Plaintiffs

**FOR THE FIRM:**

**BROWN, FAUCHER, PERALDO & BENSON, PLLC**
822 North Elm Street, Suite 200
Greensboro, NC  27401
(336) 458-0058 (telephone)
(336) 273-5597 (facsimile)
drew@greensborolawcenter.com