# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| AARON GOINS et al., ) <br> ) <br> Plaintiffs/Counter Defendants, ) <br> ) <br> v. ) <br> ) <br> ) <br> TITLEMAX OF VIRGINIA, et al., ) <br> ) <br> Defendants/Counter Claimants. ) | Civil Action No. 19-cv-489 |

**PLAINTIFFS' BRITTANY CALLAHAN, RODNEY COBIA, JOHNNY HARDISION, ELLA MANNS, CEDRIC MOSES AND CRYSTAL OWENS MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

NOW COME Plaintiffs/Counter Defendants Brittany Callahan, Rodney Cobia, Johnny Hardison, Ella Manns, Cedric Moses and Crystal Owens (the "Moving Plaintiffs"), through their counsel and pursuant to LR7.2, and respectfully submit this Memorandum in support of their Motion for a Voluntary Dismissal Without Prejudice of the Moving Plaintiffs' claims against Defendants/Counter Claimants TITLEMAX OF VIRGINIA, et. al. (Defendants) pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.

## STATEMENT OF THE CASE

Plaintiffs filed the North Carolina state court Complaint that initiated this civil action on April 4, 2019. (DN 3) Plaintiffs filed their Complaint because Defendants were refusing to voluntarily produce Plaintiffs' arbitration agreements and to stop the running

1

of the applicable statutes of limitation on their claims.[1] (DN3, ¶9) Defendants removed this case to this Court on May 10, 2019. (DN 1)

Defendants in this case are car title loan lenders organized and existing under the laws of states other than North Carolina. Similar cases now are ongoing against several other out of state car title loan providers—some of which have similar names to TitleMax such as "LoanMax" and "TitleBucks." A "car title loan" is a short term loan product that is secured by the title to the borrower's motor vehicle. Car title lenders charge extremely high annual rates of interest that greatly exceed the interest rates allowed under the North Carolina usury laws.[2] These rates of interest are in excess of 100% per annum and, in some cases, exceed 200% per annum.

The Moving Plaintiffs in this case are all North Carolina residents to whom Defendants were believed to have made car title loans.

## STATEMENT OF THE FACTS

Plaintiffs each alleged they are a citizen and resident of North Carolina. Complaint. (DN 3, ¶1) Plaintiffs further allege they obtained a usurious car title loan from a lender they believed to be TitleMax. (DN 3, ¶¶ 1,16,17) Each Plaintiff has alleged Defendants routinely come into North Carolina to solicit or otherwise conduct activities in connection with their car title loan businesses. (DN 3, ¶¶ 4,10, 11,12,13,19,20) Each Plaintiff has

---

[1] *See Hawley v. Preferred Mutual Ins. Co.*, 88 Mass. App. Ct. 360, 36 N.E.3d 1284 (2015)(recognizing that some courts have ruled that the initiation of arbitration without the filing of a companion lawsuit does not toll the statute of limitations).
[2] The maximum lawful interest rate in North Carolina is 16% per annum pursuant to N.C.G.S. §24-1.1 or 30% per annum pursuant to N.C.G.S. §53-176 for a licensee under the North Carolina Consumer Finance Act (which Defendants are not).

2

alleged they gave Defendants their North Carolina motor vehicle title and Defendants thereafter perfected a security interest in each Plaintiff's motor vehicle by placing a lien on that motor vehicle through the North Carolina Department of Motor Vehicles in Raleigh. Complaint. (DN 6, ¶ 21) Subsequent to the Court's order compelling Defendants to produce all of their contracts with the Plaintiff, it was discovered that this small subset of Plaintiffs in the action were mistaken about which car title loan provider they had used. As such, and to minimize further actions and expense in the matter, the moving Plaintiffs now seek to have the matters dismissed. TitleMax apparently desires to press forward on its Counterclaims (despite not having evidence of contracts) but the Moving Plaintiffs desire to make clear that TitleMax is doing so at its own expense and that the Moving Plaintiffs are willing to abandon their claims without the need for such expense. (Exhibit E).

The confusion here was caused by far more than just the sheer number of Claimants and the similar names of the car title loan providers in the marketplace—although those realities alone would likely produce some party identification problems for what amounts to less than 5% of the TitleMax claimant pool. However, in this matter, TitleMax, unlike all of its competitors, engaged in what is now over a one year effort to thwart Plaintiffs' ability to obtain copies of their contracts allowing the proper parties to assert their rights in arbitration and have each matter heard on its merits.

Following formal notification in February, 2019 of Plaintiffs' counsels' office representation of the claimants in what would become the *Goins* matter (Exhibit A), the Defendants, rather than simply to gather up and provide the contracts for the

3

Undersigned's clients, instead refused to do so. (Exhibit B) At least for this initial round, TitleMax did provide a list of Claimants they could not identify in their records on February 22, 2019. (Exhibit A) By way of example, "Whitley Teaster" was among the initial claimants. TitleMax wrote at that time that they were "unable to identify an account" for Ms. Teaster due to "noncompliance with the notice requirements." (Exhibit A). Less than an hour later, the Undersigned showed them the DMV website printout demonstrating Teaster had an active[3] TitleMax lien on her North Carolina title. (Exhibit C). This was done for many others as well. No response came. No contracts were gathered and provided. Instead, TitleMax waited until September, 2019—and only after ordered to do so by Judge Webster on seven (7) days notice—to search for Ms. Teaster's agreement which was provided for the first time in compliance with the Court Order seven months later.

For other Plaintiffs, almost certainly simply due to oversight, TitleMax violated Judge Webster's Order and did not even produce contracts that it actually possessed. Take, for example, Plaintiff "Jaquisha Davis." Ms. Davis' name appears correctly on the soon to be filed *Nicholson* claimants in the initial demand letter of April 4, 2019. (See Exhibit D). TitleMax refused to provide her contract or even confirm that she was a TitleMax client. (Exhibit B). The Undersigned took her at her word and included her among the Plaintiffs anyway—and she was listed as a Plaintiff in the *Nicholson* Complaint

---

[3] Only active liens appear on the NC DMV website. Therefore, if there was, for example, a post lien with LoanMax that has been cancelled it would not appear on the website.

(and again spelled correctly) filed in May, 2019. Judge Webster, after Defendant requested that Plaintiff's counsel prove he actually represented Ms. Davis, ordered that TitleMax produce her contract. (*Nicholson* DN 14). On August 23, 2019, TitleMax filed a "Notice of Compliance" representing that it had complied with the Order. (*Nicholson* DN 15) To the contrary, no contract for Jaquisha Davis was included in TitleMax's court ordered production. It was only after an additional follow up from Plaintiffs' counsel that Ms. Davis' loan agreement was produced for the first time, without apology, in January, 2020. (Exhibit E). Mistakes happen, particularly with so many claimants, and Plaintiffs' counsel ought be allowed to rely on and evaluate the word of their clients—even when TitleMax affirmatively denies that no such contract exists as was the case for Ms. Teaster and Ms. Davis. Without the ability to do so, many claimants would not have had their day on the merits.

To make matters worse, on the subsequent set of Claimants in the *Nicholson* case, TitleMax outright refused not only to provide the contracts despite requests in April, 2019—even refusing to identify which Claimants they could not locate. (Exhibit B) Plaintiffs' counsel predicted in Exhibit B that the need and cost for just this very motion could be prevented if Counsel worked together to narrow the issues. No cooperation came. Even today, after Judge Webster's Order that the contracts ought be produced, TitleMax still refuses to provide contracts or even disagree that the list provided of the most recent Claimants (on August 7, 2019) is or is not accurate according to its records. (Exhibit E, F).

To justify their noncooperation, TitleMax created a narrative that Plaintiffs'

5

counsel was not actually retained by its own clients and that each client (many whose vehicles had been taken) would need to travel at their own expense to out of state TitleMax locations to obtain their own contract. Many did so, the contracts were not provided by the TitleMax location (see Exhibit G, previously filed and attached to DN 12) and, instead, the Undersigned's clients were told they should ask their own attorneys' for the contracts—knowing full well that the claimants' attorney did not have such. TileMax further used this as an opportunity to pepper the Claimants with questions about why or if they had an attorney and that, if they did not, that the contracts would be provided. Unsurprisingly, a couple of them allegedly indicated they did not have an attorney in an effort to obtain the contract. As a result, TitleMax used that as an excuse (see Exhibit B) not to produce anyone's contract and asked the Court to review engagement agreements between each Plaintiff and the Undersigned law firm, a process which took over a hundred hours of time for the Undersigned to gather the documents and legible signatures throughout the state in an organized fashion for Judge Webster's review. Significant time also was taken by Judge Webster's office as well—only to reach the ultimate conclusion that none of Plaintiffs' counsels' clients had been fabricated. (DN 19). The Court has already admonished counsel to work "cooperatively and diligently to resolve issues in this matter.". (Text Order of Judge Webster, July 24, 2019) All of this, as well as the time necessary to review these motions, could have been avoided with simple cooperation to narrow the issues and parties before the Court.

     As a result of all of this, a small subset of Plaintiffs in this action appear to have been named in error by both the Plaintiffs in the Complaint and the Defendants in the

Counterclaim (seeking a declaratory judgment about contracts which apparently do not exist). As such, the Moving Plaintiffs have now moved to have those matters dismissed without prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.

**QUESTION PRESENTED**

By their motion, the moving Plaintiffs present the following question to the Court:

Should the Court simply dismiss their claims and the claims asserted against them without prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure?

**ARGUMENT**

**I.      The Moving Plaintiffs And Defendants Have No Current Basis to Assert Claims Against Each Other.**

Despite all of the methods taken, including an apparently exhaustive search by Defendants, unlike with dozens of other Plaintiffs whose records were located, no records now exist showing the Moving Plaintiffs had a loan with a TitleMax Defendant. The Moving Plaintiffs have now filed the attached Declarations withdrawing (and apologizing for) their mistaken belief that TitleMax was their loan provider. (Exhibit H). As a result, there is now no basis for the Plaintiffs' claims (nor apparently the Counterclaims given the nonproduction of these Plaintiffs' contracts).

**II.     The Filings Were Made in Good Faith Given the Circumstances**

As outlined above, Plaintiffs' counsel attempted to work with TitleMax to identify any misfilings presuit. The confusion here was caused by far more than just the sheer number of Claimants and the similar names of the car title loan providers in the

7

Case 1:19-cv-00489-LCB-JLW   Document 45   Filed 01/23/20   Page 7 of 13

marketplace—although those realities alone would likely produce some party identification problems for what amounts to less than 5% of the TitleMax claimant pool. Had the Undersigned been forced to take Titlemax's representation that it did not have a contract with each Plaintiff as absolutely correct, dozens of Claimants like Ms. Teaster and Ms. Davis whose did not have their contracts (many had, in fact, been in glove compartments of cars taken by TitleMax) would never have had their opportunity to have their matters decided by the arbitrator or the Court. Given the circumstances, the filings were made in good faith at the time they were made.

### III. The Moving Plaintiffs Have Not Caused Any Damage to the Defendants Since They are Promptly Seeking Dismissal of their Action

Nothing additional has occurred in the Action yet because these Moving Plaintiffs joined in the Action. Had there been 259 Plaintiffs rather than 265 Plaintiffs in this filed civil action, no additional Defense work would have occurred as of yet. Having now identified the Moving Plaintiffs to them, the Defendants have attempted to begin to seek discovery from them—which would create just such additional work in the individual cases—rather than simply accept the moving Plaintiffs' offer to have the matters dismissed. The defendants had no basis to file their Counterclaims seeking a Declaratory Judgment and Breach of Contract regarding their contracts with the moving Plaintiffs—since they had none. Rather than waste money seeking discovery on the basis of these Counterclaims or unilaterally notice depositions, the Moving Plaintiffs now simply seek dismissals without prejudice. Rule 41(a)(2) of the Federal Rules of Civil Procedure. The Moving Plaintiffs have attempted and failed to obtain consent from TitleMax to simply

8

file a Consent Dismissal of all claims under Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure. If TitleMax or one of the moving Plaintiffs later discovers that the parties did have a contract (like TitleMax did with Jaquisha Davis), the Moving Plaintiff could simply refile the matter. Dismissing the matters now before either side must do additional work seems like the most prudent and judicially efficient way to proceed. Defendants Counterclaims for Declaratory Judgment and Breach of Contracts regarding the contracts with these Plaintiffs remain pending despite the fact that no such contracts have been produced by Defendants. If Defendants desire to proceed further at this time despite their representation that no such contracts exists, they are certainly free to do so.

**IV.    Seven Plaintiffs Remain Without a Motion to Compel Arbitration or a Motion to Dismiss**

Of the 265 Plaintiffs in this *Goins* action, 258 have now either made a motion to compel arbitration or a motion to dismiss their claim. The remaining seven (7) Plaintiffs are Perry Cuthrell, Jr., Michael Forester, Jr., Mary McBride, Kajuane Rorie, Edna Taylor, James Wilson, Jr. and Tonya Woods. Neither TitleMax nor those seven (7) Plaintiffs have yet produced documents (only oral representations) supporting the allegations in the Complaint and Counterclaim regarding the existence of these contracts. Given these clients circumstances in terms of ability to communicate, despite significant efforts to reach them over the last few months, the undersigned does not yet have permission from those clients to seek a dismissal on their behalf. The undersigned will continue to work to reach these Plaintiffs, obtain additional information and/or permission to seek a dismissal, and promptly report any developments with these seven (7) remaining Plaintiffs

9

to the Court. Again, Defendants Counterclaims for Declaratory Judgment and Breach of Contracts regarding the contracts with these Plaintiffs remain pending despite the fact that no such contracts have been produced by Defendants.

## CONCLUSION

For the reasons stated herein, the Moving Plaintiffs seek to have their matters dismissed without prejudice with all parties to bear their own costs.

This is the 23rd day of January, 2020.

*/s/ Andrew H. Brown*
Andrew H. Brown
N.C. State Bar No. 28450
Attorney for Plaintiffs

**FOR THE FIRM:**

**BROWN, FAUCHER, PERALDO & BENSON, PLLC**.
822 North Elm Street, Suite 200
Greensboro, NC 27401
(336) 458-0058 (telephone)
(336) 273-5597 (facsimile)
drew@greensborolawcenter.com

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing document complies with the word count limits contained in LR 7.3(d)(1).

                                                */s/ Andrew H. Brown*
                                                Andrew H. Brown
                                                N.C. State Bar No. 28450
                                                Attorney for Plaintiffs

**FOR THE FIRM:**

**BROWN, FAUCHER, PERALDO & BENSON, PLLC**.
822 North Elm Street, Suite 200
Greensboro, NC  27401
(336) 458-0058 (telephone)
(336) 273-5597 (facsimile)
drew@greensborolawcenter.com

**CERTIFICATE OF SERVICE**

       This is to certify that on January 23, 2020, a copy of the foregoing was filed with the Clerk of Court using CM/ECF system, which will send notification of such filing to the following:

Christopher W. Jones (Chris.Jones@wbd-us.com)
Samuel B. Hartzell (Sam.Hartzrll@wbd-us.com)
Scott D. Anderson (Scott.D.Anderson@wbd-us.com)

                                        */s/ Andrew H. Brown*
                                        Andrew H. Brown
                                        N.C. State Bar No. 28450
                                        Attorney for Plaintiffs

**FOR THE FIRM:**

**BROWN, FAUCHER, PERALDO & BENSON, PLLC**
822 North Elm Street, Suite 200
Greensboro, NC 27401
(336) 458-0058 (telephone)
(336) 273-5597 (facsimile)
drew@greensborolawcenter.com