# AMERICAN ARBITRATION ASSOCIATION
AAA Case Number: : 01-19-0001-4344

| |
|---|
| **Dominick Ramone Hinson**                      **Claimant,** <br><br> v. <br><br> **TitleMax of Virginia, Inc. d/b/a TitleMax** <br><br>                                         **Respondent.** |

## AWARD OF THE ARBITRATOR

I, James H. Locus, Jr., THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the parties, each represented by counsel, at an evidentiary hearing conducted by Zoom on November 18, 2020, do hereby make the following award:

A.    Background

This matter was brought pursuant to a title loan agreement entered into on July 1, 2016 between the Claimant and the Respondent. The undisputed terms of the Loan Agreement required that Claimant remit eleven monthly payments of $172.82 beginning in August 2016 and one final payment of $172.88 on July 1, 2017. The Agreement contained a clause in which the borrower and the lender agreed to waive trial by jury and proceed by arbitration.

Although the parties disputed certain factual issues, the following evidence is not contested. Claimant, a citizen of North Carolina, became aware (through his mother) of Respondent, a Virginia business, that made short-term loans using the borrower's vehicle as security. Claimant traveled to Respondent's facility in Martinsville, Virginia where he

negotiated and signed a loan agreement and received the agreed upon funds.

While the parties dispute the actual number of payments made, there is no dispute that one payment was in fact recorded by the Respondent. Claimant concedes that he did not make all payments required by the Loan Agreement. After Claimant defaulted on the loan, Respondent had the vehicle repossessed and sold by their agent. Both the sale and repossession took place in North Carolina.

B. Issues

Claimant raises several issues. He contends that Respondent's practices violated the North Carolina Consumer Finance Act, N.C.G.S. Section 53-164 et seq. More specifically, he alleges a violation of N.C.G.S. Section 53-190(a), which provides in part that "(N)o loan contract made outside this State in the amount or of the value of fifteen thousand dollars ($15,000) or less for which greater consideration or changes that are authorized by G.S. 53-173 ["computation of interest; application of payments; limitation on interest after judgment; limitation on interests after maturity of the loan"] or G.S. 53-176 ["Rates, maturities and amounts"] of this Article have been charged, contracted for, or received, shall be enforced in this State. Furthermore, N.C.G.S. Section 53-190(b) reads as follows:

> If any lender or agent of a lender who makes loan contracts outside this State in the amount or of the value of fifteen thousand dollars ($ 15,000) or less, comes into this State to solicit *or otherwise conduct activities in regard to such loan contracts*, then such lender shall be subject to the requirements of this Article. (Emphasis added).

Claimant seeks compensatory damages under the Consumer Finance Act and further argues that such damages should be tripled pursuant to N.C.G.S. Section 75-1.1, the Unfair and

Deceptive Practices Act (UDPA). As part of his UDPA contention, Claimant also seeks reasonable attorney's fees pursuant to N.C.G.S. Section 75-16.1. In the alternative, Claimant seeks to recover for violation of North Carolina's usury statutes, N.C.G.S. Section 24-2.1, et seq.

Respondent raises several defenses. First Respondent argues that the loans were created entirely outside of North Carolina and that the laws of North Carolina do not apply. In the alternative, Respondent also argue that under the dormant commence clause, a state may not regulate commerce occurring wholly outside its borders. Specifically, Respondent contents this statute violates the Commerce Clause of the United States Constitution because it would improperly promote and project the laws of one state (North Carolina) onto a valid contract (Loan Agreement) that was validly made, entered, and existing pursuant to the laws of another state (Virginia). Finally, Respondent challenge petitioner's proposed recovery, stating that actual damages and treble damage are not both recoverable.

C. Discussion

*Constitutional Claims*. Respondent argues that the statute violates the Commerce Clause of the United States Constitution. In general, an arbitrator should take a state law as it is written. However, in this instance, since this question appears to be dispositive on the remaining issues, it will be addressed to the extent it has been challenged by the Respondent.

At the outset, it is noted that there is longstanding precedence that State laws that regulate evenhandedly to effectuate legitimate local public interest will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. The Respondent has the legal burden to make a sufficient showing that the "burden imposed" is clearly excessive. I find that the Respondent has not met this burden.

It is well established that a law is discriminatory if it places an impediment upon "a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State."

-3-

"Discrimination" for purposes of the dormant Commerce Clause is "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *DirecTV, Inc. v. State of North Carolina*, 178 N.C. App. 659, 661-62, 632 S.E.2d 543, 546 (2006).

Commerce Clause claims are subject to a two-tiered analysis. The first tier, a virtually per se rule of invalidity, applies where a state law discriminates facially, in its practical effect, or in its purpose. The second tier applies if a statute regulates evenhandedly and only indirectly affects interstate commerce. In that case, the law is valid unless the burdens on commerce are clearly excessive in relation to the putative local benefits. *Waste Indus. USA, Inc. v. State,* 220 N.C. App. 163, 169, 725 S.E.2d 875, 881 (2012). "In either situation the critical consideration is the overall effect of the statute on both local and interstate activity." *North Carolina Ass'n of Elec. Tax Filers v. Graham,* 333 N.C. 555, 565-66, 429 S.E.2d 544, 550 (1993).

<u>i. Facial Discrimination</u>

The statute is not facially discriminatory. A facial challenge to a legislative act is . . . the most difficult challenge to mount successfully. The Respondent must establish that no set of circumstances exists under which [the statute] would be valid. Moreover, the challenger must demonstrate there is an "explicit discriminatory design to the [statute]." *DirecTV, Inc.,* 178 N.C. App. at 663, 632 S.E.2d at 547.

Facially, Respondent has not produced sufficient evidence to show that this statute explicitly put a greater burden on Respondent solely because its business is generated from out-of-state. Furthermore, Respondent has failed to demonstrate an explicit discriminatory design in the statute. Based on the foregoing, it is concluded that Respondent has failed to produce sufficient evidence that the statute is facially discriminatory.

<u>ii. Discrimination in its Practical Effect</u>

In order to successfully argue that the statute is discriminatory in its practical effect, the Respondent bears the initial burden of showing that this statute has a discriminatory effect on interstate commerce. *DirecTV, Inc.*, 178 N.C. App. at 665, 632 S.E.2d at 548.

-4-

Again, there was not sufficient evidence in the record to prove that the statute has impacted TitleMax's operations more heavily based on the fact that it is crossing state lines. Moreover, there is not sufficient evidence in the record to support Respondent's contention that this statute affected in-state and out-of-state businesses differently. Based on the aforementioned reasons, Respondent has failed to produce sufficient evidence that this statute is discriminatory in its practical effect in violation of the Commerce Clause.

D. Findings

(1) I find that Respondent has not come forward with sufficient evidence to support their contentions that the statute is unconstitutional and thus this argument is overruled. In addition, I find based on the evidence in the record, that the loan transactions between Claimant and Respondent met the requirements of N.C.G.S. Section 53-190(a) in that the relevant activities described in that section occurred outside of the state of North Carolina. However, I also find:

a.  That the perfection of the Claimant's lien with the North Carolina Department of Motor Vehicle of North Carolina occurred in North Carolina;

b.  That the repossession of the Claimant's vehicle by Respondent's agent in North Carolina;

c.  That the sale of Claimant's vehicle in North Carolina;

d.  That the issuance of post-agreement letters and texts including delinquency notices by Respondent to Claimant sent to the North Carolina address; and

e.  That Respondent accepted payments from North Carolina

constituted activities contemplated by or within the scope of the North Carolina Consumer Finance Act (North Carolina General Statutes, Section 53-164. et seq.). While it may be argued that Section 53-190(a) applies only to activities prior to and coincident with the formation of the contract, Section 53-190(b) cannot be read to be so limited when it refers to a lender coming into the State to "otherwise conduct activities in regard to such loan contracts."

(2) I find that Respondent's repossession and sale of the Claimant's vehicle in accordance with the loan provisions did violate North Carolina General Statute 75-1.1.

-5-

(3) Claimant alleged that he made four payments of $172.82, but there is evidence in the record of only one payment in that amount being made by the Claimant. Claimant presented evidence that the value of the vehicle was $6,400.00. Claimant has provided reasonable evidence that his actual damages was one payment of $172.82 and the fair market value of the vehicle at $6,400.00 which totaled $6,572.82.

(4) Claimant also proposes that the damages be trebled under North Carolina's Unfair and Deceptive Trade Act (UDPA), and provided authority that violation of the CFA is a per se violation of the UDPA, entitling him to those treble damages. I agree with Claimant's argument on this point and make the adjustment in the final award to $19,718.46.

(5) Claimant requests an award of reasonable attorney fees under the UDPA. That statute provides for recovery of attorney fees where there is a finding that "the party charged has willfully engaged in the act or practice and there was an unwarranted refusal by such party to fully resolve the matter." N.C. Gen. Stat §75–16.1  Although it is clear that Respondent has willfully engaged in the prohibited practices, I have not seen anything in the record regarding efforts to resolve this matter. Accordingly, and in my discretion, I decline to award recovery of attorney's fees.

E.  Conclusion

In conclusion, I order that Respondent pay Claimant the amount of $19,718.46 which is triple the amount of actual damages that he has proved. The foregoing sum shall be paid on or before thirty (30) days from the date of this Award. The administrative fees and expenses of the American Arbitration Association totaling $2,654.00 and the compensation for the Arbitrator totaling $2,500.00 shall be borne as incurred by the Parties. This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

Date:    January 5, 2021

*James H. Locus, Jr*
_____
JAMES H. LOCUS, JR.
AAA ARBITRATOR