# EXHIBIT A

JAMS ARBITRATION CASE REFERENCE NO. 1440007035

Burns, Lashall
Claimant,

and

TitleMax of South Carolina
Respondent.
_____

ORDER ON PARTIES' MOTIONS FOR SUMMARY DISPOSITION

This matter came to arbitration in accordance with paragraphs 23 and 24, pages 4-6 of the Supervised Loan Agreement ("the Agreement"), signed by the parties hereto on June 21, 2018 and by the Order to Compel Arbitration pursuant to 9 U.S.C. Sec. 4, signed April 22, 2020 by the Honorable Loretta C. Biggs, United States District Judge. Counsel for the parties have filed separate Motions for Summary Disposition on June 30, 2021 ("Motions"). Both Motions have been fully briefed and will be decided herein with one Order by the undersigned Arbitrator ("the Arbitrator"). For efficiency, Claimant's Motion shall be designated MO-C and Respondent's shall be designated MO-R.

FINDINGS OF FACTS AND LEGAL ANALYSIS

Claimant, Lashall Burns ("Burns") is a resident of Charlotte, North Carolina who on June 21, 2018 voluntarily drove to Respondent's, TitleMax of South Carolina, ("TitleMax") office location in Fort Mill, South Carolina to discuss entering into a car loan agreement with TitleMax.

TitleMax is a Supervised Lender authorized by South Carolina Department for Consumer Affairs ("SCDCA") to engage in the business of making supervised loan agreements in South Carolina, (TitleMax Ex. C Affidavit Christi Craft ("Craft Aff.")).

TitleMax is regulated and audited by South Carolina State Board of Financial Institutions, Consumer Finance Division ("CFD"). *id.*

Burns drove to South Carolina to discuss all loan terms, had her car inspected, signed the Loan Agreement ("the Agreement") and received the loan proceeds in accordance with the Agreement all on June 21, 2018 while physically present in the TitleMax office in Fort Mills, South Carolina. *id.*

The Agreement unambiguously contains a choice of law provision which affirms that the Agreement shall be governed by the laws of the State of South Carolina. (TitleMax Ex. D p.4). Burns paid off the loan in its entirety on March 9, 2020. *id* Ex. E.

1

On May 8, 2020 Burns filed her Demand for Arbitration against TitleMax commencing this arbitration and alleging the following violations of North Carolina statutory law:
- Violation of the North Carolina Consumer Finance Act (NCCFA) (N.C. General Statutes sec. 53-165 *et. seq*);
- In the alternative, claims for damages under the North Carolina usury statutes (*id* sec 75-1.1);
- Claims under the Unfair and Deceptive Trade Practices Act (UDTPA, sec. 75-1.1); and
- A derivative claim for punitive damages;

In addition to the enforceable choice of law provision, both North Carolina and South Carolina follow the principle of *lex loci contractus*. (TitleMax Ex. D p. 4).

Burns directly challenges the validity of her Agreement with TitleMax and its terms which she alleges are against public policy and are therefore unenforceable under North Carolina law. Burns does not agree with the application of the choice of law provision in their Agreement.

In Burns' Declaration dated June 21, 2021, she states that she was aware of ads on TV for TitleMax, as well as on the radio, while in North Carolina. (Burns Decl.par.3-4). TitleMax stated that it is their standard business procedure not to advertise in North Carolina. (Craft Aff.)

Burns called TitleMax in South Carolina from North Carolina. As a result of that call she drove to the TitleMax office in Fort Mill, SC to discuss a loan on her car. By her own admission, she initiated the phone call to TitleMax and was told she would need to bring her car to South Carolina to discuss a loan. (Burns Decl.).

As stated in Burns' Response to TitleMax's Motion, "It is the paramount public policy of North Carolina to protect North Carolina resident borrowers through the application of NC interest laws." NC. Gen.Stat. Sec 24-2.1(g). Burns contends that any choice of law provision in a contract which violates this public policy is unenforceable in North Carolina courts. See p. 5 of her Response. Accordingly, Burns has plead the statutorily created tort damages under the NCCFA which require return of any principal and interest collected on usurious loans.

From the Arbitrator's reading of the submissions, North Carolina will not enforce a contract that violates its public policy regarding a legitimate state interest. North Carolina's relevant statutes are those which control activities within North Carolina that violate its public policy and, therefore, its statutes.

In both Burns' and TitleMax's submissions, MO-C and MO-R, there are discussions of the impact of the Dormant Commerce Clause of the United States Constitution in this case. This Constitutional provision would be violated in this case only if North Carolina Statutes purported to control another state's business, in this case its contracts, when all contractual activities occurred outside North Carolina. Burns attempts to attach contract activities to North Carolina so that its statutes can hold her contract with TitleMax unenforceable. Burns argues that hearing a TV or radio ad, or her initiating a phone call in North Carolina to TitleMax in South Carolina were "solicitations" by TitleMax. Burns further proposes that perfecting TitleMax's security interest on Burns' car by filing lien documents with the DMV in North Carolina, is further nexus to the applicability of the North Carolina statues. These attempts are not persuasive and do not

2

constitute contractual activities as contemplated and listed in the North Carolina statutes to justify voiding a South Carolina contract.

Section 53-190 of the North Carolina Consumer Finance Act provides, in the "Loans Made Elsewhere" section:

> (a) No loan contract made outside this State in the amount of the greater value of fifteen thousand dollars ($15,000) or less for which greater consideration or charges than are authorized by G.S. Sec 53-173 and 176 of this Article have been charged, contracted for or received, shall be enforced in this State. Provided, the following shall not apply to loan contracts in which all contractual activities, including solicitation, discussion, negotiation, offer, acceptance, signing of documents, and delivery and receipt of funds, occur entirely outside North Carolina. N.C. Gen.Stat. Sec 53-190(a).

Also, North Carolina's usury law similarly limits its application to only "extension[s] of credit" where "solicitation[s]," "communication[s]" or "agreement[s] to lend" occurred in North Carolina. See N.C. Gen. Stat. Sec 24-2.1. Clearly both of these "Loans Made Elsewhere" statutes focus on contract formation activities, not on post-contractual activities. TitleMax makes it clear in its MO-R and further submissions that its business operations protocols do not allow contract formation activities to occur outside its physical stores in South Carolina. (TitleMax Disp. Mo.Ex. C).

In this arbitration the salient question must be, did all contractual activities between Burns and TitleMax occur in South Carolina? If there were no solicitation of Burns by TitleMax, as the facts of her Declaration support, then all the elements of the contract formation, agreement, execution and payment of proceeds were completed in South Carolina. That Burns' title was submitted to the NC DMV to perfect TitleMax's security interest is not a contractual activity. To perfect a security interest is an option any prudent lender must do to put all the world on notice that there is a lien on Burns' vehicle. That is not a mandatory procedure and is not part of the contractual creation. The fact that Burns mails her payments from North Carolina to TitleMax in South Carolina is not a contractual activity. The contract is completed whether or not Burns mails in her payments. That failure would be a breach of the contract with all rights afforded the lender under an enforceable contract.

The Arbitrator has reviewed all submissions from the parties. The review included various arbitration awards which provided decisions for both sides of similar cases. Those awards, although instructive and of interest, are not controlling in this arbitration. All of these cases are factually driven. In the arbitration under consideration by the undersigned Arbitrator, the undisputed facts are clear. The material facts at issue in Burns' arbitration, as the focus of each Motion, demand a decision for TitleMax. The Arbitrator finds that "all contractual activities" in Burns' Agreement with TitleMax occurred in South Carolina.

AWARD

THEREFORE, all submissions, responses, replies, statutory and case law having been fully considered, the Arbitrator GRANTS TitleMax's Motion for Summary Disposition in its entirety and DENIES Burns' Motion for Summary Disposition in its entirety. With this decision, this arbitration shall be dismissed with prejudice.
The parties herein, having acted reasonably and fairly in pursuing their claims, shall be fully responsible for their respective costs and expenses.

SO ORDERED this 27th day of July, 2021

*Elizabeth Glazebrook Watson*
Hon. Elizabeth Glazebrook Watson