IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

AARON GOINS, *et al.*,                          )
                                                )
                              Plaintiffs,        )
                                                )
              v.                                )        1:19CV489
                                                )
TITLEMAX OF VIRGINIA, INC., *et al.*,            )
                                                )
                              Defendants,        )
                                                )

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Before the Court is a Motion to Enforce Award and Enter Judgment by Plaintiff
Stanley Ewings. (ECF No. 92.) The motion requests that the Court confirm the Final Award
issued by the American Arbitration Association ("Final Award") pursuant to 9 U.S.C. § 9
(2018) and enter judgment on behalf of Ewings against Defendant TitleMax of Virginia, Inc.
("TitleMax"), consistent with the Award. (*Id.*) For the reasons that follow, the Court grants
the motion.

I.      **Background**

Ewings is one of numerous plaintiffs in this action that allegedly entered into a "car
title loan" transaction with Defendants at unlawful rates of interest.[1] (*See* ECF No. 3.) The
action was initially brought in state court but removed to this Court by Defendants on May
10, 2019. (ECF No. 1.) The Complaint alleges violations of the North Carolina Consumer

---

[1] A "car title loan" is a short-term loan product secured by a lien on the borrower's vehicle.

1

Finance Act ("CFA"), North Carolina's usury statutes ("Usury Act"), and North Carolina's ban on unfair and deceptive trade practices. (*Id.* at 7–8 (citing N.C. Gen. Stat. §§ 24-1, 53-165, 75-1.1 (2019)).) On April 22, 2020, this Court compelled arbitration related to all but a few of the numerous plaintiffs' claims and ordered parties to notify the Court of any arbitration awards within seven days after arbitration concluded. (ECF No. 76 at 16.) Ewings' claim was one of the claims ordered to arbitration.

At arbitration, TitleMax argued that Virginia law solely controlled the case because the loan agreement's choice of law clause, as well as North Carolina conflict of law common law rules, require application of Virginia law. (ECF No. 93-1 at 5.) Alternatively, they argued that the CFA was unconstitutional in so far as it regulated an out-of-state loan agreement. (*Id.*) The Arbitrator found that the North Carolina law did apply, that it was constitutional, and that the loan violated the CFA. (*Id.* at 6.) He consequently ordered TitleMax to pay to Ewings the sum of $15,250.98. (*Id.* at 7.)

Ewings then, consistent with this Court's order, timely filed this motion. (ECF No. 92.) TitleMax opposes the motion and has asked the Court to vacate the Award. (ECF No. 104 at 1.) Specifically, they argue that the Arbitrator showed a "manifest disregard for the law" by (1) applying North Carolina law rather than Virginia law, and (2) finding the CFA to be constitutional. (*Id.* at 4.)

## II.    Standard of Review

Judicial review of an arbitration award "is among the narrowest known at law." *UBS Fin. Servs., Inc. v. Padussis*, 842 F.3d 336, 339 (4th Cir. 2016). Judicial review is "severely circumscribed. . . . [E]ven a mistake of fact or misinterpretation of law by an arbitrator provides

insufficient grounds for the modification of an award." *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 194 (4th Cir. 1998). The court does not sit to reevaluate evidence or review mistakes of law. *Id.* Instead, the reviewing court asks only "whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Three S Delaware, Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007) (internal quotations omitted).

Thus, courts may vacate or modify an arbitration award only under "limited circumstances." *Padussis*, 842 F.3d at 339. The party opposing enforcement of the award bears the "heavy burden" of showing that grounds to vacate the award exist under either the Federal Arbitration Act or common law. *Three S Delaware, Inc.*, 492 F.3d at 527. Relevant to this case, an award will be vacated at common law where "the award evidences a manifest disregard of the law." *Id.* This high bar is reached only where (1) the disputed legal principle is "clearly defined" and "not subject to reasonable debate," and (2) "the arbitrator refused to apply that legal principle." *Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015). Further, merely failing to explain a legal conclusion will not justify vacating an award where the legal reasoning can be inferred. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960) ("Arbitrators have no obligation to the court to give their reasons for an award.").

## III. Discussion

### A. Choice of North Carolina law

TitleMax asserts that the Final Award "showed a manifest disregard for the law" by failing to apply Virginia law. (ECF No. 115 at 4.) They argue that their loan agreement's choice of law clause required application of Virginia law. (*Id.* at 4–6.) Alternatively, North

Case 1:19-cv-00489-LCB-JLW   Document 141   Filed 08/27/21   Page 3 of 7

Carolina courts apply the substantive law of the place a contract was made in contract disputes—which in this case, they argue, is Virginia. (*Id.* at 6–7.)

Contrary to TitleMax's assertion, the Arbitrator grappled directly with TitleMax's choice of law arguments. (ECF No. 93-1 at 6.) The Arbitrator found that "the 'loans made elsewhere' features of the CFA and Usuary Act . . . purport[] to impose North Carolina law on contracts that specify other law or that would, if *lex loci contractus* choice-of-law analysis was dispositive, avoid North Carolina law." (*Id.*) The Court understands this language to mean the Arbitrator interpreted the CFA to explicitly require application of North Carolina law even where choice-of-law clauses or common law conflict of law principals would require application of another state's law. Further, the Arbitrator found that application of Virginia law to enforce the loans would "offend[] North Carolina public policy." (*Id.*) On this basis, he "decline[d] to apply Virginia law." (*Id.*)

It is not for this Court to determine whether the Arbitrator correctly interpreted the CFA to supplant the choice of law clause and common law conflict of law principals, nor will the Court second guess whether the CFA expresses a strong North Carolina policy sufficient to prohibit application of Virginia law.[2] Under the "severely circumscribed" standard of review, it is enough that the Arbitrator grappled with TitleMax's arguments and resolved them based on his best interpretation of the relevant law. TitleMax has failed to carry its heavy burden on this issue.

---

[2] North Carolina will not apply another state's law if doing so would violate the state's strong or fundamental public policy. *See Bundy v. Com. Credit Co.*, 157 S.E. 860, 864–65 (N.C. 1931); *Szymczyk v. Signs Now Corp.*, 606 S.E.2d 728, 732 (N.C. Ct. App. 2005).

4

### B.     Constitutionality of the Consumer Finance Act

TitleMax additionally argues that the Final Award manifestly disregarded a "well-established principle of constitutional law." (ECF No. 104 at 8.) They argue that the dormant Commerce Clause includes a "prohibition on extraterritorial regulation" that is "clearly defined and not subject to reasonable debate." (*Id.*) The CFA, they claim, regulates contracts formed wholly outside North Carolina's borders in violation of this "black letter law." (*Id.* at 11–13.)

The Court finds that the law as applied to the facts in this case is not so "well-established." A statute can violate the dormant commerce clause in two ways. *See McBurney v. Young*, 667 F.3d 454, 468 (4th Cir. 2012); *Env't Tech. Council v. Sierra Club*, 98 F.3d 774, 785 (4th Cir. 1996). First, a law is *per se* unconstitutional if it discriminates against out-of-state transactions. *Sierra Club*, 98 F.3d at 785. Second, where a law does not discriminate, it is constitutional "unless the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits." *McBurney*, 667 F.3d at 468 (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). This second test "frequently requires judges to make highly subjective calls" in evaluating state interests. *Colon Health Ctrs. of Am., LLC, v. Hazel*, 813 F.3d 145, 156 (4th Cir. 2016). Because judges are "ill-equipped to second-guess the empirical judgments of lawmakers concerning the utility of legislation," courts presume that nondiscriminatory statutes are constitutional and give "due deference to the body whose primary responsibility it is to judge the benefits and burdens of . . . legislation: the [state] legislature." *Id.* (internal quotations omitted). Consequently, nondiscriminatory laws receive rational basis review under the dormant Commerce Clause. *Id.*

5

Here, the Arbitrator directly addressed TitleMax's dormant Commerce Clause argument. (ECF No. 93-1 at 6.) First, the Arbitrator held that each law was "presumptively constitutional," apparently finding that neither act is discriminatory. (*Id.*) The Arbitrator then found that TitleMax had not overcome this presumption by making the Arbitrator aware of any judicial decision "declaring the CFA or Usary Act unconstitutional." (*Id.*) The Arbitrator further recognized that he was ill-equipped to find these laws unconstitutional when no court had done so and when such a decision could have wide ranging influence on other arbitrations. (*Id.*) Consequently, he treated the laws as constitutional. (*Id.*)

The Arbitrator did not manifestly disregard any black letter law. To the contrary, the Arbitrator applied a presumption of constitutionality and found that this presumption had not been overcome. For their part, TitleMax has not identified any controlling precedent that would have required the Arbitrator to find the CFA or Usury Act unconstitutional. Their principal cases, *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660 (7th Cir. 2010) and *TitleMax of Delaware, Inc. v. Weissmann*, 505 F. Supp. 3d 353 (D. Del. 2020), were not binding on the Arbitrator, and the one Fourth Circuit case cited, *Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484, 489 (4th Cir. 2007), was decided on statutory and not constitutional grounds. (ECF No. 104 at 9–10.) Indeed, at least one court has found that the acts *are* constitutional. *State ex re. Cooper v. W. Sky Fin., LLC*, 2015 NCBC 84 ¶ 45, 2015 WL 5091229, at *11 (N.C. Super. Ct. Aug. 27, 2015) (finding the acts to be constitutional because they "do not attempt to regulate conduct beyond North Carolina's borders and do not unduly burden interstate commerce").

It is not for this Court to decide whether the Arbitrator's constitutional analysis was correct. Under the "severely circumscribed" standard of review, it is enough that the Arbitrator acknowledged, grappled with, and resolved the issue. In short, the Arbitrator did his job. Thus, the Final Award must be enforced.

\* \* \*

In his Reply, Ewings has requested attorneys' fees. The Court will reserve decision of this issue until receipt of supplemental briefing that shall be Ordered via Text Order to be entered simultaneously with this Order.

## ORDER

IT IS THEREFORE ORDERED that the Motion to Enforce Award and Enter Judgment, (ECF No. 92), is GRANTED. Defendant TitleMax of Virginia, Inc., is ORDERED to pay to Plaintiff Stanley Ewings the sum of $15,250.98, which sum is due and payable immediately upon filing of the Judgment.

Judgment will be entered simultaneously with this Order.

This, the 26th day of August 2021.

/s/ Loretta C. Biggs
United States District Judge