# JAMS ARBITRATION

| | |
|---|---|
| Bratton, Cathy v. TitleMax of South Carolina, Inc. | – Case No. 1440007030 |
| Currie, Lindsay v. TitleMax of Virginia, Inc. | – Case No. 1440007021 |
| Darrisaw, Sandra v. TitleMax of South Carolina, Inc. | – Case No. 1440007012 |
| Davis, Tamara v. TitleMax of Virginia, Inc. | – Case No. 1440007001 |
| Garber, Jozelle v. TitleMax of Virginia, Inc. | – Case No. 1440007040 |
| Grimsley, Lauren v. TitleMax of South Carolina, Inc. | – Case No. 1440007055 |
| Harris, Charlene v. TitleMax of South Carolina, Inc. | – Case No. 1440007043 |
| Hedrick, Linda v. TitleMax of Virginia, Inc. | – Case No. 1440007049 |
| Jackson, Antoinette v. TitleMax of South Carolina, Inc. | – Case No. 1440007046 |
| Johnson, Joshua v. TitleMax of Virginia, Inc. | – Case No. 1440007052 |
| Jones, Michael Kevin v. TitleMax of South Carolina, Inc. | – Case No. 1440007059 |
| Keys, Jermale v. TitleMax of Virginia, Inc. | – Case No. 1440007062 |
| Mungin, Lateesha v. TitleMax of South Carolina, Inc. | – Case No. 1440007034 |
| Singleton, Jamorris v. TitleMax of South Carolina, Inc. | – Case No. 1440007016 |
| Stanfield, Euell v. TitleMax of Virginia, Inc. | – Case No. 1440007007 |
| Warren, Willie v. TitleMax of Virginia, Inc. | – Case No. 1440007027 |

## INTERIM AWARD RE: CLAIMANTS' AND RESPONDENTS' MOTIONS FOR SUMMARY DISPOSITION

This matter is pending in the U.S. District Court for the Middle District of North Carolina[1] and has been stayed pending resolution of the claims in this arbitration. Cathy Bratton ("Bratton"), Lindsay Currie ("Currie"), Sandra Darrisaw ("Darrisaw"), Tamara Davis ("Davis"), Jozelle Garber ("Garber"), Lauren Grimsley ("Grimsley"), Charlene Harris ("Harris"), Linda Hedrick ("Hedrick"), Antoinette Jackson ("Jackson"), Joshua Israel-Johnson ("Israel-Johnson"), Michael Jones ("Jones"), Jermale Keys ("Keys"), Jamorris Singleton ("Singleton"), Euell Stanfield ("Stanfield"), and Willie Warren ("Warren")

---

[1] *Alexander Goines et al. v. TitleMax of Virginia, Inc., et al.*, Case No. 1:19CV489.

(collectively, "Claimants") are all residents of North Carolina who each entered into a car title loan agreement ("Loan Agreement") with either TitleMax of South Carolina, Inc. or TitleMax of Virginia, Inc. (collectively, "Respondents"). Claimants allege in their Motion for Summary Disposition of all asserted claims that because each of the Claimants' Loan Agreement has a respective interest rate in excess of 100%, Respondents violated North Carolina's Consumer Finance Act, N.C. Gen. Stat. § 53-190(a) and (b); Claimants seek compensatory damages under the Consumer Finance Act and further argues that such damages be tripled in view of Respondents' unfair and deceptive trade practices, pursuant to N.C.G.S. § 75-1.1, the Unfair and Deceptive Practices Act. Alternatively, Claimants seek damages for violation of North Carolina's usury statutes, N.C. Gen Stat. § 24-2.1 *et seq.* (the "Usry Act"). Also, Claimants seek their attorneys' fees, pursuant to N.C.G.S. § 75-16.1.

In their Motion for Summary Disposition, Respondents move to reject all of Claimants' claims because, *inter alia*, the North Carolina statutes Claimants rely upon are inapplicable since all the relevant contract activities occurred between Claimants and Respondents in South Carolina or Virginia and not in North Carolina; all of the Loan Agreements at issue contain valid and enforceable choice-of-law provisions confirming that the laws of South Carolina or Virginia must apply; and the interpretation and purported application of North Carolina law

2

advanced by Claimants violates the Commerce Clause of the United States Constitution.

Claimants' and Respondents' Motions have been briefed and are decided together on an interim basis herein by the undersigned Arbitrator, pending a Final Award on damages.

## Analysis

### A. North Carolina Consumer Finance Act

The North Carolina "Loans Made Elsewhere" Act, at N.C.G.S. § 53-190, provides that:

> (a) No loan contract made outside this State in the amount or of the value of fifteen thousand dollars ($15,000) or less, for which greater consideration or charges than are authorized by G.S. 53-173 and G.S. 53-176 of this Article have been charged, contracted for, or received, shall be enforced in this State. Provided, the foregoing shall not apply to loan contracts in which all contractual activities, including solicitation, discussion, negotiation, offer, acceptance, signing of documents, and delivery and receipt of funds, occur entirely outside North Carolina.
> (b) If any lender or agent of a lender who makes loan contracts outside this State in the amount or of the value of fifteen thousand dollars ($15,000) or less, comes into this State to solicit or otherwise conduct activities in regard to such loan contracts, then such lender shall be subject to the requirements of this Article.

The first sentence of Section 53-190(a) prohibits the enforcement of a loan contract for $15,000 or less made outside of North Carolina that charges or contracts for "consideration" that is more than the highest rate of interest permitted by North Carolina law, namely, N.C.G.S. § 53-176(a)(1)), which for loans not

3

exceeding $10,000, is 30% per annum. All of the Claimants' Loan Agreements (Claimants' Exhs. E-S) are for much less than $15,000; the loan amounts range from a high of $4,820 (Exh. M) to a low of $570.00 (Exh. L). The "Annual Percentage Rates" of the Claimants' Loan Agreements range from a low of 144.1623% (Exh. H) to a high of 191.5541% (Exh. Q), thereby far exceeding the maximum rate of interest permitted by N.C.G.S. § 53-176(a)(1) for loans of those amounts, namely, 30%.

However, the second sentence of Section 53-190(a) states that if "all contractual activities [concerning the Loan Agreements] . . . occur[red] entirely outside North Carolina," North Carolina's "Loans Made Elsewhere" Act does not apply. But if any contractual activity does occur within North Carolina, then N.C.G.S. § 53-176(a) does apply and the annual percentage cannot exceed 30%.

The basis for Respondents' contention that all contractual activities between Claimants and Respondents occurred either in their respective locations in South Carolina or Virginia is as follows:

> While TitleMax made loans at its stores throughout South Carolina and Virginia, it did not (and does not) have any stores or presence in North Carolina. . . . Moreover, TitleMax specifically does **not** market to residents of North Carolina through radio, television, billboard, mailed advertisements, telephonic solicitation, or any other means for motor vehicle title loans. . . . Prospective borrowers seeking title-secured loans can only complete a credit application, have their vehicle appraised, and obtain loan origination approval while physically present in a TitleMax store in South Carolina or

4

> Virginia. . . . Once a prospective borrower arrives at a store, TitleMax physically inspects the vehicle owned by a potential borrower. . . . This physical inspection and in-person appraisal cannot occur until the potential borrower comes to the store with his or her vehicle. . . . TitleMax cannot and does not enter into loan agreements (or promise to enter into a loan agreement) over the phone. . . . If TitleMax and a borrower agree to loan terms, a loan agreement is executed while the borrower is physically present at a TitleMax store in South Carolina or Virginia. . . . The loan process culminates with the borrower's receipt of the loan proceeds while physically present in a South Carolina or Virginia store. . . .The borrower is also provided with credentials to access the loan documents online or, upon request, a paper copy. . . .

Respondents' Memorandum, at pages 4-5 (citations omitted) (emphasis in the original).

Assuming the above "contractual activities" only relate to the formation of the Loan Agreements that occurred outside North Carolina, nevertheless the term "all contractual activities" in N.C.G.S. § 53-190(a) is not so limited and can be reasonably interpreted to include, for instance, the telephone call initiated by North Carolina Claimants to the Respondents' location nearest to them in either Virginia or South Carolina. During that call, there is a discussion about the prospective loan between the Claimants and a representative of Respondents in that location as to, among other things, the amount of the loan sought by the Claimants, the description of the Claimants' vehicle and the procedure for obtaining the loan (what documents the Claimants are required to bring to the location along with the

5

vehicle, that the vehicle will be inspected and appraised at the location and what documents the Claimants will be signing at the location to obtain the loan).

Even if it is considered that the statute's prohibited "discussion" did not occur in North Carolina, the use of the inclusive term "all" in the phrase "all contractual activities" in N.C.G.S. § 53-190(a) can be reasonably interpreted to include the following necessary post-loan formation activities which all occurred in North Carolina:

- Respondents' representatives traveled to the office of the North Carolina Motor Vehicle Department to file in person liens on the Claimants' vehicles in order to perfect a security interest therein[2];

- Respondents accepted monthly payments from the North Carolina Claimants, including telephone calls from the Claimants to an office of Respondents during which the Claimants made a payment by means of a credit card;

- Telephone or "collection" calls initiated by a representative of Respondents to Claimants who were delinquent in their monthly loan payments, followed by delinquency notices being sent to Claimants at their North Carolina residence; and

---

[2] *See* the deposition of Taylor Caddell Pack, Claimants' Exh. E. Even when Respondents sent via mail their lien applications to the office of the North Carolina Division of Motor Vehicles to register their liens and perfect their security interests in the Claimants' vehicles, that can be considered a contractual activity that necessarily occurred within North Carolina after the Loan Agreements were executed.

6

- Repossession of Claimants' vehicles in North Carolina by agents of Respondents when the Claimants remained delinquent in their monthly payments.

In view of the above, Respondents are subject to the North Carolina "Loans Made Elsewhere" Act, N.C.G.S. § 53-190(a) and (b), by being lenders who make loan contracts outside North Carolina in the amount or of the value of $15,000.00 or less, with consideration or charges greater than are authorized by the Act. As noted above, because the "Annual Percentage Rates" of the Claimants' Loan Agreements far exceed the maximum rate of interest permitted by N.C.G.S. § 53-176(a)(1) for loans of those amounts, namely, 30%, the interest rate charged by Respondents violates the "Loans Made Elsewhere" Act.

## B. North Carolina Unfair and Deceptive Trade Practices Act

Claimants also seek an award of treble damages of the amount Claimants paid on their loans plus the fair market value of the vehicles repossessed pursuant to the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. §75-1.1 *et seq.*, in connection with Claimant's claim for damages under the North Carolina Consumer Finance Act. Under N.C.G.S. § 75-16, if a violation under Section 75-1.1 is found, the actual damages are trebled.

As stated in *State ex re. Cooper v. NCCS Loans*, 624 S.E.2d 371, 378, 174 N.C. App. 630 (2005):

> "[V]iolations of statutes designed to protect the consuming public and violations of established public policy may constitute unfair and

7

deceptive practices." *Stanley v. Moore*, 339 N.C. 717, 723, 454 S.E.2d 225, 228 (1995). In this regard, we note that it is a "paramount public policy of North Carolina to protect North Carolina resident borrowers through the application of North Carolina interest laws." N.C. Gen. Stat. § 24-2.1 (2003). Defendants' practice of offering usurious loans was a clear violation of this policy. We conclude that the trial court did not err by ruling as a matter of law that this constitutes unfair or deceptive trade practices, in violation of N.C. Gen. Stat. § 75-1.1 (2003).

Having found that the cited provisions of the North Carolina Consumer Finance Act and the North Carolina Unfair and Trade Practices Act were violated, the damages suffered by Claimants should be trebled, pursuant to N.C.G.S. § 75-16.

## C. Respondents' Choice-of-Law Provisions or *Lex Loci Contractus*

Respondents contend that because the Loan Agreements contain "enforceable choice-of-law provisions and repayment terms expressly regulated by, and in compliance with, South Carolina or Virginia law," the North Carolina Consumer Finance Act does not apply. Respondents further argue that "[e]ven in the absence of such choice-of-law provisions, the principles of *lex loci contractus* (law of the place where the contract is made) mandate application of South Carolina or Virginia law." Respondents' Memorandum, at page 3.

In their Response Memorandum, at page 3, Respondents state that:

> North Carolina relies on the Second Restatement to determine whether public policy invalidates a choice-of-law provision. *Volvo* [*Const. Equipment North America, Inc. v. CLM Equipment Company, Inc.*], 386 F.3d [581,] 602-03 [4th Cir. 2004)] ("In certain circumstances, however, North Carolina will decline to

8

honor a choice-of-law provision. North Carolina relies on the Second Restatement to determine whether such circumstances are present."). Specifically, to set aside a choice-of-law provision, Section 187 of the Second Restatement states that one of the following two conditions must be present:

> (a) the chosen state *has no substantial relationship* to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which *has a materially greater interest than the chosen state* in the determination of the particular issue and which, under the rule of § 188, would be the state of applicable law in the absence of an effective choice of law by the parties.

*Cable Tel. Servs. v. Overland Contr.*, 574 S.E.2d 31, 33-34 (N.C. App. 2002) (quoting Restatement (Second) of Conflict of Laws § 187) (emphasis added). Neither of these conditions are present here.

Respondents are incorrect. There <u>is</u> a condition present in this case that demands that Respondents' choice-of-law provisions be "set aside." The North Carolina usury statute makes clear that "[i]t is the <u>paramount public policy of</u> North Carolina to protect North Carolina resident borrowers through the application of North Carolina interest laws." *State ex rel. Cooper v. Western Sky Financial, LLC*, 2015 WL 5091229 at *10 (N.C.B.C. 2015) (Emphasis added). Respondent's interest rates discussed above violate the "paramount public policy of North Carolina to protect North Carolina resident borrowers through the application of North Carolina interest laws." N.C.G.S. § 24-2.1(g). "[A]pplication of the law of [either South Carolina or Virginia] would be contrary to a

9

fundamental policy of [North Carolina] which has a materially greater interest than [either South Carolina or Virginia] in the determination of the particular issue and which, under the rule of § 188, would be the state of applicable law in the absence of an effective choice of law by the parties." Restatement (Second) of Conflict of Laws, § 187(b); *see, also Behr v. Behr,* 46 N.C. App. 694, 696, 266 S.E.2d 393, 395 (1980) (North Carolina will not enforce a choice-of-law provision that "violate[s] a fundamental policy of the state.").

Pursuant to the *lex loci contractus* doctrine, Respondents argue that the fact that the Loan Agreements were signed in either South Carolina or Virginia should prevent the application of North Carolina law since the last act that established the contract between the parties occurred in those two states, not North Carolina. N.C.G.S. § 55–145(a)(4) provides that:

> Jurisdiction over foreign corporation not transacting business in this State—(a) Every foreign corporation shall be subject to suit in this State, whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:
>
> \* \* \*
>
> (4) Out of tortious conduct in this State, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

10

Respondents' above-noted contacts with North Carolina which resulted in monetary injury to the Claimants were all associated with Claimants' tortious causes of action in this matter. See *Vishay Intertechnology, Inc. v. Delta Intern. Corp.*, 696 F.2d 1062 (4th Cir. 1984); *Gries v. Zimmer, Inc.*, 709 F. Supp. 1374, 1381 (W.D.N.C. 1989) ("... North Carolina's courts can refuse to enforce contractual provisions that are contrary to public morals, positive legislation, or settled public policy...."). As stated in *Bundy v. Commercial Credit Co.*, 200 N.C. 511, 157 S.E. 860, 863 (1931):

> The general principle recognized in all jurisdictions is that ordinarily the execution, interpretation, and validity of a contract is to be determined by the law of the state or country in which it is made[3]. . . . Notwithstanding the general rule, there are certain exceptions thereto which have been adopted in this jurisdiction and intimately wrought into the fabric of our law. . . [The exceptions include that] when the contract is made in a foreign state or country with the intent and purpose to evade the usury laws of this state. . . the interest laws of North Carolina are applicable.

Respondents' Loan Agreements with the North Carolina Claimants were executed in South Carolina and Virgina with the intent and purpose to evade the usury laws of North Caolina. Therefore, in accordance with North Carolina law, Respondents are precluded from applying in this matter the South Carolina or

---

[3] *See, e.g., Bradshaw v. Bradshaw*, 826 S.E.2d 779, 783 (N.C. App. 2019) ("'North Carolina has long adhered to the general rule that *lex loci contractus*, the law of the place where the contract is executed governs the validity of the contract.'") (citation omitted).

11

Virginia choice-of-law provisions in their Loan Agreements, including under the *lex loci contractus* doctrine.

### D. The Commerce Clause of the U.S. Constitution

Respondents contend that North Carolina's attempt to regulate Respondents' loans violates the dormant Commerce Clause of the U.S. Constitution which "prevents a State from jeopardizing the welfare of the Nation as a whole by placing burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear." Respondents assert that Claimants' actions violate the extra-territoriality aspect of the Commerce Clause by attempting to impose North Carolina's laws on their operations. However, that Constitutional provision would be violated in this case only if North Carolina statutes purported to control South Carolina's or Virginia's business, such as dictating the interest rates or other lending practices that Respondents apply in South Carolina and Virginia, when all such contractual activities occurred outside North Carolina. Since not all of the Respondents' contractual activities relating to the Loan Agreements occurred outside North Carolina, the Commerce Clause is not violated.

### E. Damages and Attorneys' Fees

The remedy for a violation of the North Carolina "Loans Made Elsewhere" Act (either (a) or (b)) is set forth in N.C.G.S. § 53-166(d) which allows compensatory relief and states that loans that violate the Act "shall be void and the

12

licensee or any other party in violation shall have no right to collect, receive or retain any principal whatsoever with respect to such loan." Accordingly, each Claimant seeks compensatory damages for the amount of their respective payments made plus, in respect to the Claimants whose vehicle was repossessed, a determination of the fair market value at the time of the taking of the vehicle. Claimants have set forth their proposed amount of damages for each Claimant on pages 22-23 of their Memorandum.

The vehicle values at the time of repossession were determined by Claimants' expert as set out in his declaration (Claimants' Exh. G), but Respondents contend that the expert's opinion "lacks any merit, grounds of support, or identified factual foundation . . . and any opinion as to the value of the vehicles should be disregarded entirely." Respondents' Response, at page 20. Respondents request additional briefing related to the issues of damages in this matter, and Claimants state that they would "have no problem" with Respondents "postbriefing" this issue. Claimants' Response, at page 11; *see also* Claimants' Memorandum, at page 23 ("If Respondent has a different opinion for car values, they ought suggest them.").

Pursuant to N.C.G.S. § 75-1.1, Claimants also seek reasonable attorneys' fees since there has been found that Respondents violated N.C.G.S. § 75-1.1. Such an award of attorneys' fees is discretionary under the statute.

13

THEREFORE, for the reasons set out above, the undersigned Arbitrator does hereby ORDER as follows:

1. Claimants shall have and recover of Respondents compensatory damages for Respondents' violations of the North Carolina Consumer Finance Act in an amount to be determined as follows:

    A. Respondents shall file with JAMS within ten (10) days of the date of this Interim Award their objections to Claimants' expert's valuation of vehicles used by Claimants in their computation of damges; and

    B. Within ten (10) days of the date of the filing of Respondents' objections, Claimants may file with JAMS their response thereto.

2. Claimants' claim for an award of reasonable attorneys' fees pursuant to N.C.G.S. § 75-16.1 is denied.

All arguments raised by the parties have been considered. Except for Claimants' request for damages, all claims submitted in this Arbitration are determined to be resolved. All claims and requests for relief of any kind not expressly granted in this Interim Award are hereby denied.

Date: November 2, 2021

_William H. Needle_
William H. Needle
Arbitrator

14

Case 1:19-cv-00489-LCB-JLW   Document 162-2   Filed 01/18/22   Page 14 of 17

# **SERVICE LIST**

**Case Name:** See Attached List  **Hear Type:** Arbitration
**Reference #:** See Attached List  **Case Type:** Business/Commercial
**Panelist:** Needle, William ,

### Ben Bollinger

Troutman Pepper Hamilton Sanders, LLP

Ben Bollinger  Respondent
301 S. College St.  Phone: 704-998-4050
34th Floor
Charlotte, NC 28202

ben.bollinger@troutman.com

**Party Represented:**
  TitleMax of Virginia, Inc. dba TitleMax

### Drew Brown

Brown, Faucher, Peraldo, et al.

Drew Brown  Claimant
822 N Elm St  Phone: 336-478-6000
Suite 200
Greensboro, NC 27401
drew@greensborolawcenter.com
Assistant's Emails:
kellie@greensborolawcenter.com

**Party Represented:**
  Tamara Davis

### Jason D. Evans

Troutman Pepper Hamilton Sanders, LLP

Jason D. Evans  Respondent
301 S. College St.  Phone: 704-998-4050
34th Floor
Charlotte, NC 28202
Jason.Evans@troutman.com

**Party Represented:**

  TitleMax of Virginia, Inc. dba TitleMax

### Will Farley

Troutman Pepper Hamilton Sanders, LLP

Will Farley  Respondent
301 S. College St.  Phone: 704-998-4050
34th Floor
Charlotte, NC 28202
will.farley@troutman.com

**Party Represented:**

  TitleMax of Virginia, Inc. dba TitleMax

### John E. Komisin

Troutman Pepper Hamilton Sanders, LLP

John E. Komisin  Respondent
1001 Haxall Pt.  Phone: 804-697-1200
15th Floor  Fax: 804-697-1339
Richmond, VA 23219

jed.komisin@troutman.com

**Party Represented:**
  TitleMax of Virginia, Inc. dba TitleMax

### Brian Nichilo

Troutman Pepper Hamilton Sanders, LLP

Brian Nichilo  Respondent
301 S. College St.  Phone: 704-998-4050
34th Floor
Charlotte, NC 28202
brian.nichilo@troutman.com

**Party Represented:**
  TitleMax of Virginia, Inc. dba TitleMax

## BILL NEEDLE, ESQ. TITLEMAX ARBITRATIONS

Bratton, Cathy v. TitleMax of South Carolina, Inc. – 1440007030
Currie, Lindsay v. TitleMax of Virginia, Inc. - 1440007021
Darrisaw, Sandra v. TitleMax of South Carolina, Inc. - 1440007012
Davis, Tamara v. TitleMax of Virginia, Inc. - 1440007001
Garber, Jozelle v. TitleMax of Virginia, Inc. – 1440007040
Grimsley, Lauren v. TitleMax of South Carolina, Inc. - 1440007055
Harris, Charlene v. TitleMax of South Carolina, Inc. - 1440007043
Hedrick, Linda v. TitleMax of Virginia, Inc. - 1440007049
Jackson, Antoinette v. TitleMax of South Carolina, Inc. - 1440007046
Johnson, Joshua v. TitleMax of Virginia, Inc. - 1440007052
Jones, Michael Kevin v. TitleMax of South Carolina, Inc. - 1440007059
Keys, Jermale v. TitleMax of Virginia, Inc. - 1440007062
Mungin, Lateesha v. TitleMax of South Carolina, Inc. - 1440007034
Singleton, Jamorris v. TitleMax of South Carolina, Inc. - 1440007016
Stanfield, Euell v. TitleMax of Virginia, Inc. – 1440007007
Warren, Willie v. TitleMax of Virginia, Inc. – 1440007027

**PROOF OF SERVICE BY E-Mail & US MAIL**

Re: Bill Needle TitleMax of Virginia, Inc. Cases

I, Nykesha Potts, not a party to the within action, hereby declare that on November 03, 2021, I served the attached Interim Award Re: Claimants' and Respondents' Motions for Summary Disposition on the parties in the within action by electronic mail at Atlanta, GEORGIA, addressed as follows:

Drew Brown Esq.
Brown, Faucher, Peraldo, et al.
822 N Elm St
Suite 200
Greensboro, NC   27401
Phone: 336-478-6000
drew@greensborolawcenter.com
   Parties Represented:
   Tamara Davis

Jason D. Evans Esq.
Ben Bollinger Esq,
Will Farley Esq.
Troutman Pepper Hamilton Sanders, LLP
301 S. College St.
34th Floor
Charlotte, NC   28202
Phone: 704-998-4050
Jason.Evans@troutman.com
ben.bollinger@troutman.com
will.farley@troutman.com
   Parties Represented:
   TitleMax of Virginia, Inc. dba TitleMax

John E. Komisin Esq.
Troutman Pepper Hamilton Sanders, LLP
1001 Haxall Pt.
15th Floor
Richmond, VA   23219
Phone: 804-697-1200
jed.komisin@troutman.com
   Parties Represented:
   TitleMax of Virginia, Inc. dba TitleMax

Brian Nichilo Esq.
Troutman Pepper Hamilton Sanders, LLP
301 S. College St.
34th Floor
Charlotte, NC   28202
Phone: 704-998-4050
brian.nichilo@troutman.com
   Parties Represented:
   TitleMax of Virginia, Inc. dba TitleMax

I declare under penalty of perjury the foregoing to be true and correct. Executed at Atlanta, GEORGIA on November 03, 2021.

*Nykesha Potts*
_____
Nykesha Potts
JAMS
nykeshapotts@jamsadr.com