# AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration between
Case Number: 01-22-0000-1846

| | |
|---|---|
| Anna Shaw | Claimant |
| -vs- | |
| TitleMax of Virginia, Inc. | Respondent |

## Award Of Arbitrator

I, Jonathan B. Gilbert, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, each represented by counsel, at a hearing held on September 14, 2022, do hereby, AWARD, as follows:

## Body of Award

Evidence

The following documents were admitted into evidence without objection: all exhibits filed in support of the Cross-Motions for Summary Judgment; Claimant's Exhibits 1-7; Transcript of Damian McBride August 26, 2020 Deposition in *Snipes v. TitleMax of Virginia*.

The following witnesses testified under oath: Anna Shaw (Claimant); Jose Urbaez (TitleMax employee-compliance); Ansley Trapani (TitleMax employee-marketing)

Discussion

Ms. Shaw is a North Carolina resident who lives a short drive from the Virginia border. She had heard radio ads promoting TitleMax. In need of a loan in November of 2017, she searched the internet and found the TitleMax store in Danville, Virginia. She called and spoke to Damian McBride, a TitleMax employee. According to her, she told McBride she lived in North Carolina and that she needed a $6,000.00 loan. Mr. McBride asked her about the condition of the truck and assured her that, if she came to the store, she could get a loan. She said he "guaranteed" her a loan in some amount. She went to Danville, completed the transaction and subsequently repaid the loan and accrued interest, in full, in the amount of $4,412.90. Ms. Shaw also said that she had heard radio ads for TitleMax and received mailings from it, both while at home. Immediately after the loan was made, TitleMax filed a lien with the State of North Carolina.

At his deposition, Mr. McBride didn't talk about his conversation with Ms. Shaw but he did discuss his usual practice in dealing with customers over the phone (pages 74-76):

> We answer the phone, you.· Get your title
> ·2· ·back with Title Max.· My name's Damian, what's
> ·3· ·yours?· They usually ask what the process of getting
> ·4· ·a loan is like.· I say, it's a very easy process.
> ·5· ·You bring in your driver's license, your title and
> ·6· ·your vehicle and we'll do an appraisal here in the
> ·7· ·store and we'll determine the value of your vehicle.

```
 8·  ·We'll lend you a portion of that value hopefully
 9·  ·meeting your needs.· And it's a very easy process.
 A.·  ·Hoping that we meet your needs.· Can I get
18·  ·your name and the customer would give me their name
19·  ·and I said say okay I'm Damian, please ask for me.
20·  ·I'll give the hours of operation and our address.
21·  ·That's it.
```
(pg. 76)

Reading Ms. Shaw's testimony together with that of Mr. McBride, I find that her recitation of the phone conversation was credible. Indeed, TitleMax offered no direct evidence to the contrary, but, rather, argued that company policy would have prohibited any such guarantee of a loan.

Mr. Urbaez and Ms. Trapani testified to TitleMax policies but had no direct knowledge regarding this transaction. Mr. Urbaez said that employees were instructed to tell callers that they should come into the store, what they should bring with them and give a description of the available products. According to Mr. McBride, he routinely went beyond this. Ms. Trapani said that TitleMax did not mail ads into North Carolina, but admitted that it had somehow accidentally done some radio advertising.

The application of North Carolina's statute to out-state-lenders is governed by this:

> N.C.G.S. 53-190(b): if any lender or agent of a lender who makes loan contracts outside this State in the amount or of the value of fifteen thousand dollars ($15,000) or less, comes into this State to solicit or otherwise conduct activities in regard to such loan contracts, then such lender shall be subject to the requirements of this Article.

I find that Mr. McBride's statements to Ms. Shaw over the phone and the radio ads constituted soliciting in North Carolina. I also find that recording a lien in North Carolina is an "activity in regard to such loan contract". TitleMax violated the North Carolina statute and, under North Carolina case law, also violated ch. 75, which requires treble damages.

Award

Anna Shaw is awarded the sum of Thirteen Thousand Two-Hundred Thirty Eight Dollars and Seventy Cents ($13,238.70), ($4,412.90 x 3), against TitleMax of Virginia, Inc.

Ms. Shaw also asks for an award of attorney's fees, citing ch. 75-16.1, and interest. She argues that there was an "unwarranted refusal to resolve the matter" based on the fact that TitleMax didn't make a settlement offer until after the cross-motions for summary judgment were decided. Summary judgment motions were contemplated from the beginning and waiting until they are decided is a common (some would say sensible) litigation tactic. There is nothing in the record to suggest that TitleMax engaged in any unwarranted delay tactics or otherwise made the case unusually difficult for Ms. Shaw.

The requests for attorney's fees and interest on the award are denied.

The administrative fees of the American Arbitration Association (AAA) totaling $2,400.00 shall be borne as incurred, and the compensation of the arbitrator totaling $2,500.00 shall be borne as incurred.

These sums are to be paid on or before thirty (30) from the date of this Award.

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

*Jonathan B. Gilbert*
Jonathan B. Gilbert
Arbitrator

September 20, 2022