

In the Matter of the Arbitration between

Case Number: 01-22-0000-1841

DONTA SYKES,

                              Claimant

-vs-

TMX FINANCE OF VIRGINIA, INC. and
TITLEMAX OF VIRGINIA, INC.,

                              Respondents
_____

## MOTION TO DISMISS ORDER AND INTERIM AWARD

### Introduction

    I, Hon. Chase Boone Saunders, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly considered the proofs and allegations of the Parties, each represented by counsel, do hereby issue this ORDER and AWARD as follows:

    THIS MATTER comes on before the undersigned for consideration and the entry of an Order addressing Claimant and Respondents' cross MOTIONS TO DISMISS for summary disposition pursuant to the Consumer Arbitration Rules of the American Arbitration Association (hereinafter "AAA"). Each party submitted briefs, case law, and supporting documents including a Declaration by Claimant, Affidavit from Respondents, and the contracts on August 12, 2022. Responsive briefs were submitted on September 2, 2022 pursuant to the terms of the Scheduling Order entered by the undersigned on June 20, 2022.

### Counsel

    Claimant is represented by Drew Brown, Esq. with the law firm of Brown, Faucher, Peraldo & Benson, PLLC. Respondents are represented by Jason Evans, Esq. with the law firm of Troutman Sanders, LLP.

### Discussion

    Claimant lives in North Carolina. Respondents are a high interest lender located in the Commonwealth of Virginia (hereafter "Virginia") and do business in that State. They make loans with disclosed interest rates of over 130% secured by the titles to automobiles registered and subject to lien in North Carolina. Virginia permits high interest loans.

    North Carolina, as a matter of public policy has enacted a number of statutes which declare such loans predatory and sanctionable, e.g., N.C.G.S. 53-164, et. seq. consumer finance ), N.C.G.S. 24-1.1, et. seq. (usury), and N.C.G.S. 75.1 (unfair trade practices).

Claimant executed documents for two loans with Respondents on June 25, 2015 and again on November 17, 2017. Both documents were executed in Virginia. Claimant paid off both loans, one by September 22, 2016 and the other on August 30, 2018. In April of 2019 Claimant filed an action alleging violations of N.C.G.S. 53-165 et. seq., G.S. 53-190(a) et. seq., G.S. 24-1.1, and G.S. 75.1. A derivative claim for punitive damages was also filed.

There is a controversy concerning where the transaction took place; i.e., whether the contract formational events occurred "wholly outside of the State's borders". If the contractual events all took place in Virginia, these contracts would be outside the application of the North Carolina consumer law statutes. If the events occurred in North Carolina, its consumer laws would apply.

N.C.G.S 53-190(b) of the North Carolina Consumer Finance Act (hereinafter "NCCFA") regulates "any lender" who "comes into this State to solicit or otherwise conduct activities." To determine whether a lender was doing business in North Carolina under G.S. 53-190(a), an inquiry must be conducted regarding whether there was a "solicitation, discussion, negotiation, offer, acceptance, signing of documents, and delivery and receipt of funds," in North Carolina .

Respondents seek to dismiss this case on the pleadings asserting that the transaction took place in the Commonwealth of Virginia and that it is the *lex loci contractus* and that its forum and choice of law contractual provisions control. It also asserts that the North Carolina statutes are pre-empted by the dormant Commerce Clause's "extraterritoriality principle" and the First Amendment of the Constitution of the United States.

Claimant seeks a judgment in its favor asserting that the pleadings and affidavits establish that there is a violation of the North Carolina Consumer Finance Act, Sections 53-190(a), 53-190(b), the Usury Law, and N.C.G.S. 75-1, et. seq. Claimant asserts that the dormant Commerce Clause is inapplicable. Claimant seeks an *Interim Award* of compensatory and treble damages; pre-judgment and post-judgment interest as of the date of the filing on April 2, 2019; and reasonable attorney's fees pursuant to N.C.G.S. 75-16.1 in a subsequent *Final Award*.

Recent rulings by the North Carolina Court of Appeals have brought clarity to how cases of this nature must be analyzed. These rulings are applicable to the issues in this case.

NCCFA Chapter 53. Claim

The contract has a "choice of law" provision specifying that Virginia law governs. The contract also requires customers to drive to Virginia to sign its loan contracts. Respondents assert this as a bar to Claimant's NCCFA cause of action. It asserts that the doctrine of *lex loci contractus* controls and that all the contract activity took place in Virginia.

In the recent North Carolina Court of Appeals case of Wall, et. al. v. Automoney, Inc. filed on July 19, 2022, 2022-NCCOA-498, No. COA 21-419, identical issues were considered and decided.

In that case, the Court stated that the NCCFA is unavailable if "all contractual activities occur entirely outside the state, Pgh 27. The Court went on to elaborate what constituted contractual activities in North Carolina within the purview of the statute: "For example, Plaintiff alleges Defendant solicited, discussed, and negotiated the terms of loan agreements, used the DMV to perfect their security interests, and repossessed cars in North Carolina", Pgh 27.

Claimant filed a document captioned Declaration of Donta Sykes in which she relates calling the Respondents from her home in North Carolina to the out of state offices of Respondents. She had a telephone conversation with a representative of Respondents in their office in Virginia and discussed the type of car she owned and the documents she needed to bring to Virginia to get a loan. Respondents' Affidavit recites its business model including the practice that all documents were signed in Virginia with no reference to any discussion with Claimant. Claimant's Declaration is adequate evidence of a "discussion" sufficient to invoke jurisdiction.

Case Number: 01-22-0000-1841 2

Case 1:19-cv-00489-LCB-JLW   Document 193-1   Filed 10/07/22   Page 2 of 4

Another Court of Appeals case filed on July of 2022, Troublefield v. Automoney, Inc., 2022 NCCOA-497, No. COA21-421, Filed 19 July 2022, Pgh. 41, supports this position. That Court held that a telephone conversation taking place between a consumer located in North Carolina and Respondents in Virginia concerning the requirements and process for obtaining a loan amounted to a "discussion" sufficient to support jurisdiction.

Respondents further acknowledges that it perfected its security interest with the North Carolina DMV and later repossessed Claimant's car in North Carolina. The Court in Wall, et. al. v. Automoney, Inc. on July 19, 2022, 2022-NCCOA-498, No. COA 21-419, Pgh. 27, held these activities constituted doing business in North Carolina.

Accordingly, the record supports a conclusion that contractual activity took place in North Carolina including discussions, lien placement, and repossession sufficient to warrant a finding of jurisdiction subject to the North Carolina consumer laws. Accordingly, neither *lex loci contractus*, nor "choice of law" is available as a defense to the NCCFA claim. Respondents' conduct is actionable, and liability is established based upon the submitted documents.

### Chapter 24. Usury Claim

Chapter 24 of the North Carolina General Statutes captioned "Interest" caps interest rates in commercial transactions. Any interest rate more than those amounts is usurious. Chapter 22B-3 renders a contract, "entered into in North Carolina that requires the prosecution of any action…to be instituted or heard in another state is void as against public policy and unenforceable, Wall, Pgh. 42. Chapter 24.1(a) deems a loan agreement "to have been made in this State and therefore subject to the provisions of this Chapter if the lender offers or agrees in this State to lend to a borrower who is a resident of this state…." Wall, Pgh 43. Discussion of the loan is a consideration, Wall, Pgh 44. Enforcement of loan provisions using the North Carolina courts is also a consideration, Wall, Pgh. 20. Claimant's discussion with Respondents are sufficient to satisfy the "deems a loan agreement to have been made in this State" requirement for the application of N.C.G.S. 24.1. Respondents' contracts charged the plaintiff interest rates of more than 130% and 150%. This violates the interest rate cap and is a violation of the North Carolina statute. Claimant is entitled to recover damages under this statute.

### Forum Defense

The loan contract at issue contained a "forum clause" providing that Virginia was the place for conducting any legal proceeding. North Carolina law provides that a violation of a public policy statute, such as the Usury Statute, G.S. 24-1.1 overrides a "forum clause" making the contract void, Troublefield v. Automoney, Inc., 2022 NCCOA-497, No. COA21-421, Filed 19 July 2022, Pgh. 27. That ruling is applicable here and that defense is denied.

### Dormant Commerce Clause Defense

Addressing the "Dormant Commerce Clause" defense, the U.S. Supreme Court in TitleMax v. Weissman, No. 21-1020 (3rd Cir., January 24, 2022) ruled that the clause did not bar the filing of causes of action like those under consideration herein. Respondents may not bar the Claimant from recovery using this legal theory.

### Chapter 75-1.1 Unfair Trade Practice Claim

A violation of Chapter 53 of the NCCFA is an unfair and deceptive trade practice as a matter of law, State of NC vs. NCCS Loans, 624 S.E.2d 371, 378, 174 N.C.App., 630, and entitles a claimant to damages. A violation of the Usury Statute is also within the ambit of Chapter 75-1.1. A violation of either entitles Claimant to treble damages. Both were violated entitling Claimant to treble damages.

The pleadings establish that the total sum paid by Claimant to Respondents under the terms of the contracts is $9,868.00. Under N.C.G.S. 53-166(d) that amount is subject to interest and principal at the legal rate of 8% to the date of filing. The amount due is $29,604.00. Reasonable counsel fees are also awarded.

# Interim Award

Having reviewed and considered the Motions for Summary Dismissal, supporting briefs, responses, and replies, for the reasons stated herein, the following Interim Award is entered.

1. Respondents' TMX's and TitleMax's Motions to Dismiss are denied.

2. Claimant's Motion to Dismiss Respondents' Defenses and for the entry of both an Interim Award and Final Award addressing the issue of counsel fees is granted. Judgment is awarded to Claimant for treble damages and interest on the principal in the amount of $29,604.00.

3. Claimant is to prepare and submit an attorney fee affidavit for transmittal to the AAA within seven business days from the date of this Motion to Dismiss Order and Interim Award, a copy to also be transmitted to Respondents' counsel. Respondents' counsel has three business days to respond and is to submit any response offered to the AAA for transmission to the undersigned. Upon and after such submissions, the matter shall be deemed submitted to the undersigned for determination on reasonable attorney fees in a Final Award.

4. All claims and contentions otherwise asserted are deemed denied.

5. This Interim Award shall remain in full force and effect until the Arbitrator renders a Final Award.

IT IS SO ORDERED

*Chase B. Saunders*
_____
Hon. Chase B. Saunders, Arbitrator

September 14, 2022
_____
Date