IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| AARON GOINS, *et al.*, | ) |
| --- | --- |
| Plaintiffs, | ) |
| v. | ) 1:19CV489 |
| TITLEMAX OF VIRGINIA, *et al.*, | ) |
| Defendants. | ) |

# MEMORANDUM OPINION AND ORDER
## (CORRECTED VERSION) [1]

LORETTA C. BIGGS, District Judge.

Before the Court is a Motion to Enforce Award, Attorneys' Fees, and Enter Judgment with Interest, (ECF No. 161), filed by certain Plaintiffs as identified herein.[2] The motion requests that the Court confirm the Final Award issued by Arbitrator William H. Needle

---

[1] On August 17, 2022, this Court granted Plaintiffs' motion to enforce the Final Award of Arbitrator William H. Needle and accompanying request for attorneys' fees and judgment with interest ("August 17 Order"). (ECF No. 171.) Defendants subsequently filed a Motion to Correct and Certify as Final the Judgment Entered on August 17, 2022. (ECF No. 176.) Defendants have since filed a notice of appeal of the Court's August 17 Order in the Fourth Circuit, (ECF No. 178), and the Fourth Circuit granted Defendants' "motion to suspend briefing pending resolution of the motions to correct and certify as final the judgments of the district court." To facilitate timely resolution of that appeal, the Court files this corrected version of its August 17 Order, as well as a separate order addressing Plaintiffs' attorney's fees. This corrected version replaces and supersedes the original August 17, 2022, Order. A corrected version of the Final Judgment in this matter will likewise be entered and filed contemporaneously.

[2] The Plaintiffs bringing this motion include Kathy Bratton-Harbison, Lindsay Currie, Sandra Darrisaw, Tamera Davis, Lauren Grimsley, Charlene Harris, Linda Hedrick, Antoinette Jackson, Michael Kevin Jones, Jermale Keys, Jamorris Singleton, and Willie Warren. (ECF No. 161 at 1.)

("Final Award") pursuant to 9 U.S.C. § 9 and enter judgment with interest on behalf of Plaintiffs against Defendants TitleMax of Virginia, Inc. and TitleMax of South Carolina, Inc. (collectively "TitleMax"),[3] consistent with the Final Award. (*Id.*) Plaintiffs also request this Court award attorneys' fees for time spent after arbitration. (*Id.*) For the reasons stated herein, Plaintiffs' motion will be granted.

## I. BACKGROUND

The Plaintiffs in this action allegedly entered into a "car title loan" transaction with Defendants at unlawful rates of interest.[4] (*See* ECF No. 3.) The action was initially brought in state court but removed to this Court by Defendants on May 10, 2019. (ECF No. 1.) The Complaint alleges violations of the North Carolina Consumer Finance Act ("CFA"), North Carolina's usury statutes, and the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). (ECF No. 3 at 7–8 (citing N.C. Gen. Stat. §§ 24-1.1, 53-165, 75-1.1).) On April 22, 2020, this Court compelled arbitration related to all but a few of the numerous Plaintiffs' claims and ordered parties to notify the Court of any arbitration awards within seven days after arbitration concluded. (ECF No. 76 at 16.) The Plaintiffs bringing this motion were a part of the claims ordered to arbitration.

At arbitration, TitleMax argued that North Carolina law should not apply, because the loans were created entirely outside of North Carolina.[5] (ECF No. 162-2 at 2.) The Arbitrator found that the loan fell within the scope of, and violated, the CFA and UDTPA and ordered

---

[3] The Court will refer to both Defendants collectively as "TitleMax" throughout its opinion.
[4] A "car title loan" is a short-term loan product secured by a lien on the borrower's vehicle.
[5] TitleMax also argued that applying North Carolina law would violate the Commerce Clause of the U.S. Constitution. (ECF No. 162-2 at 2–3.) The Arbitrator found this argument unpersuasive, and TitleMax has not raised this constitutional argument in opposing Plaintiffs' motion. (*Id.* at 12; ECF No. 163 at 4–6.)

2

TitleMax to pay to Plaintiffs treble damages in the sum of $365,183.22. (ECF No. 162-1 at 5–6.) The Final Award provides individualized damage awards for each plaintiff bringing this motion. (*Id.* at 5.)

Plaintiffs then, consistent with this Court's order, timely filed this motion. (ECF No. 161.) TitleMax opposes the motion and has asked the Court to vacate the Final Award. (ECF No. 163 at 1.) Specifically, TitleMax argues that the Final Award showed a "manifest disregard for well-settled North Carolina law" by improperly calculating treble damages and "allow[ing] windfall recoveries for Plaintiffs." (*Id.*) TitleMax also opposes the award of attorneys' fees, arguing that it is "not . . . unjustifiably refusing to pay the award simply because it disagrees with [the Arbitrator's decision]"—rather, it is refusing to do so because "North Carolina case law clearly prohibits the outcome (i.e., the recovery of a treble penalty) set forth in the Final Award." (*Id.* at 16–17.) TitleMax does not address the issue of pre- or post-judgment interest.

## II. STANDARD OF REVIEW

Judicial review of an arbitration award "is among the narrowest known at law." *UBS Fin. Servs., Inc. v. Padussis*, 842 F.3d 336, 339 (4th Cir. 2016) (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998)). Judicial review is "severely circumscribed. . . . [E]ven a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award." *Apex Plumbing*, 142 F.3d at 193–94. The court does not sit to reevaluate evidence or review mistakes of law. *Id.* at 194. Instead, the reviewing court asks only "whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it."

3

*Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007) (quoting *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994)).

Thus, courts may vacate or modify an arbitration award only under "limited circumstances." *Padussis*, 842 F.3d at 339. The party opposing enforcement of the award bears the "heavy burden" of showing that grounds to vacate the award exist under either the Federal Arbitration Act ("FAA") or common law. *Three S Del., Inc.*, 492 F.3d at 527. Relevant to this case, an award is vacated at common law where "the award evidences a manifest disregard of the law." *Id.* This high bar is reached only where (1) "the disputed legal principle is clearly defined and not subject to reasonable debate," and (2) "the arbitrator refused to apply that legal principle." *Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015). Merely failing to explain a legal conclusion will not justify vacating an award where the legal reasoning can be inferred. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960). Further, "proving manifest disregard require[s] something beyond showing that the arbitrators misconstrued the law." *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 481 (4th Cir. 2012).

Additionally, an award will be vacated under the FAA where the arbitrator "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). An imperfect execution of the agreement is not a sufficient cause to vacate: an award "even arguably construing or applying the contract must stand" under this provision of the FAA "regardless of a court's view of its (de)merits." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). An award that disposes of all issues is "mutual, final, and definite" even where the award does not detail

4

the arbitrator's full reasoning. *See Remmey*, 32 F.3d at 150. "Arbitrators have no obligation to the court to give their reasons for an award." *Enter. Wheel & Car Corp.*, 363 U.S. at 598.

## III. DISCUSSION

### A. Arbitrator's Final Award

TitleMax first argues that the Arbitrator manifestly disregarded North Carolina law by conflating the frameworks for determining damages under North Carolina's CFA and UDTPA. Specifically, TitleMax argues that the Arbitrator improperly calculated the treble damages available to Plaintiffs by using the CFA penalty as the base of the treble damages calculation, rather than the "injury done" or actual damages suffered by Plaintiffs. (ECF No. 163 at 11.) TitleMax likens that penalty to punitive damages and argues that Arbitrator's Final Award merely trebles these punitive damages without any reduction for the principal loan amounts received by Plaintiffs. (*Id.* at 12–13.) Last, TitleMax argues that the Arbitrator failed to execute his powers under the terms of the arbitration agreement by not providing a written explanation of the damages award. (*Id.* at 14.)

TitleMax has failed to satisfy its burden of showing that the Arbitrator manifestly disregarded the law. TitleMax's argument does nothing more than challenge the Arbitrator's interpretation of applicable law—something courts have consistently held will not warrant the vacating of an arbitration award. *See, e.g., Interactive Brokers LLC v. Saroop*, 969 F.3d 438, 443 (4th Cir. 2020) ("When parties consent to arbitration, and thereby consent to extremely limited appellate review, they assume the risk that the arbitrator may interpret the law in a way with which they disagree." (quoting *Wachovia*, 671 F.3d at 478 n.5)); *SmartSky Networks, LLC v. Wireless Sys. Sols., LLC*, No. 20-CV-000834, 2022 WL 353801, at *5 (M.D.N.C. Feb. 7, 2022) ("A district court may not overturn an arbitration award 'just because it believes, however

5

strongly, that the arbitrators misinterpreted the applicable law.'" (quoting *Wachovia*, 671 F.3d at 478 n.5)).

Here, Plaintiffs sought treble damages pursuant to the UDTPA, specifically, under N.C. Gen. Stat. § 75-16, in connection with their claim for damages for TitleMax's violation of the CFA. The Arbitrator awarded treble damages, interpreting *State ex rel. Cooper v. NCCS Loans Inc.*, 624 S.E.2d 371 (N.C. App. 2005), as permitting TitleMax's violation of the CFA to serve as a basis for treble damages under the UDTPA. (ECF No. 162-1 at 3–4.) In *State ex rel. Cooper*, the North Carolina Court of Appeals affirmed a summary judgment order finding a violation of the CFA to be an adequate basis for a claim under the UDTPA. 624 S.E.2d at 378 (explaining that "violations of statutes designed to protect the consuming public and violations of established public policy may constitute unfair and deceptive practices" and finding "[d]efendants' practice of offering usurious loans was a clear violation of this policy"). In the Final Award, the Arbitrator reasoned that:

> It has been established that Claimants entered into "usurious loans" with Respondents, substantially exceeding the rate of interest allowed by the North Carolina Consumer Finance Act and thereby violating a "paramount public policy of North Carolina" to protect its resident borrowers. Therefore, the loan agreements between the parties were a *per se* violation of that Act, allowing for a trebling of any damages. *See, e.g.*, *Marshall v. Miller*, 302 N.C. 539, 547 (1981) ("[T]he Legislature intended trebling of any damages assessed to be automatic once a violation is shown.").

(ECF No. 162-1 at 4.)

In terms of the actual calculations made, the Arbitrator provided a chart detailing how each damage assessment was made, listing the total interest paid by each Plaintiff, as well as the interest paid plus vehicle value for Plaintiffs whose vehicles were repossessed. (*Id.* at 5.)

6

TitleMax's argument that the Arbitrator's reasoning for not deducting the principal received by each Plaintiff on the loan was also addressed in the Arbitrator's Interim Award, which was explicitly incorporated into the Final Award. (ECF No. 162-2 at 12–13; ECF No. 162-1 at 1.) As detailed in the Interim Award, the Arbitrator relied on the CFA's penalty provision, (ECF No. 162-2 at 12–13), which states that for any loan contract violating the Act, any "party in violation shall not collect, receive, or retain any principal or charges whatsoever with respect to the loan." N.C. Gen. Stat. § 53-166(d).

TitleMax's argument that the Arbitrator's award under the CFA "penalty" provision amounted to punitive damages (and thus was the improper base for trebling under § 75-16) also amounts to a disagreement with the Arbitrator's interpretation of North Carolina law. After setting out individualized calculations based on the actual interest paid by each Plaintiff, the Arbitrator reasonably considered the damages to be compensatory and trebled them under the applicable law. (ECF No. 162-1 at 5.)

It is not for this Court to determine whether the Arbitrator's interpretation of the CFA and its interplay with the UDTPA or North Carolina case law is correct. Under the "severely circumscribed" standard of review of arbitration awards, it is enough that the Arbitrator provided some basis for his assessment and calculations of damages. Here, the Arbitrator did his job: he identified the issue, interpreted relevant law, and concluded that North Carolina law warranted an award of treble damages based on TitleMax's violation of the Consumer Finance Act.

Accordingly, the Final Award of the arbitrator must and will be confirmed.

## B. Attorneys' Fees

TitleMax next challenges Plaintiffs' request for attorneys' fees, arguing that their refusal to pay out the Final Award is not without justification. Specifically, TitleMax argues that their request for relief is "rooted in the fact that North Carolina case law clearly prohibits the outcome." (ECF No. 163 at 17.) It contends that the Arbitrator's manifest disregard for the law makes any award of post-arbitration attorneys' fees unnecessary and that it is within this Court's discretion to deny Plaintiffs' request.

"[W]ithout statutory authorization or contractual agreement between the parties, the prevailing American rule is that each party in federal litigation pays his own attorney's fees." *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 320 (4th Cir. 2003) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 263–64 (1975)). The burden is on the party seeking attorneys' fees to "identify [a] statutory or common law basis that would support" such an award. *Id.*

Here, Plaintiffs identify two authorities that they claim allow for an award of attorneys' fees. (ECF No. 162 at 4.) First, Plaintiffs argue that the North Carolina Revised Uniform Arbitration Act allows for an award of "reasonable attorneys' fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming . . . an award." (*Id.*); N.C. Gen. Stat. § 1-569.25(c). Under this standard, a court has discretion to award attorneys' fees to "promote[] the statutory policy of finality of arbitration awards" and discourage "all but the most meritorious challenges." *Astanza Design, LLC v. Giemme Stile, S.p.A.*, 220 F. Supp. 3d 641, 653 (M.D.N.C. 2016) (quoting § 1-569.25(c) cmt. 3).

8

Case 1:19-cv-00489-LCB-JLW   Document 246   Filed 12/21/22   Page 8 of 13

Alternatively, Plaintiffs argue that awarding attorneys' fees is within the Court's "inherent authority." (ECF No. 162 at 4 (citing *Int'l Chem. Workers Union (AFL-CIO), Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985)).) "[I]n narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980)). One such circumstance occurs "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . .'" *Roadway Express*, 447 U.S. at 766 (quoting *F. D. Rich Co. v. U. S. ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974)). A party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Chambers*, 501 U.S. at 46 (quoting *Hutto v. Finney*, 437 U.S. 678, 690 n.14 (1978)).[6]

Here, the purposes of N.C. Gen. Stat. § 1-569.25(c) are served by awarding attorneys' fees to Plaintiffs. While the Court need not evaluate the "strength or weakness of the losing party's argument" to award attorneys' fees, in this case, TitleMax's objections to the arbitration awards are not meritorious. As discussed at length in this Order and the Court's previous Orders confirming other arbitration awards in this case, judicial review of an arbitration award "is among the narrowest known at law." *Padussis*, 842 F.3d at 339. "[E]ven a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award," and a reviewing court will not reevaluate evidence or review mistakes of law. *Apex Plumbing*, 142 F.3d at 194. Nevertheless, TitleMax objected to the awards in this case on those very grounds—that the Arbitrator erred in applying North Carolina law when calculating

---

[6] A court sitting in diversity may exercise this inherent power even when state law does not allow for such an award, since "neither of [*Erie's*] twin aims," to discourage forum-shopping and avoid inequitable administration of the laws, "is implicated by the assessment of attorney's fees as a sanction for bad-faith conduct." *Chambers*, 501 U.S. at 52.

9

treble damages. In their briefs before this Court, TitleMax takes issue with the Arbitrator's calculations—the basis for which are laid out in the Final Award, which also incorporated the Interim Award. (ECF No. 163 at 10; ECF No. 162-1 at 12–13.) This Court is not permitted to second-guess the Arbitrator's interpretation of the relevant North Carolina law. Furthermore, to the Court's knowledge, TitleMax has refused to pay any arbitration awards in this case and has opposed every motion to enforce those awards, regardless of the merits of their objections. Thus, the Court in its discretion will award Plaintiffs attorneys' fees.

### C. Pre- and Post-Judgment Interest

In a diversity case, state law governs the award of prejudgment interest. *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999). Under North Carolina law, "[i]n an action other than contract, any portion of a money judgment designated by the fact finder as compensatory damages bears interest from the date the action is commenced until the judgment is satisfied." N.C. Gen. Stat. § 24-5(b). In the case of arbitration awards, however, North Carolina courts have rejected the award of prejudgment interest which would modify a final arbitration award and invade the authority of the arbitrator. *See, e.g.*, *Thompson v. Speller*, 808 S.E.2d 608, 611 (N.C. App. 2017); *Palmer v. Duke Power Co.*, 499 S.E.2d 801, 807 (N.C. App. 1998). For example, in *Palmer v. Duke Power Co.*, the North Carolina Court of Appeals affirmed the confirmation of an arbitration award absent prejudgment interest where the arbitrator did not explicitly contemplate prejudgment interest in the award itself. *Palmer*, 499 S.E.2d at 807. That said, North Carolina courts have distinguished between pre- and post-award prejudgment interest. *See Thompson*, 808 S.E.2d at 611. Specifically, awards for interest accrued *prior to* a final award by an arbitrator have been considered improper modifications of

10

final awards where the arbitrator fails to make any provision for pre-award interest. *Id.*; *see also Palmer*, 499 S.E.2d at 807. Without any provision to the contrary, only where there is "some mathematical error, error relating to form, or error resulting from the arbitrator exceeding his/her authority" will a court award pre-award interest. *Thompson*, 808 S.E.2d at 611 (quoting *Palmer*, 499 S.E.2d at 807). On the other hand, post-award prejudgment interest—that is, interest accrued *after* a final arbitration award and before the entering of judgment by a court— is left to the court's discretion. *Id.* at 612.

Here, Plaintiffs request interest from the date of their initial complaint filed in state court on April 2, 2019, to the date of judgment. (ECF No. 162 at 7.) The Arbitrator's Final Award, entered on December 13, 2021, makes no mention of pre-award interest, nor is there indication that the Arbitrator committed any error. (ECF No. 162-1 at 5–6.) Accordingly, pre-award interest would impermissibly modify the Final Award. As to post-award interest, this Court finds it appropriate to compensate Plaintiffs for the time between the Final Award issued on December 13, 2021, and the time in which judgement is entered. Thus, Plaintiffs are not entitled to pre-award prejudgment interest and are only entitled to post-award prejudgment interest.

As it relates to post-judgment interest, such interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); *see also Hitachi Credit Am. Corp.*, 166 F.3d at 633 (holding that § 1961(a) governs the award of interest in diversity cases); *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013) ("Under 28 U.S.C. § 1961, the award of post judgment interest on a district court judgment is mandatory."). "A judgment confirming an arbitration award is a 'money judgment' within the meaning of Section 1961(a)."

11

*Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 850 F. Supp. 2d 277, 287 (D.D.C. 2012); *see also Goldman, Walker, LLC v. Shahab*, No. 13-113698, 2015 WL 306746, at *6 (D. Md. Jan. 22, 2015). Such interest is set at the prevailing rate, as defined in § 1961, and assessed against the "entire judgment," including attorneys' fees. *Goldman Walker*, 2015 WL 306746, at *6 (citing § 1961). Consequently, Plaintiffs are entitled to post-judgment interest at the federal rate on the judgment confirming the Final Award and on this award of attorneys' fees.

For the reasons stated herein, the Court enters the following:

### ORDER

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Enforce Award and Enter Judgment, and for Attorneys' Fees and Interest, (ECF No. 161), is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant TitleMax of Virginia, Inc., is **ORDERED** to pay to each of the following named Plaintiffs, Lindsay Currie, Tamara Davis, Linda Hedrick, Jermale Keys, and Willie Warren, the damages as set forth in the Arbitrator's Final Award, (ECF No. 162-1), which sums are due and payable immediately upon filing of the Judgment.

**IT IS FURTHER ORDERED** that Defendant TitleMax of South Carolina, Inc., is **ORDERED** to pay to each of the following named Plaintiffs, Kathy Bratton-Harbison, Sandra Darrisaw, Lauren Grimsley, Charlene Harris, Antoinette Jackson, Michael Kevin Jones, and Jamorris Singleton, the damages as set forth in the Arbitrator's Final Award, (ECF No. 162-1), which sums are due and payable immediately upon filing of the Judgment.

**IT IS FURTHER ORDERED** that both Defendants TitleMax of Virginia, Inc. and TitleMax of South Carolina, Inc. shall pay post-award prejudgment interest on the

compensatory damages portion of each award they are responsible for at the North Carolina legal rate of eight percent, for the time between the issuance of the Final Award, December 13, 2021, and the date of entry of the Judgment in this action, as well as post-judgment interest at the federal statutory rate, which shall accrue from the entry of Judgment until all sums set forth in this Judgment are paid in full.

**IT IS FURTHER ORDERED** that Plaintiffs shall submit an itemized bill of costs and attorneys' fees as ordered herein within fourteen (14) days of the entry of this Order.[7]

Judgment will be entered simultaneously with this Order.

This, the 21st day of December 2022.

/s/Loretta C. Biggs
United States District Judge

---

[7] Attorney's fees have now been awarded by separate Order which shall be filed simultaneously with this Order and included in the Court's Final Judgement.