IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| AARON GOINS et al., ) | |
| ) | |
| Plaintiffs/Counter Defendants, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 19-cv-489 |
| ) | |
| TITLEMAX OF VIRGINIA, et al., ) | |
| ) | |
| Defendants/Counter Claimants. ) | |

### LORRAINE SLIGH'S REPLY TO OPPOSITION TO MOTION TO ENFORCE AWARD

TitleMax again attempts to relitigate the case here despite the fact that JAMS Arbitrator Terrence Croft conducted a merits hearing and decided the matter in Plaintiff's favor. The five (5) day merits hearing was June 27-July 2, 2022, where he heard sworn testimony from nineteen (19) witnesses for both sides. (Exhibit A). TitleMax's opposition claims that there was no hearing and that Arbitrator Croft issued his Award "solely on the dispositive submissions."[1] Arbitrator Croft evaluated the credibility of the Plaintiff as well as all of the witnesses called by TitleMax. It now asks this Court to find that Arbitrator Croft acted with manifest disregard for the law despite hearing the witnesses.

---

[1] This misrepresentation is likely because TitleMax fired all of its law firms again and so the lawyers who signed this opposition were not involved for the hearing. Still, the Court granted TitleMax an extension to file this opposition. The statements made throughout TitleMax's opposition here are simply not accurate—largely because the signers apparently never even bothered to speak with TitleMax's counsel (and still counsel of record, William Farley of Troutman Pepper) who actually took these cases to this five day full evidentiary hearing. The closing arguments and Exhibits are attached as Exhibit B and C.

1

This Court in this very matter has repeatedly rejected and enunciated the applicable standard to the efforts TitleMax makes here to unwind the entire purpose of arbitration. Dkt. 151 at page 3 (J. Biggs in *Sells* matter, August 26, 2021)(enforcing the exact same trebling under Unfair & Deceptive statute for violations of the North Carolina Consumer Finance Act. ("CFA")). Every North Carolina Superior Court Judge who has heard these matters have ruled against other car title loan providers. And now the North Carolina Court of Appeals has as well in the *AutoMoney* cases (DR 169). TitleMax's position is that everyone – North Carolina Judges, the North Carolina Court of Appeals, and dozens of arbitrators are all just wrong. And not just wrong but manifestly wrong.

## I. THE ARBITRATOR'S DAMAGES CALCULATION IS CORRECT

TitleMax maintains that Plaintiff cannot recover treble damages for the amount that is awarded for a violation of the CFA. There is no support for the contention that CFA precludes trebling under Chapter 75. *See e.g. O'Dell v. Legal Bucks, LLC*, 665 S.E.2d 767 (N.C. App. 2008). Plaintiff here, as in *O'Dell*, contended that Respondent violated Chapter 75 by failing to disclose that the loan violated the NCCFA.

TitleMax now cites to *Richardson v. Bank of Am., N.A.*, 182 N.C. App. 531, 562, (2007) and *Bernard v. Central Carolina Truck Sales*, 68 N.C. App. 228, 233 (1984) for the proposition that the damages should be reduced by the amount of the loan retained. However, those cases do not involve the CFA. That act on its terms specifically does not allow TitleMax to recover or get credit for its principal that it paid the Claimants. The operative statute, NCGS 53-166(d), expressly provides that a lender cannot "collect, receive or retain any amount on the loan." Therefore, Plaintiffs' compensatory damages

2

are the amount they paid plus the value of the vehicles taken without a credit for any principal. TitleMax does not get credit for the principal, because, unlike in *Richardson* and *Bernard*, the statute here which specifically forms the basis of these claims says on face that it gets no such credit. Further, TitleMax chose not to pursue a Counterclaim to recover the amount it paid. TitleMax may not like the interpretation of the statute by the Arbitrator, just like many other Claimants do not like other Arbitrators' interpretation of the statute, but that does not give it a basis to get a do over here. TitleMax also cites *Shavitz v. City of High Point*, 177 N.C. App. 465, 474 (2006) . *Shavitz* is actually a red light camera penalty case—there actually were not damages in that case of course and there is no claim for unfair and deceptive damages at all. Finally, TitleMax cites *Jennings Glass Co. v. Brummer*, 88 N.C. App. 44, 53 362 S.E.2d 578 (1987), which is an election between a punitive and a Chapter 75 remedy and has no bearing on the matter here. Arbitrator Croft chose not to award punitive damages, despite request for such. Indeed, the North Carolina Courts have found that a CFA violation can be the basis for a Chapter 75. *See State ex rel. Cooper v. NCCS Loans, Inc.* 624 S.E.2d 371 (2005).

## II. ARBITRATOR CROFT'S REJECTION OF THE COMMERCE CLAUSE DEFENSE WAS NOT A MANIFEST DISREGARD OF THE LAW. IT WAS ACTUALLY CORRECT

TitleMax itself has taken its commerce clause defense all the way to SCOTUS. It lost. Yet now it contends arbitrators are manifestly disregarding the law by also rejecting it. This "principle against extraterritoriality" is born of the notion that "a State may not regulate commerce occurring <u>wholly</u> outside of its borders." *Healy v, Beer Inst*., 491 U.S.

3

324, 109 S. Ct. 2491, 105 L. Ed. 2d 275 (1989)(emphasis added). The reality is TitleMax's conduct was simply not <u>wholly</u> outside North Carolina.

In determining whether a state statute violates the Dormant Commerce Clause, the courts conduct a two-tiered analysis. *Environmental Technology Council v. Sierra Club*, 98 F.3d 774 (4th Cir. 1996). When a state statute directly regulates or discriminates against interstate commerce, or when the effect is to favor in-state economic interests over out-of-state interests, the statute can be struck down. *Brown-Foreman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 106 S.Ct. 2080, 90 L. Ed. 2d 552 (1986.) The statute does not dictate what interest rates Defendant may charge its borrowers in other states nor does it require Defendant to lend in other states at the rates of interest required by North Carolina law. Rather, the CFA governs Defendant's loans *only* when Defendant chooses to enter into the State of North Carolina for the purpose of engaging in conduct and activities that further its lending business. Furthermore, N.C.G.S. §53-190 does not discriminate in favor of North Carolina car title loan lenders and against Defendant. Domestic lenders are not permitted to charge higher rates of interest than Defendant.

Respondent surely cannot argue that North Carolina does not have a legitimate interest in protecting its citizens from predatory lending practices. It is the well-settled law of this state that the North Carolina usury and unfair trade practices statutes were enacted to protect North Carolina consumers, a purpose that is "squarely within this State's ability to shelter its people … from fraud." *See Western Sky*. In *Western Sky*, the North Carolina Business Court, citing *Aldens, Inc. v. Packel*, 524 F.2d 38 (3rd Cir. 1975) observed that "Congress has deferred to the states on the matter of maximum interest rates

4

in consumer credit transactions." The Business Court further observed that "courts throughout the United States have consistently allowed states to regulate the content of loan contracts made by out-of-state lenders to resident borrowers." *Western Sky*.

The Business Court in *Western Sky* rejected a defense challenge that N.C.G.S. §53-164, *et seq.*, violated the dormant Commerce Clause holding that "[t]he statutes at issue do not attempt to regulate conduct beyond North Carolina's borders and do not unduly burden interstate commerce." The Court further observed that "[t]he statutes do not purport to dictate the interest rates or other lending practices that Defendants apply in any state other than North Carolina." The Court concluded, after engaging in a balancing analysis pursuant to *Brown-Foreman*, that "the State's application of the relevant statutes to the loans at issue does not violate the dormant Commerce Clause."

TitleMax cites a Seventh Circuit opinion—*Midwest Title Loans*— for its argument that the applicable North Carolina laws are unconstitutional and claims the case is on "all fours." *Midwest Title Loans* addresses the authority of the State of Indiana to force a title lender to register to conduct business in Indiana. It does not address, and expressly distinguishes, the question of whether Indiana law would apply to a consumer loan transaction with a Hoosier in an Indiana Court. The Court observed:

> Midwest has yet to sue any of its title borrowers. But if there were a suit, an Indiana court might rule that Indiana had the "most intimate contacts" with the transaction and therefore that its law applied even though the loan had been made in Illinois. Or it might rule that Illinois's failure to limit the interest rates in title loans was so offensive to the public policy of Indiana that the Illinois law would not be enforced in Indiana – in which event the Indiana courts might refuse to apply Illinois law even if Midwest's contracts contained a choice of law clause directing that Illinois govern a suit arising from the contract – which they do. In short, a particular set of facts giving

5

rise to litigation [can] justify, constitutionally [that is, under the due process clause] the application of more than one jurisdiction's laws.

*Id*. at 668 (internal citations omitted). Not only is Midwest Tile not "on all fours" with this matter—it actually directly says that it is not.

### **Weissmann v. TitleMax.**

TitleMax has already litigated this defense to conclusion. On January 24, 2022, the Third Circuit expressly rejected a challenge by TitleMax to the application of an identical Pennsylvania law to title loan transactions between Pennsylvania residents consummated at TitleMax locations in neighboring states. *TitleMax of Delaware v. Weissmann*, 24 F.4th 230 (3rd Cir. 2022). TitleMax frantically appealed to the US Supreme Court. SCOTUS also chose to reject their efforts and denied their petition for a writ of certioriari. *Weissmann*, 597 US __, June 27, 2022). Pennsylvania, like North Carolina, does not permit high interest consumer loans. "In this case, we are required to determine whether applying Pennsylvania usury laws to an out-of-state lender violates the dormant Commerce Clause. We conclude that it does not." *TitleMax of Del., Inc. v. Weissmann* (3rd Cir. 2022).

*Weissman* is indistinguishable. In *Weissman*, TitleMax made loans to Pennsylvania residents from loan-making offices outside of Pennsylvania. TitleMax secured the loans with liens on borrower's vehicle titles which it perfected using the Pennsylvania DOT. *Id.* TitleMax accepted payments on its loans from Pennsylvania by phone in Pennsylvania. *Id.* TitleMax sent collection letters and made collection calls into

6

Pennsylvania. *Id*. For the purposes of its decision that Pennsylvania law applied, the Third Circuit even accepted TitleMax's contentions that:

> TitleMax does not have any offices, employees, agents, or brick-and-mortar stores in Pennsylvania and is not licensed as a lender in the Commonwealth. TitleMax claims that it has never used employees or agents to solicit Pennsylvania business, and it does not run television ads within Pennsylvania, but its advertisements may reach Pennsylvania residents… *Id*.

Given these activities, the Court rejected TitleMax's contention. The Court wrote:

> TitleMax's transactions involve more than a simple conveyance of money at a brick-and-mortar store in a location beyond Pennsylvania's border. Rather, the loan creates a creditor-debtor relationship that imposes obligations on both the borrower and lender until the debt is fully paid. For instance, Pennsylvanians with TitleMax loans made payments to TitleMax while physically present in the state…TitleMax's loan agreements grant TitleMax a security interest in the Motor Vehicle, which in the case of a Pennsylvania borrower is a Pennsylvania-registered automobile. TitleMax records these liens with PennDOT and may repossess the vehicle if the consumer defaults on his loan. Thus, by extending loans to Pennsylvanians, TitleMax takes an interest in property located and operated in Pennsylvania.

*TitleMax of Del., Inc. v. Weissmann* (3rd Cir. 2022), 12-13 (internal citations and quotation omitted).

These are the same arguments that this Respondent has made and continues to make here—that because loans documents were signed out of state, nothing else matters, and North Carolina law cannot apply. That is simply not the case. The Third Circuit and SCOTUS, as well as Arbitrator Croft, correctly rejected TitleMax's claim that only the state where the loan was made can lawfully regulate the loan.

> Under the modern approach, contracts formed between citizens in different states implicate the regulatory interests of both states. Here, TitleMax extended credit to Pennsylvanians and, under the modern view, it does not matter that the consumers would have been physically outside of Pennsylvania when the transaction was initiated.

*TitleMax of Del., Inc. v. Weissmann* (3rd Cir. 2022) at 12, FN 9.

Further, in rejecting TitleMax's Commerce Clause defense, the Third Circuit distinguished loan transactions from sales transactions, such as *Carolina Trucks* on which Respondent relies. "These aspects of loan servicing make TitleMax's conduct different from that in the *Healy* line of cases, which largely involved transactions in goods that ended at the point of sale." *Id.* at 13 (distinguishing sales cases, including th 4th Circuit case *Carolina Trucks)* The Court concluded:

> Unlike the sale of a good, a TitleMax loan has a longer lifespan: it involves later payments and permits a physical taking (repossession) from inside another state. Because TitleMax both receives payment from within Pennsylvania and maintains a security interest in vehicles located in Pennsylvania that it can act upon, its conduct is not "wholly outside" of Pennsylvania. For these reasons, applying the Pennsylvania statutes to TitleMax does not violate the extraterritoriality principle…

*Id.* at 13-15.

Yet, TitleMax now contends the 4th Circuit provided binding precedent to the matter here with *Carolina Trucks*—despite the reality that transaction of goods that end at the point of sale cases are very different than the ongoing debtor/creditor relationship present here. Having concluded that TitleMax's title loan transactions with Pennsylvania borrowers are not wholly extraterritorial, the Third Circuit next turned to "whether the burdens from the state law being applied on interstate commerce substantially outweigh

8

the putative local benefits." *Id*. at 16. The Court concluded because "the laws do not discriminate between in-staters and out-of-staters, the inquiry as to the burden on interstate commerce should end and further analysis of the local benefits is unnecessary." *Id*. at 17. The Court further found even weighing the local benefit to the burden on interstate commerce would not invalidate the application of Pennsylvania law, concluding:

> Pennsylvania has a strong interest in prohibiting usury. Applying Pennsylvania's usury laws to TitleMax's loans furthers that interest, and any burden on interstate commerce from doing so is, at most, incidental. Pennsylvania may therefore investigate and apply its usury laws to TitleMax without violating the Commerce Clause.

*Id*. at 18

Similarly, North Carolina has a strong public policy preventing usury. Respondent's Commerce clause defense was properly rejected. It was certainly not a "manifest disregard" and the Court system ought not be evalutating arbitration awards de novo. Doing so would eliminate the purpose of arbitration altogether.[2]

### III. This Court Should Award Attorneys' Fees Resulting from this Challenge to the Arbitrators' Award so that this Delay Conduct is not Rewarded.

Further, both the North Carolina's Revised Uniform Arbitration Act, N.C. Gen.

---

[2] TitleMax also mentions in a footnote that Croft did not "properly consider the choice of law provision in the operative loan agreement." Croft, of course, did not need to explain in his award his rejection of every single argument TitleMax made. However, his award actually did reject that exact argument: "North Carolina law is clear that choice of law provisions which purport to allow lenders to evade North Carolina usury laws violate public policy and North Carolina will not enforce such choice of law provisions. A bevy of North Carolina decisions decided on July 19, 2022 support this conclusion." Interim Award 4 at page 1.

9

Stat. § 1-569.25(c) and, in addition, the court's inherent authority to allow for an award of attorneys' fees. *See International Chemical Workers Union v. BASF Wyandotte Corp.,* 774 F.2d 43, 47 (2d Cir. 1985). This matter has gone on far too long and - even after losing before so many Arbitrators - Titlemax continues to unjustifiably refuse to pay. The Court should award Plaintiff attorneys' fees as it has in the past and should likewise consider more fees on remand if TitleMax appeals again. A Declaration in support thereof is attached as Exhibit D. TitleMax, finally, does not even challenge Arbitrator Croft's award of attorneys' fees.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order confirming the Award of Arbitrator, entering judgment (with interest from the date of the Award) against TitleMax of Virgina, Inc. and awarding Plaintiff additional attorneys' fees for time spent enforcing the Arbitration Award. A proposed Judgment is being submitted herewith as Exhibit E.

This is the 10th day of January, 2023

>  */s/ Andrew H. Brown*
> Andrew H. Brown
> N.C. State Bar No. 28450
> Attorney for Plaintiffs

**FOR THE FIRM:**
**BROWN, FAUCHER, PERALDO & BENSON, PLLC**.
822 North Elm Street, Suite 200
Greensboro, NC  27401
(336) 478-6000 (telephone)
(336) 273-5597 (facsimile)
drew@greensborolawcenter.com

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing document complies with the word count limits contained in LR 7.3(d)(1).

>	*/s/ Andrew H. Brown*
>	Andrew H. Brown
>	N.C. State Bar No. 28450
>	Attorney for Plaintiffs

**FOR THE FIRM:**

**BROWN, FAUCHER, PERALDO & BENSON, PLLC**.
822 North Elm Street, Suite 200
Greensboro, NC 27401
(336) 458-0058 (telephone)
(336) 273-5597 (facsimile)
drew@greensborolawcenter.com