# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| AARON GOINS, et al., | |
| Plaintiffs/Counter Defendants, | |
| v. | Case No. 19-cv-489 |
| TITLEMAX OF SOUTH CAROLINA, INC., et al., | |
| Defendants/Counter Plaintiffs. | |

## TITLEMAX OF SOUTH CAROLINA, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF ANNETTE RIDGEWAY'S MOTION TO ENFORCE AWARD AND ENTER JUDGMENT

Defendant TitleMax of South Carolina, Inc. ("TitleMax") submits this Memorandum in Opposition to Plaintiff Annette Ridgeway's ("Plaintiff") Motion to Enforce Award and Enter Judgment (the "Motion"). (ECF No. 303.) For the reasons detailed herein, this Court should deny the Motion and enter an Order vacating the award.

## STATEMENT OF FACTS

On April 22, 2020, this Court ordered the parties to arbitration pursuant to 9 U.S.C. § 4 and stayed the above-captioned action pending resolution of arbitration in accordance with the loan agreements between Plaintiff and TitleMax. Thereafter, Sabrina Hsin Hua Lee was appointed arbitrator. The parties subsequently submitted cross-motions for summary disposition on Plaintiff's claims, and the Arbitrator ultimately entered an Order and Award (the "Final Award") based solely on the dispositive submissions.

Plaintiff's claims arise from the following set of operative facts. Plaintiff was a North Carolina resident who traveled to South Carolina on multiple occasions to obtain a loan product from TitleMax. Upon arrival at a TitleMax store in South Carolina, Plaintiff applied for a loan

1

and entered into a loan agreement (collectively, the "Loan Agreements") with TitleMax.  The Loan Agreements – which were all executed while Plaintiff was physically present in a South Carolina store – contained a choice of law provision mandating application of South Carolina law.  Following execution of the Loan Agreements, and while still physically present in a South Carolina store, Plaintiff received the proceeds.

Plaintiff is now challenging the interest terms, clearly set forth in the Loan Agreements, based on North Carolina law.  Plaintiff alleged the following claims: (i) a violation of the North Carolina Consumer Finance Act ("CFA") (N.C. Gen. Stat. § 53-165 *et seq.*); (ii) in the alternative, a claim for damages under the North Carolina usury statutes (N.C. Gen. Stat. § 24-1.1 *et seq.*); and (iii) violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") (N.C. Gen. Stat. § 75-1.1).

TitleMax asserted four primary defenses against the claims.  First, the Loan Agreements contain a choice of law clause mandating application of South Carolina law.  Second, even if the choice of law provision were set aside, *lex loci contractus* principles and the Restatement (Second) of Conflict of Laws § 187 mandate application of South Carolina law.  Third, TitleMax's conduct was not prohibited by the CFA statute upon which Plaintiff bases her claims, as all activities enumerated by the statute – such as negotiation, offer, and acceptance – occurred in South Carolina.  Finally, Plaintiff's interpretation of the CFA, if adopted, would violate the U.S. Constitution's Commerce Clause by promoting the public policy of one state (North Carolina) over that of another (South Carolina).[1]

---

[1] TitleMax additionally asserted a statute of limitations argument arguing that all purported claims arising from the Plaintiff's 2012 loan agreement are time-barred and not actionable.

On February 28, 2023, the Arbitrator entered a Final Award. (ECF No. 303-1.) In the Final Award, the Arbitrator ruled that the Loan Agreements, and, more specifically, the interest rates therein, violated the CFA. The Arbitrator further ruled that a violation of the CFA also constituted a violation of the UDTPA (N.C.G.S. 75-1.1 *et seq.*). In so ruling, the Arbitrator rejected TitleMax's arguments related to enforcement of the choice of law provision in the Loan Agreements, and, alternatively, application of *lex loci contractus* principles. The Arbitrator also determined that Plaintiff's interpretation of the CFA did not violate the dormant commerce clause based on *Weissmann*, a non-binding opinion from the Third Circuit. (*Id.* at p. 4.) In relying solely upon *Weissmann*, the Arbitrator ignored binding precedent from the Fourth Circuit, *Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484 (4th Cir. 2007), as well as *Midwest Title*, 593 F.3d 660 (7th Cir. 2010), a Seventh Circuit case that is on all fours with Plaintiff's claims. Both *Carolina Trucks* and *Midwest Title* establish that it is a violation of the commerce clause for a state to attempt to regulate economic activity occurring wholly outside of that state, including in a situation where a borrower travels across state lines to obtain a title loan. (*See* <u>Exhibit A</u>, Respondent's Disp. Mtn. at § II.)

The Final Award also calculated damages in the amount of **$67,686.54**.[2] This amount is the product of $22,562.18 (Plaintiff's base amount paid), which the Arbitrator trebled based on his finding that TitleMax violated the UDTPA. The Arbitrator's damages calculation did not account for – as it must under North Carolina law – the loan proceeds provided to Plaintiff by TitleMax pursuant to the Loan Agreements. The Arbitrator's failure to do so cuts against legal and equitable

---

[2] As discussed in more detail in Section II.C below, this total damages figure awarded by the Arbitrator inappropriately includes amounts that are barred by the statute of limitations.

bars to windfall recoveries and demonstrates a manifest disregard for well-settled North Carolina law.[3]  Accordingly, this Court should grant this Motion and vacate the Final Award.

**LEGAL STANDARD**

Under the Federal Arbitration Act (FAA), a party has three months to file a motion to vacate an arbitration award.  9 U.S.C. § 12.  "[W]hen a party moves to confirm an arbitration award and the opposing party asserts in its opposition that the award should be vacated, '[a] separate motion … to vacate the arbitrator's award is not necessary.  Such relief may properly be requested in the papers submitted in opposition to a motion to confirm an arbitrator's award.'"  *Slavin v. Imperial Parking (U.S.), LLC*, No. 16-2511, 2017 U.S. Dist. LEXIS 93590, at *22-23 (D. Md. June 19, 2017) (citation omitted).

While courts must show deference to the decisions of arbitrators, "courts are neither entitled nor encouraged simply to rubber stamp the interpretations and decisions of arbitrators."  *Warfield v. ICON Advisors, Inc.*, No. 20CV195, 2020 U.S. Dist. LEXIS 105321, at *3 (W.D.N.C. June 16, 2020) (internal quotations and citation omitted).  To that end, there are statutory and common law grounds for vacating an arbitration award.  The FAA provides, in relevant part, that an award may be vacated if the arbitrator "exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  This may occur "when an arbitrator strays from interpretation and application of the agreement and effectively 'dispenses his own brand of industrial justice."  *Stolt-Nielson S.A. v.*

---

[3] TitleMax recognizes that this Court has previously denied motions to vacate arbitration awards entered in favor of other Plaintiffs in this case.  However, TitleMax submits this opposition to preserve its appellate rights on all matters referenced herein.  Specifically, the arbitrator erred by failing to follow *Carolina Trucks & Equip., Inc.*, which requires dismissal of the claims in this case, and by failing to properly consider the choice of law provision contained in the operative loan agreement. *See Snipes v. TitleMax of Virginia, Inc.*, 2022-NCCOA-558 (Ct. App. 2022).

4

*AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (internal citations omitted). Under federal law, an award may also be vacated if it demonstrates a "manifest disregard of the law." *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 480 (4th Cir. 2012).

"[A]n award may be overturned if it flowed from an arbitrator's manifest disregard of the applicable law." *Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2006). To vacate an award for manifest disregard of the law, the movant must demonstrate that: (1) the applicable legal principle is clearly defined and not subject to reasonable debate, and (2) the arbitrator refused to heed that legal principle. *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 483 (4th Cir. 2012) (citation omitted). The FAA also provides that an award may be vacated if the arbitrator "exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

## ARGUMENT

### I. THE ARBITRATOR MANIFESTLY DISREGARDED THE COMMERCE CLAUSE AND BINDING FOURTH CIRCUIT PRECEDENT

There is no dispute that Plaintiff voluntarily traveled from North Carolina to South Carolina (on multiple separate occasions) and entered into written Loan Agreements with TitleMax while physically present in South Carolina. The negotiation, offer, and acceptance all occurred in the state of South Carolina. After execution of the Loan Agreements Plaintiff received the proceeds while still physically present in the South Carolina store. There is also no dispute that the written Loan Agreements Plaintiff voluntarily signed included a choice of law provision mandating application of South Carolina law.

The Arbitrator's award here is premised not only on rejecting the choice of law provision found in the Loan Agreement but is also dependent on applying North Carolina law to a contract executed entirely in the state of South Carolina. Such conclusion is directly prohibited by the

5

Commerce Clause and applicable Fourth Circuit precedent.  The Fourth Circuit has expressly held that "**one state may not 'project its legislation' into another**, **as the Commerce Clause 'precludes the application of a state statute to conduct that takes place wholly outside of the State's boarders, whether or not the commerce has effects within the State**." *Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484, 489–90 (4th Cir. 2007) (internal citation omitted) (emphasis added).[4]  The Fourth Circuit explained that where plaintiff traveled from South Carolina to Georgia to purchase a truck, the Court was prohibited by well-established legal principles derived from the Commerce Clause from applying South Carolina's statute in a way that would "inhibit entrepreneurial activity nationwide and undermine the ability of South Carolina consumers to purchase trucks at competitive prices even outside the state's borders." *Id.* And that was true even if there may be lingering "effects" from the sale in Georgia to a South Carolina citizen that are felt in South Carolina.  *Id.* This is because "no state or nation can, by its

---

[4] *See also Midwest Title*, 593 F.3d 660 (7th Cir. 2010).  While the Arbitrator cited to the Third Circuit decision in *TitleMax of Del., Inc. v. Weissmann*, 24 F.4th 230 (3rd Cir. 2022), the basis upon which the *Weissmann* Court created a circuit split with *Midwest Title* and *Carolina Trucks* was that it narrowly construed *Healy*'s holding (the U.S. Supreme Court case which outlines the extraterritorial principle) to limit its reach exclusively to "price affirmation statutes." *Id.* at. 239 n.11. This narrow (and incorrect) reading of *Healy* has been explicitly rejected by the Fourth Circuit, which <u>denied</u> any limitation of the "extraterritoriality principle only to price affirmation statutes." *Ass'n for Accessible Meds. v. Frosh*, 887 F.3d 664, 670 (4th Cir. 2018).  Instead, the Fourth Circuit – like the Seventh Circuit in *Midwest Title* – held "the extraterritorial principle is violated if the state law at issue 'regulate[s] the price of any out-of-state transaction, either by its express terms or by its inevitable effect.'" *Id.*  Courts in the Fourth Circuit continue to reject the constitutional basis for the *Weissmann* opinion. *See e.g., United Resource Systems, Inc. v. Wilson*, No. 3:21-cv-00364-JFA, Dkt. No. 41 at 21, 22 n.11 (D.S.C. July 13, 2022) (noting that "[a]lthough there is some disagreement amongst the circuit courts regarding this third part of the dormant Commerce Clause test" that the Commerce Clause "precludes the application of state statutes to commerce that takes place wholly outside the State's borders, whether or not the commerce has effects within the state.").

6

laws, directly affect, bind, or operate upon property or persons beyond its territorial jurisdiction." *Id.* Such applicable legal principle is unquestionably "clearly defined and not subject to reasonable debate." *Wachovia Sec., LLC*, 671 F.3d at 483.

The Arbitrator's Final Award does not even reference the Fourth Circuit's decision in *Carolina Trucks*, let alone attempt to distinguish the decision. This failure to address binding authority from the Fourth Circuit interpreting and applying the Commerce Clause is a manifest disregard for the law and requires the award be immediately vacated.

## II. THE ARBITRATOR MANIFESTLY DISREGARDED WELL-ESTABLISHED PRINCIPLES OF NORTH CAROLINA LAW IN CALCULATING THE AMOUNT AWARDED TO PLAINTIFF.

To arrive at his erroneous damages award, the Arbitrator conflated, and then applied in tandem, two wholly distinct frameworks for determining damages. North Carolina law expressly prohibits blending these two frameworks, as doing so produces runaway damages calculations untethered from the relief contemplated under either statute. In refusing to follow North Carolina's express prohibition, that is exactly what the Arbitrator did – she took the worst independent outcome available under the CFA and then compounded it with the worst independent outcome available under the UDTPA.

### A. A clearly defined legal principle exists and is not subject to reasonable debate.

The remedy available for violating the CFA is set forth in N.C. Gen. Stat. § 53-166(d). This section – titled "Additional *Penalties*" (emphasis added) – states:

> "Any contract of loan, the making or collecting of which violates any provision of this Article, or regulation thereunder, except as a result of accidental or bona fide error of computation is void, and the licensee or any other party in violation shall not collect, receive, or retain any principal or charges whatsoever with respect to the loan."

7

N.C. Gen. Stat. § 53-166(d).  A *penalty* is not a measure of actual damages; rather, insofar as it is designed to discourage further conduct, it is more akin to punitive damages.  *See e.g.*, *Shavitz v. City of High Point*, 177 N.C. App. 465, 474 (2006) (defining a penalty as a law that imposes a monetary payment for its violation where the payment is punitive rather than remedial in nature and is intended to penalize the wrongdoer rather than compensate a particular party).  The mechanics of N.C. Gen. Stat. § 53-166(d) has precisely that effect.  The statutory penalty amounts to a disgorgement of value received by TitleMax (*e.g.*, loan repayments) without regard to the benefit derived by Plaintiff (*e.g.*, receipt of proceeds) from the loan transactions.

Separately, the UDTPA presents a completely different framework for calculating *treble damages*.  *See* N.C. Gen. Stat. § 75-16.  This section – titled "Civil action by person injured; treble *damages*" (emphasis added) – provides as follows:

> "If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action *on account of such injury done*, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict."

N.C. Gen. Stat. § 75-16 (emphasis added).

Under settled North Carolina law, a plaintiff cannot recover both punitive damages and treble damages.  *See e.g.*, *Mapp v. Toyota World, Inc.*, 81 N.C.App. 421, 426 (1986) (internal citations omitted).  Instead, the prevailing party must elect his or her remedy.  *Id.* at 426-427.

B.      The Arbitrator refused to heed this clearly defined legal principle.

The Arbitrator's "damages" calculation does not require the Plaintiff to elect his remedy as required by North Carolina law.  This error is made worse by the Arbitrator's conflation of different relief afforded by different statutory schemes.  Specifically, the calculation of *treble damages* under the UDTPA – multiplying the product of *penalties* under the CFA – is

8

fundamentally and inequitably flawed.  Rather than determining the "injury done" as required by

the UDTPA, the Final Award simply trebles the *penalty* levied by the CFA to arrive at the *treble*

*penalty* awarded to Plaintiff.  Such calculations do not contemplate, as they must, that Plaintiff's

actual damages as calculated under the UDTPA must be reduced by the principal loan amounts he

received.  *See Richardson v. Bank of Am., N.A*., 182 N.C. App. 531, 562, 643 S.E.2d 410, 430

(2007) ("[W]hatever was retained by the complaining party had value which, when retained by the

complaining party, did reduce the amount of damages owed to the complaining party."); *Bernard*

*v. Central Carolina Truck Sales*, 68 N.C. App. 228, 233, 314 S.E.2d 582, 585, disc. rev. denied,

311 N.C. 751 321 S.E.2d 126 (1984) (quoting *Phillips v. Chesson*, 231 N.C. 566, 571, 58 S.E.2d

343, 347 (1950)) ("The measure of damages used should further the purpose of awarding damages,

which is 'to restore the victim to his original condition, to give back to him that which was lost as

far as it may be done by compensation in money.'") (citation omitted).

Moreover, in addition to failing to reduce compensatory damages by the principal loan

amounts received, the Arbitrator failed to correctly assess the amount of damages "*proximately*

*caused*" by a violation of the CFA (which the Arbitrator determined was the predicate violation

for the UDTPA award of compensatory damages).   The CFA prohibits lending less than $10,000

at interest rates of over 30% per annum. N.C.G.S. §53-176. Thus, a borrower who enters into a

loan that violates this statute is injured by making interest payments in excess of 30%. Therefore,

the damage proximately caused by a violation of this statute is the payment of excess interest, not

the payment of underlying principal or the payment of interest allowed by the statute.

Because of the penal nature of trebling, the UDTPA only "authorizes the trebling of actual

damages." *Nintendo of Am., Inc. v. Aeropower Co*., 34 F.3d 246, 251 (4th Cir. 1994). The only

trebling permitted by the UDTPA would be the amount of interest TitleMax was paid in excess of

9

the 30% allowed by the North Carolina Consumer Finance Act. The Arbitrator's decision to award a trebling of the Consumer Finance Act penalty (which includes principal and allowable interest) instead of trebling the actual compensatory damages *caused* by the violation, was a manifest disregard of well-established law and must be reversed.

A simple example demonstrates the inequities flowing from the flawed logic underlying the Arbitrator's damages calculation. If a borrower obtained a $1,000 loan from TitleMax and made $2,000 in total payments, the borrower would be out of pocket $1,000 – not $2,000. The out of pocket amount (total payments made minus total loan proceeds received) reflects Plaintiff's actual damages.[5] The UDTPA only trebles *actual damages* incurred. *See Nintendo of Am., Inc. v. Aeropower Co.*, 34 F.3d 246, 251 (4th Cir. 1994) ("[T]he state treble damages provision [under N.C. Gen. Stat. § 75-16] only authorizes the trebling of actual damages found to have resulted from violations of the state Act."); *Jennings Glass Co. v. Brummer*, 88 N.C. App. 44, 53 362 S.E.2d 578 (1987) (emphasis added) ("We therefore hold that plaintiff is entitled to have its actual damages trebled.").

The awarded damages reflect an impermissible trebling of the total payments made by Plaintiff, not his actual damages. Actual damages must, necessarily, account for the loan proceeds received by Plaintiff and measure the harm sustained by the party as a result of the violation. Accounting for the "value retained by the complaining party" which "reduce[s] the amount of damages owned," the actual damages subject to trebling as follows:

---

[5] Moreover, because the underlying CFA violation resulted from charging interest rates over 30% per annum, the true injury is only the amounts of interest TitleMax charged *above* the permissible 30%. Taking Plaintiff's position on damages one step further clearly demonstrates the absurd consequences that would result. A borrower could receive $1,000 in principal, repay it immediately with no interest (and solely with money received from the lender), and then claim a $3,000 trebled figure without suffering any cognizable injury.

| Plaintiff | Total Payments Made ("X") | Total Loan Proceeds Received by Plaintiff ("Y") ($4,500 + $2,175 + $2,000) | Allowable Interest under CFA[6] ("Z") ($1783.51 + $743.65 + $372.79) | Actual Damages (X- Y-Z) | Correct Treble Damages Amount (X -Y-Z) x 3 | Incorrect Treble Damages Amount Awarded by Arbitrator |
|---|---|---|---|---|---|---|
| Ridgeway | $22,562.18 | $8,675 | $2,899.95 | $10,987.23 | **$32,961.69** | **$67,686.54** |

This damage amount comports with clear North Carolina law regarding the calculation of *treble damages*. Insofar as this treble damage award exceeds the *penalty* Plaintiff could recover by operation of the CFA, Plaintiff would certainly *elect this remedy*. By refusing to require such an election, the Arbitrator's damages calculation constitutes a manifest disregard of well-established North Carolina law.

C.      The Arbitrator refused to reduce awards to account for applicable statute of limitations principles.

In addition, Plaintiff's claims arising from her 2012 Loan Agreement is barred by the statute of limitations, something the Arbitrator ignored and improperly failed to account for in calculating damages. The alleged UDTPA violations have a four-year statute of limitations. *Faircloth v. Fin. Asset Secs. Corp. Mego Mortg. Homeowner Loan Trust*, 87 Fed. Appx. 314, 318 (4th Cir. 2004).[7]

---

[6] CFA Rate of 30% Interest Owed on Loan. N.C.G.S. § 53-176(a)(1). This calculation was completed using the total amount Plaintiff borrowed over the course of three loans ($4500 with a 2.3 year loan term, $2175 with a 2 year loan term, and $2,000 with a 1.1 year loan term) to calculate the allowable 30% interest rate on an amortized basis. *See* www.calculator.net/amortization-calculator.html.

[7] Similarly, North Carolina's usury statute carries a two-year statute of limitations. N.C.G.S. § 1-53. Thus, Plaintiffs attempt to assert a usury claim based on her 2012 loan is time-barred. The

The statute of limitations for Plaintiff's claims begins to run when a claimant executes his or her loan agreement and does not restart – under a "continuing wrong" theory – following a new harm that allegedly flows from the original violation.  As the North Carolina Supreme Court has stated, the continuing wrong doctrine is "an exception to the general rule that a claim accrues when the right to maintain a suit arises." *Babb v. Graham*, 190 N.C. App. 463, 481 (2008). "For the continuing wrong doctrine to apply, the plaintiff must show a continuing violation by the defendant that is occasioned by continual unlawful acts, *not by continual ill effects from an original violation*." *Marzec v. Nye*, 203 N.C. App. 88, 94, 690 S.E.2d 537, 542 (2010) (emphasis added).

As noted by the Middle District of North Carolina in response to an argument identical to that advanced by Plaintiffs here: "[t]he continued charging, collecting, and receiving of those fees by the lender or its assignees do not continuously renew the accrual of his cause of action" when "[t]he allegedly illegal fees were itemized on the face of the loan documents he signed on that date." *Faircloth v. Nat'l Home Loan Corp.*, 313 F.Supp.2d 544, 552 (M.D.N.C. 2003).

In sum, since Plaintiff filed suit on April 4, 2019 (*see* ECF 3), all purported claims arising from loan agreements entered into on or before April 3, 2015 are time-barred and not actionable. This includes Plaintiff's respective loan date:  **Annette Ridgeway  – November 27, 2012**.

Thus, the award entered by the Arbitrator should have been reduced by application of the statute of limitations, reducing any award against Plaintiff to **$15,231.72.**

---

North Carolina Consumer Finance Act carries a three-year statute of limitations.  N.C.G.S. 1-52(s). Thus, any liability created by the CFA is also time barred as the limitations period began to run when TitleMax issued her the loan in 2012.

| Plaintiff | Total Payments Made **excluding 2012 loan[8]** ("X") ($22,562.18 - $12,193.50) | Total Loan Proceeds Received by Plaintiff ("Y") ($2,175 + $2,000) | Allowable Interest under CFA[9] ("Z") ( $743.65 + $372.79) | Actual Damages (X- Y-Z) | **Correct Treble Damages Amount excluding 2012 loan (X -Y-Z) x 3** | **Incorrect Treble Damages Amount Awarded by Arbitrator** |
|---|---|---|---|---|---|---|
| Ridgeway | $10,368.68 | $4,175 | $1,116.44 | $5,077.24 | **$15,231.72** | **$67,686.54** |

## CONCLUSION

For the foregoing reasons, TitleMax respectfully requests that the Court deny the Motion and vacate the Final Award.

Dated: March 21, 2023

Respectfully submitted,

By: */s/Thomas R. Woodrow*
    Thomas R. Woodrow
    HOLLAND & KNIGHT, LLP
    101 S. Tryon Street, Suite 3600
    Charlotte, NC 28280
    T: 980.215.7828
    F: 980.215.7771
    tom.woodrow@hklaw.com
    NC Bar. No. 58622

*Local Civil Rule 83.1(d) Counsel for Local Civil Rule 83.1(d) Counsel for TitleMax of Virginia, Inc., TitleMax of South Carolina, Inc., and TMX Finance of Virginia, Inc.*

---

[8] The total payments associated with the 2012 loan were pulled from Exhibit G to Plaintiff's Dispositive Motion brief submitted to the Arbitrator, which was used to support the total $22,562.18 in payments for all three loans.

[9] CFA Rate of 30% Interest Owed on Loan. N.C.G.S. § 53-176(a)(1). This calculation was completed using the total amount Plaintiff borrowed over the course of three loans ($4500 with a 2.3 year loan term, $2175 with a 2 year loan term, and $2,000 with a 1.1 year loan term) to calculate the allowable 30% interest rate on an amortized basis. www.calculator.net/amortization-calculator.html.

By: */s/ Anthony J. Durone*
Anthony J. Durone (by special
appearance)
Missouri Bar No. 43872
BERKOWITZOLIVER
2600 Grand Blvd. Suite 1200
Kansas City, MO 64108
T: 816.561.7007
F: 816.561.1888
adurone@berkowitzoliver.com

*Attorneys for Defendants TitleMax of
Virginia, Inc., TitleMax of South Carolina,
Inc., and TMX Finance of Virginia, Inc.*

14

## CERTIFICATE OF WORD COUNT

I, Thomas R. Woodrow, certify that the foregoing Memorandum complies with the word

count limits set forth in Local Rule 7.3(d)(1).


*/s/ Thomas R. Woodrow*
Thomas R. Woodrow

## CERTIFICATE OF SERVICE

I, Thomas R. Woodrow, certify that on March 21, 2023, a true and correct copy of the foregoing Memorandum was served upon counsel of record via the Court's CM/ECF system.


*/s/ Thomas R. Woodrow*
Thomas R. Woodrow