IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| AARON GOINS et al., | ) |
| Plaintiffs/Counter Defendants, | ) |
| v. | ) Civil Action No. 19-cv-489 |
| TITLEMAX OF SOUTH CAROLINA, et al., | ) |
| Defendants/Counter Claimants. | ) |

## MARCUS SPELLMAN'S REPLY TO OPPOSITION TO MOTION TO ENFORCE AWARD

Plaintiff Marcus Spellman ("Plaintiff") submits this reply memorandum of law in support of her motion for confirmation of the arbitration award issued against TitleMax of South Carolina, Inc. ("TitleMax").

## ARGUMENT

TitleMax again attempts to relitigate the case here[1] despite the fact that the Arbitrator decided the matter after full, multiple stage briefing and decided the matter in Plaintiffs' favor, as have many other arbitrators in similar matters against TitleMax. This arbitrator had previously ruled for TitleMax before the *AutoMoney* cases. He clearly thought throught the issues and the new cases since he took the time to reverse himself. TitleMax chose the arbitration forum in its contracts (and continues to do so), yet now that it has

---

[1] TitleMax has challenged and refused to pay every arbitration award it has lost, no matter the reason until Judgment has been entered and collection proceedings are underway. They continue to not pay—apparently looking to get the time value of money for however long it takes this Court to confirm the Award.

1

lost, it wants a do over here (despite moving to confirm in cases where it is pleased with the Arbitrators' decisions). The obvious purpose of arbitration is to avoid just that.

This Court in this very matter has already rejected the efforts TitleMax makes here and enunciated the applicable standard:

> Thus, courts may vacate or modify an arbitration award only under "limited circumstances." *Padussis*, 842 F.3d at 339. The party opposing enforcement of the award bears the "heavy burden" of showing that grounds to vacate the award exist under either the Federal Arbitration Act ("FAA") or common law. *Three S Delaware, Inc.*, 492 F.3d at 527. Relevant to this case, an award is vacated at common law where "the award evidences a manifest disregard of the law." Id. This high bar is reached only where (1) the disputed legal principle is "clearly defined" and "not subject to reasonable debate," and (2) "the arbitrator refused to apply that legal principle." *Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015). Merely failing to explain a legal conclusion will not justify vacating an award where the legal reasoning can be inferred. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960).

Dkt. 151 at page 3 (J. Biggs in *Sells* matter, August 26, 2021)(enforcing the exact same trebling under Unfair & Deceptive statute for violations of North Carolina Consumer Finance Act that TileMax challenges here). This Court also found in that opinion:

> Here, the Arbitrator found that TitleMax intentionally charged Sells a usurious interest rate that "exceeded by more than five times the rate of interest allowed" under the CFA. (ECF No. 119-1 at 7.) The Court holds that this finding by the Arbitrator also constitutes a finding of a willful engagement in an unfair or deceptive trade practice…. It is not for this Court to relitigate the Final Award. The Arbitrator was not required to outline his reasoning(.)
>
> Id. at p. 6.

This Court should once again enforce this Arbitrator's Final Award trebling the Award under the North Carolina Consumer Finance Act and enter an individual Judgment for this

2

Plaintiff.

Further, every North Carolina Superior Court Judge who have heard these matters have ruled against other car title loan providers. And now the North Carolina Court of Appeals and the North Carolina Supreme Court (D.R. 336), has as well. TitleMax's position is that everyone – dozens of North Carolina Judges, the North Carolina Court of Appeals, the North Carolina Supreme Court and dozens of arbitrators are all just wrong. And not just wrong but manifestly wrong.

## I. **THE ARBITRATOR'S DAMAGES CALCULATION IS CORRECT**

TitleMax maintains that Plaintiffs cannot recover treble damages for the amount that is awarded for a violation of Chapter 53. There is no support for the contention N.C. Gen. Stat. § 53-166(d) precludes trebling under Chapter 75. First, where the North Carolina legislature has intended to limit the interplay of different damages statutes it has done so expressly. *See* N.C. Gen. Stat. § 1D-20. Moreover, there are reported cases where the Court of Appeals has affirmed judgments (or reversed contrary judgments) that allow the recovery of damages both under Chapter 53 and Chapter 75. *See e.g. O'Dell v. Legal Bucks, LLC*, 665 S.E.2d 767 (N.C. App. 2008).

The Chapter 75 claim here is indistinguishable from the claim in *O'Dell*. Claimant contends that Respondent violated Chapter 75 by failing to disclose that the loan violated the NCCFA. The Court in *O'Dell* held:

> Although Defendants disclosed the terms of the advance to Plaintiff, Defendants did not inform Plaintiff that she was executing a contract that violated the Consumer Finance Act. Therefore, Defendants' conduct "had the capacity to deceive," as Defendants did not disclose the actual nature of the transaction to Plaintiff. Further, Defendants' contract with Plaintiff for

3

an illegal advance violated "the paramount public policy of North Carolina to protect North Carolina resident borrowers through the application of North Carolina interest laws." N.C. Gen.Stat. § 24-2.1(g) (2007). On these facts, we hold that Defendants committed unfair and deceptive trade practices as a matter of law. The trial court therefore erred by granting summary judgment in favor of Defendants on Plaintiff's claim for unfair and deceptive trade practices.

*Odell v. Legal Bucks, LLC*, 665 S.E.2d 767 (N.C. App. 2008).

Moreover, the Court in *State of NC v. NCCS Loans,* 174 N.C. App. 630, 641, 624 S.E.2d 371, 378, (2005) held (and Arbitrator Needle cited):

> Moreover, "violations of statutes designed to protect the consuming public and violations of established public policy may constitute unfair and deceptive practices." *Stanley v. Moore*, 339 N.C. 717, 723, 454 S.E.2d 225, 228 (1995). In this regard, we note that it is a "paramount public policy of North Carolina to protect North Carolina resident borrowers through the application of North Carolina interest laws." N.C. Gen. Stat. § 24-2.1 (2003). Defendants' practice of offering usurious loans was a clear violation of this policy. We conclude that the trial court did not err by ruling as a matter of law that this constitutes unfair or deceptive trade practices, in violation of N.C. Gen. Stat. § 75-1.1 (2003).

TitleMax now cites to *Richardson v. Bank of Am., N.A.*, 182 N.C. App. 531, 562, 643 S.E.2d 410 (2007) and *Bernard v. Central Carolina Truck Sales*, 68 N.C. App. 228, 233, 314 S.E.2d 582, 585, disc. rev. denied, 311 N.C. 751 321 S.E.2d 126 (1984) for the proposition that the damages should be reduced by the amount of the loan retained. However, those cases do not involve the North Carolina Consumer Finance Act. That act on its terms specifically does not allow TitleMax to recover or get credit for its principal that it paid the Claimants. The operative statute, NCGS 53-166(d), expressly provides that a lender cannot "collect, receive or retain any amount on the loan." Therefore,

4

Plaintiffs' compensatory damages are the amount they paid plus the value of the vehicles taken without a credit for any principal. This has been explained time and again by Court after Court and Arbitrator after Arbitrator to TitleMax but they attempt to raise it here, after this arbitration, as a some sort of novel issue. TitleMax does not get credit for the principal, because, unlike in *Richardson* and *Bernard*, the statute here which specifically forms the basis of these these claims says on face that it gets no such credit. TitleMax may not like the interpretation of the statute by the Arbitrator, just like many other Claimants do not like other Arbitrators' interpretation of the statute, but that does not give it a basis to get a do over here and the losing Claimants, unlike TitleMax, do not waste this Court's time and drag the matters out for many more months. There was no manifest disregard for the law by the Arbitrator; to the contrary, he was correct.

      Next, TitleMax argues now that Claimants because the word 'penalty' is used in the heading of the statute, the awards are not compensatory in nature. This ignores the obvious reality that each award is for a different amount—specifically for the amount of compensatory damages suffered by each Plaintiff. Instead, it now cites *Shavitz v. City of High Point*, 177 N.C. App. 465, 474 (2006) . *Shavitz* is actually a red light camera penalty case—there actually were not damages in that case of course and there is no claim for unfair and deceptive damages at all. TitleMax also cites *Nintendo of Am., Inc. v. Aeropower Co.*, 34 F.3d 246, 251 (4th Cir. 1994). However, *Nintendo* was a copyright Langham Act claim and the Court actually held that no state statute was violated and therefore preemption prevented the trebling under the state North Carolina Unfair and Deceptive Act. *Id.* ("The state treble damages provision only authorizes the trebling of

5

actual damages found to have resulted from violations of the state Act. It does not purport to authorize trebling of either actual or statutory damages found recoverable for parallel violations of federal copyright law. Copyright infringement is not itself a violation of the state Act.").

Finally, TitleMax cites *Jennings Glass Co. v. Brummer*, 88 N.C. App. 44, 53 362 S.E.2d 578 (1987), which is an election between a punitive and a Chapeter 75 remedy and has no bearing on the matter here.

TitleMax's argument that a consumer cannot pursue and prevail on both a Chapter 53 claim and a Chapter 75 claim is without merit. The opposite is true. A Chapter 53 violation can be the basis of a Chapter 75 claim. Respondent overlooks or ignores express authority from the North Carolina Court of Appeals that a borrower can pursue and prevail on claims for usury and Chapter 75 simultaneously and recover on both. *Britt v. Jones*, 472 S.E.2d 199, 123 N.C.App. 108 (1996), *State ex rel. Cooper v. NCCS Loans, Inc.*, 624 S.E.2d 371, 174 N.C. App. 630 (2005). Indeed, the North Carolina Courts have found that the Chapter 53 violation can be the basis for a Chapter 75. *See State ex rel. Cooper v. NCCS Loans, Inc.*

## II. The Arbitrator's Commerce Clause Ruling was Hardly a Manifest Disregard of the law. It was Actually Correct.

In the event the application of N.C.G.S. §53-190 to Defendant's in-state lending activities somehow impacts Defendant's conduct outside of North Carolina, that impact is evenhanded, at most indirect, in furtherance of a legitimate state interest and thusly constitutionally permissible.

6

Case 1:19-cv-00489-LCB-JLW Document 339 Filed 04/08/23 Page 6 of 13

Respondent has previously relied on a Seventh Circuit opinion—*Midwest Title Loans v. Mills*— for its argument that the applicable North Carolina laws are unconstitutional. This argument fails for several reasons. First, *Midwest Title Loans* is distinguishable on its facts. *Midwest Title Loans* addresses the authority of the State of Indiana to force a title lender to register to conduct business in Indiana. It does not address, and expressly distinguishes, the question of whether Indiana law would apply to a consumer loan transaction with a Hoosier in an Indiana Court. The Court observed:

> Midwest has yet to sue any of its title borrowers. But if there were a suit, an Indiana court might rule that Indiana had the "most intimate contacts" with the transaction and therefore that its law applied even though the loan had been made in Illinois. Or it might rule that Illinois's failure to limit the interest rates in title loans was so offensive to the public policy of Indiana that the Illinois law would not be enforced in Indiana – in which event the Indiana courts might refuse to apply Illinois law even if Midwest's contracts contained a choice of law clause directing that Illinois govern a suit arising from the contract – which they do. In short, a particular set of facts giving rise to litigation [can] justify, constitutionally [that is, under the due process clause] the application of more than one jurisdiction's laws.

*Id.* at 668 (internal citations omitted). On January 24, 2022, the Third Circuit expressly rejected a challenge by TitleMax to the application of Pennsylvania law to title loan transactions between Pennsylvania residents consummated at TitleMax locations in neighboring states. Pennsylvania, like North Carolina, does not permit high interest consumer loans. "In this case, we are required to determine whether applying Pennsylvania usury laws to an out-of-state lender violates the dormant Commerce Clause. We conclude that it does not." *TitleMax of Del., Inc. v. Weissmann* (3rd Cir. 2022)

7

*Weissman* is indistinguishable from facts here. In *Weissman*, TitleMax made loans to Pennsylvania residents from loan-making offices outside of Pennsylvania. *Id.* TitleMax secured the loans with liens on borrower's vehicle titles which it perfected using the Pennsylvania Department Transportation. *Id.* TitleMax accepted payments on its loans from Pennsylvania by phone or using a local-money transmitter in Pennsylvania. *Id.* TitleMax sent collection letters and made collection calls into Pennsylvania. *Id.* TitleMax repossessed vehicles in Pennsylvania when a resident borrowed defaulted. *Id.* This was the full extent of loan activity that the Court considered in determining that Pennsylvania applies. *Id.* For the purposes of its decision that Pennsylvania law applied, the Third Circuit even accepted TitleMax's contentions that:

> TitleMax does not have any offices, employees, agents, or brick-and-mortar stores in Pennsylvania and is not licensed as a lender in the Commonwealth. TitleMax claims that it has never used employees or agents to solicit Pennsylvania business, and it does not run television ads within Pennsylvania, but its advertisements may reach Pennsylvania residents…

*Id.*

Given these activities, the Court rejected TitleMax's contention that Pennsylvania law cannot apply. The Court also rejected TitleMax's attempt to frame the transaction as the origination only. The Court wrote:

> TitleMax's transactions involve more than a simple conveyance of money at a brick-and-mortar store in a location beyond Pennsylvania's border. Rather, the loan creates a creditor-debtor relationship that imposes obligations on both the borrower and lender until the debt is fully paid. For instance, Pennsylvanians with TitleMax loans made payments to TitleMax while physically present in the state…TitleMax's loan agreements grant TitleMax a security interest in the Motor Vehicle, which in the case of a Pennsylvania borrower is a Pennsylvania-registered automobile. TitleMax records these

8

> liens with PennDOT and may repossess the vehicle if the consumer defaults on his loan. Thus, by extending loans to Pennsylvanians, TitleMax takes an interest in property located and operated in Pennsylvania.

*TitleMax of Del., Inc. v. Weissmann* (3rd Cir. 2022), 12-13 (internal citations and quotation omitted).

These are the same arguments that this Respondent has made and continues to make here—that because loans documents were signed out of state, nothing else matters, and North Carolina law cannot apply. That is simply not the case. The Third Circuit correctly rejected TitleMax's claim that only the state where the loan was made can lawfully regulate the loan.

> Under the modern approach, contracts formed between citizens in different states implicate the regulatory interests of both states. Here, TitleMax extended credit to Pennsylvanians and, under the modern view, it does not matter that the consumers would have been physically outside of Pennsylvania when the transaction was initiated.

*TitleMax of Del., Inc. v. Weissmann* (3rd Cir. 2022) at 12, FN 9.

Further, in rejecting TitleMax's Commerce clause defense, the Third Circuit distinguished loan transactions from sales transactions, such as *Carolina Trucks* on which Respondent relies. "These aspects of loan servicing make TitleMax's conduct different from that in the *Healy* line of cases, which largely involved transactions in goods that ended at the point of sale." *Id.* at 13 (distinguishing sales cases, including th 4th Circuit case *Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484 (4th Cir. 2007). The Court concluded:

> Unlike the sale of a good, a TitleMax loan has a longer lifespan: it involves later payments and permits a physical taking (repossession) from inside

9

another state. Because TitleMax both receives payment from within Pennsylvania and maintains a security interest in vehicles located in Pennsylvania that it can act upon, its conduct is not "wholly outside" of Pennsylvania. For these reasons, applying the Pennsylvania statutes to TitleMax does not violate the extraterritoriality principle…

*Id*. at 13-15.

Having concluded that TitleMax's title loan transactions with Pennsylvania borrowers are not wholly extraterritorial, the Third Circuit next turned to "whether the burdens from the state law being applied on interstate commerce substantially outweigh the putative local benefits." *Id*. at 16. The Court concluded because "the laws do not discriminate between in-staters and out-of-staters, the inquiry as to the burden on interstate commerce should end and further analysis of the local benefits is unnecessary." *Id*. at 17. The Court further found even weighing the local benefit to the burden on interstate commerce would not invalidate the application of Pennsylvania law, concluding:

> Pennsylvania has a strong interest in prohibiting usury. Applying Pennsylvania's usury laws to TitleMax's loans furthers that interest, and any burden on interstate commerce from doing so is, at most, incidental. Pennsylvania may therefore investigate and apply its usury laws to TitleMax without violating the Commerce Clause.
>
> *Id*. at 18

Similarly, North Carolina has a strong public policy preventing usury. N.C. Gen. Stat. § 24-2.1(g). Any burden on Respondent here is incidental at best. Respondent's Commerce clause defense should be rejected. Respondent is subject to North Carolina law.

10

### III. This Court Must Award Attorneys' Fees Resulting from this Challenge to the Arbitrators' Award so that this Delay Conduct is not Rewarded and so that it stops happening.

Further, both the North Carolina's Revised Uniform Arbitration Act, N.C. Gen. Stat. § 1-569.25(c)(which does apply as the case was filed in State Court and this Court applies the law of the forum and nothing in the Federal Act even contradicts the authority to award fees) and, in addition, the court's inherent authority to allow for an award of attorneys' fees. *See International Chemical Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp.,* 774 F.2d 43, 47 (2d Cir. 1985) ("As applied to suits for the confirmation and enforcement of arbitration awards, the guiding principle has been stated as follows: 'when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded.'" (citation omitted)); also see lengthy discussion at *Astanza Design* 220 F. Supp. 3d at 652-53. The reality is that this matter has gone on far too long and - even after losing before so many Arbitrators - Titlemax continues to unjustifiably refuse to pay. The Court should award Plaintiffs attorneys' fees. A Declaration in support thereof is attached as Exhibit A. So little is requested in Attorneys' Fees so there can be no issue as their reasonableness and so TitleMax is deterred from doing this time and again dragging these matters out and taking this Court's limited resources.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order confirming the Award of Arbitrator, entering judgment (with interest from the date of the Award) against TitleMax of South Carolina, Inc. and awarding Plaintiffs attorneys'

11

Case 1:19-cv-00489-LCB-JLW   Document 339   Filed 04/08/23   Page 11 of 13

fees for time spent enforcing the Arbitration Award.

    This is the 8th day of April, 2023.

                                           */s/ Andrew H. Brown*
                                           Andrew H. Brown
                                           N.C. State Bar No. 28450
                                           Attorney for Plaintiffs

**FOR THE FIRM:**

**BROWN, FAUCHER, PERALDO & BENSON, PLLC**.
822 North Elm Street, Suite 200
Greensboro, NC 27401
(336) 458-0058 (telephone)
(336) 273-5597 (facsimile)
drew@greensborolawcenter.com

12

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing document complies with the word count limits contained in LR 7.3(d)(1).

*/s/ Andrew H. Brown*
Andrew H. Brown
N.C. State Bar No. 28450
Attorney for Plaintiffs

**FOR THE FIRM:**

**BROWN, FAUCHER, PERALDO & BENSON, PLLC**.
822 North Elm Street, Suite 200
Greensboro, NC 27401
(336) 458-0058 (telephone)
(336) 273-5597 (facsimile)
drew@greensborolawcenter.com