IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| AARON GOINS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:19CV489 |
| | ) | |
| TITLEMAX OF VIRGINIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Before the Court is Plaintiff Donta Sykes's Motion to Enforce Award and Enter Judgment, (ECF No. 192). The motion requests that the Court confirm a Final Award issued by Arbitrator Hon. Chase Boone Saunders ("Final Award") pursuant to 9 U.S.C. § 9 and enter judgment on behalf of Plaintiff against Defendants TitleMax of Virginia, Inc. and TMX Finance of Virginia, Inc. (collectively "TitleMax") consistent with the Final Award. (*Id.*) Plaintiff also requests attorneys' fees. (*Id.*) For the reasons stated herein, Plaintiff's motion will be granted.

## I. BACKGROUND

The Plaintiffs in this action allegedly entered into "car title loan" transactions with Defendants at unlawful rates of interest.[1] (*See* ECF No. 3.) Their Complaint alleged violations

---

[1] A "car title loan" is a short-term loan product secured by a lien on the borrower's vehicle.

of the North Carolina Consumer Finance Act ("CFA"), North Carolina's usury statutes, and the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). (ECF No. 3 at 7–8 (citing N.C. Gen. Stat. §§ 24-1.1, 53-165, 75-1.1).)  On April 22, 2020, this Court compelled arbitration related to all but a few of the numerous Plaintiffs' claims and ordered parties to notify the Court of any arbitration awards within seven days after arbitration concluded. (ECF No. 76 at 16.)  The Plaintiff bringing this motion was a part of the claims ordered to arbitration.

Relevant to the present motion, in addition to considering liability, the Arbitrator considered, among other issues, the proper measure of damages. (*See* ECF No. 193-1 at 3.) The Arbitrator determined that TitleMax owed Plaintiff treble what Plaintiff had paid to TitleMax. (*Id.*)  The Arbitrator therefore ordered TitleMax to pay to Plaintiff damages, which, after trebling, totaled $29,604. (*Id.* at 4.)  The Arbitrator also awarded at the North Carolina legal rate of 8% from the date of filing of the suit, (*id.* at 3–4), and granted Plaintiff's request for $3,500 in attorney's fees, (ECF No. 193-2 at 1).[2]

Plaintiff then timely filed this motion seeking an order confirming the Arbitrator's award and entering a judgment consistent with the award. (ECF No. 192.)  As it has done with every other arbitration award against it related to its car title loans, TitleMax opposes the motion and has asked the Court to vacate the Final Award. (ECF No. 200 at 1.)

---

[2] The Arbitrator's Final Award explicitly incorporated a prior Interim Order of the Arbitrator "as if fully set forth herein." (ECF No. 193-2 at 1 (referring to ECF No. 193-1).)  Because resolving the present motion does not require the Court to distinguish between these two documents, the Court will refer to both the Final Award, (ECF No. 193-2), and the fully incorporated Interim Order, (ECF No. 193-1), as the "Final Award" to minimize confusion.

## II.  STANDARD OF REVIEW

Judicial review of an arbitration award "is among the narrowest known at law." *UBS Fin. Servs., Inc. v. Padussis*, 842 F.3d 336, 339 (4th Cir. 2016) (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998)).  Judicial review is "severely circumscribed. . . . [E]ven a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award." *Apex Plumbing*, 142 F.3d at 193–94.  The court does not sit to reevaluate evidence or review mistakes of law. *Id.* at 194.  Instead, the reviewing court asks only "whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007) (quoting *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994)).

Thus, courts may vacate or modify an arbitration award only under "limited circumstances." *Padussis*, 842 F.3d at 339.  The party opposing enforcement of the award bears the "heavy burden" of showing that grounds to vacate the award exist under either the Federal Arbitration Act ("FAA") or common law. *Three S Del., Inc.*, 492 F.3d at 527.  Relevant to this case, an award is vacated at common law where "the award evidences a manifest disregard of the law." *Id.*  This high bar is reached only where (1) "the disputed legal principle is clearly defined and not subject to reasonable debate," and (2) "the arbitrator refused to apply that legal principle." *Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015).  Merely failing to explain a legal conclusion will not justify vacating an award where the legal reasoning can be inferred. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960).  Further,

3

"proving manifest disregard require[s] something beyond showing that the arbitrators misconstrued the law." *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 481 (4th Cir. 2012).

Additionally, an award will be vacated under the FAA where the arbitrator "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). An imperfect execution of the agreement is not a sufficient cause to vacate: an award "even arguably construing or applying the contract must stand" under this provision of the FAA "regardless of a court's view of its (de)merits." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). An award that disposes of all issues is "mutual, final, and definite" even where the award does not detail the arbitrator's full reasoning. *See Remmey*, 32 F.3d at 150. "Arbitrators have no obligation to the court to give their reasons for an award." *Enter. Wheel & Car Corp.*, 363 U.S. at 598.

### III. DISCUSSION

#### A. The Arbitrator Did Not Manifestly Disregard North Carolina Law Regarding the Calculation of Damages

TitleMax's sole argument in support of vacating the award is that the Arbitrator manifestly disregarded North Carolina law by conflating the frameworks for determining damages under North Carolina's CFA and UDTPA. (ECF No. 200 at 5–9.) Specifically, TitleMax argues that the Arbitrator improperly calculated the treble damages available to Plaintiff under the UDTPA by using a CFA penalty as the base of the treble damages calculation, rather than the "injury done" or "actual damages" suffered by Plaintiff. (*Id.*) TitleMax contends that by choosing the wrong base damages figure to treble, the Arbitrator manifestly disregarded North Carolina law against duplicate recoveries of punitive damages. (*Id.*)

4

TitleMax has failed to satisfy its burden of showing that the Arbitrator manifestly disregarded the law. TitleMax's argument does nothing more than challenge the Arbitrator's interpretation of applicable law—something courts have consistently held will not warrant the vacating of an arbitration award. *See, e.g.*, *Interactive Brokers LLC v. Saroop*, 969 F.3d 438, 443 (4th Cir. 2020) ("When parties consent to arbitration, and thereby consent to extremely limited appellate review, they assume the risk that the arbitrator may interpret the law in a way with which they disagree." (quoting *Wachovia*, 671 F.3d at 478 n.5)); *SmartSky Networks, LLC v. Wireless Sys. Sols., LLC*, No. 20-CV-000834, 2022 WL 353801, at *5 (M.D.N.C. Feb. 7, 2022) ("A district court may not overturn an arbitration award 'just because it believes, however strongly, that the arbitrators misinterpreted the applicable law.'" (quoting *Wachovia*, 671 F.3d at 478 n.5)).

The CFA provides that a party in violation of the CFA "shall not collect, receive, or retain any principal or charges whatsoever with respect to the loan." N.C. Gen. Stat. § 53-166. The UDTPA provides that "if damages are assessed [for committing an unfair and deceptive trade practice] judgment shall be rendered . . . for treble the amount fixed by the verdict." N.C. Gen. Stat. § 75-16. Here, it is evident that the Arbitrator determined that damages should be everything that TitleMax collected from Plaintiff (pursuant to the CFA), trebled (pursuant to the UDTPA). The Arbitrator first identified both the CFA and the UDTPA as the basis for awarding damages.[3] (ECF No. 193-1 at 3.) The Arbitrator then

---

[3] The Arbitrator additionally determined that Plaintiff was entitled to recover damages from TitleMax based on a violation of Chapter 24 of the North Carolina General Statutes. (ECF No. 193-1 at 3.) The Arbitrator determined that this violation also constituted an unfair and deceptive trade practice subject to trebling, and this was therefore an alternative basis to award damages of $29,604. (*Id.*) TitleMax has not made any attempt to argue that this alternative basis for the calculation was incorrect, (*see* ECF No. 200 at 5–9), as TitleMax apparently copied and pasted its argument from an earlier

5

determined that Plaintiff had paid $9,868 to TitleMax and multiplied that amount by three to arrive at $29,604 in damages. (*Id.*)

It is not for this Court to determine whether the Arbitrator's interpretation of the CFA and its interplay with the UDTPA is correct. Under the "severely circumscribed" standard of review of arbitration awards, it is enough that the Arbitrator provided some basis for the assessment and calculations of damages. The Court finds that the Arbitrator did so here— the Arbitrator identified a damages figure based on a statute and then trebled that figure based on another statute. Even if TitleMax were correct that the Arbitrator picked the wrong base damages figure to treble and consequently awarded improper duplicative punitive damages, the Arbitrator's error would be merely a mistake of statutory interpretation, which is not grounds to vacate the award.

### B. Plaintiff Is Entitled to Attorneys' Fees

Finally, Plaintiff requests that "additional attorneys' should be awarded for having to continue to file these Motions and Replies." (ECF No. 193 at 3.) In TitleMax's opposition brief, TitleMax does not address Plaintiff's request for attorneys' fees. (*See* ECF No. 200.)

"[W]ithout statutory authorization or contractual agreement between the parties, the prevailing American rule is that each party in federal litigation pays his own attorney's fees." *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 320 (4th Cir. 2003) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 263–64 (1975)). The burden is on the party seeking attorneys' fees to "identify [a] statutory or common law basis that would support" such an award. *Id.*

---

opposition to a different arbitration award in this litigation without making appropriate changes, (*compare* ECF No. 200 at 5–9, *with* ECF No. 163 at 9–14).

Here, Plaintiff identifies two authorities to support an award of attorneys' fees. (ECF No. 193 at 3.) First, Plaintiff argues that the North Carolina Revised Uniform Arbitration Act allows for an award of "reasonable attorneys' fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming . . . an award." (*Id.*); N.C. Gen. Stat. § 1-569.25(c). Under this standard, a court has discretion to award attorneys' fees to "promote[] the statutory policy of finality of arbitration awards" and discourage "all but the most meritorious challenges." *Astanza Design, LLC v. Giemme Stile, S.p.A.*, 220 F. Supp. 3d 641, 653 (M.D.N.C. 2016) (quoting § 1-569.25(c) cmt. 3). Alternatively, Plaintiff argues that awarding attorneys' fees is within the Court's "inherent authority." (ECF No. 193 at 3 (citing *Int'l Chem. Workers Union (AFL-CIO), Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985)).) "[I]n narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980)). One such circumstance occurs "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . .'" *Roadway Express*, 447 U.S. at 766 (*quoting F. D. Rich Co. v. U. S. ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974)). A party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Chambers*, 501 U.S. at 46 (quoting *Hutto v. Finney*, 437 U.S. 678, 690 n.14 (1978)).[4]

The Court finds that the purposes of N.C. Gen. Stat. § 1-569.25(c) are served by awarding attorneys' fees to Plaintiffs.

---

[4] A court sitting in diversity may exercise this inherent power even when state law does not allow for such an award, since "neither of [*Erie's*] twin aims," to discourage forum-shopping and avoid inequitable administration of the laws, "is implicated by the assessment of attorney's fees as a sanction for bad-faith conduct." *Chambers*, 501 U.S. at 52.

TitleMax's objection to the arbitration awards is not meritorious. As discussed in this Order and the Court's previous Orders confirming other arbitration awards in this case, judicial review of an arbitration award "is among the narrowest known at law." *Padussis*, 842 F.3d at 339. "[E]ven a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award," and a reviewing court will not reevaluate evidence or review mistakes of law. *Apex Plumbing*, 142 F.3d at 194. Nevertheless, TitleMax advances an argument about how to calculate damages that amounts only to a contention that the Arbitrator applied the law in a way that TitleMax disagrees with. Moreover, given the history of this case, TitleMax was aware of the total insufficiency of this specific argument when it decided to oppose Plaintiff's motion. TitleMax copied and pasted this argument from a prior opposition to a motion to confirm an arbitration award against it. (*Compare* ECF No. 200 at 5–9, *with* ECF No. 163 at 9–14.) This Court rejected that argument then, and it awarded attorneys' fees because the argument was so lacking in merit. (*See* ECF No. 171 at 5–9.) As appropriate as attorneys' fees were several months ago, they are even more appropriate now.

Accordingly, the Court in its discretion will award attorneys' fees.

Regarding the amount of such fees, Plaintiff's attorney has filed a declaration stating that he spent 2 hours on this matter since the award of the arbitrator and requesting a rate of $350 per hour for that time, which he represents is the customary hourly rate in this market for attorneys of similar experience. (ECF No. 203-1 ¶¶ 5–6.) Two hours at $350 per hour totals $700.

TitleMax having not mentioned any objections in its opposition brief and the Court having considered the record in this case, Plaintiff's declaration, the course of this litigation, and the factors affecting the lodestar analysis set out in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 & n.28 (4th Cir. 1978), the Court finds that Plaintiff's requested attorney's fees for 2 hours at the rate of $350 per hour is reasonable. The Court has previously found that $350 per hour is a reasonable rate for Plaintiff's counsel's work dealing with TitleMax's meritless oppositions to arbitration awards in this case given the market rate in this area. (ECF No. 249 at 4.) Additionally, while Plaintiff's counsel's declaration could be clearer regarding the precise breakdown of the time that he spent confirming the award, (ECF No. 203-1 ¶ 7), in light of the amount of time that this Court has spent on this matter and TitleMax's opposition, this Court finds that 2 hours is a reasonable amount of time for Plaintiff's counsel to take in obtaining confirmation of the Final Award.

For the reasons stated herein, the Court enters the following:

### ORDER

**IT IS THEREFORE ORDERED** that Plaintiff Donta Sykes' Motion to Enforce Award and Enter Judgment, (ECF No. 192), is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants TitleMax of Virginia, Inc. and TMX Finance of Virginia, Inc., are **ORDERED** to pay to Plaintiff Donta Sykes damages of $29,604 as set forth in the Arbitrator's Final Award, (ECF No. 193-1 at 4). This sum is due and payable immediately upon filing of the Judgment.

**IT IS FURTHER ORDERED** that Defendants TitleMax of Virginia, Inc. and TMX Finance of Virginia, Inc., are **ORDERED** to pay to Plaintiff prejudgment interest on the

compensatory portion of the damages award (that is, on the $9,868 attributable to the amounts that TitleMax collected from Plaintiff) as set forth in the Arbitrator's Final Award. This prejudgment interest accrued at the North Carolina legal rate of eight percent from the date of the filing of the Complaint (April 4, 2019) until the date of entry of the Judgment. This prejudgment interest is due and payable immediately upon filing of the Judgment.

**IT IS FURTHER ORDERED** that Defendants TitleMax of Virginia, Inc. and TMX Finance of Virginia, Inc., are **ORDERED** to pay to Plaintiff attorney's fees of $4,200 (that is, $3,500 as awarded by the Final Award plus $700 as awarded by this Court), which shall be due and payable immediately upon filing of the Judgment.

**IT IS FURTHER ORDERED** that Defendants TitleMax of Virginia, Inc. and TMX Finance of Virginia, Inc., are **ORDERED** to pay to Plaintiff post-judgment interest on the total of all sums set forth in the Judgment (that is, the sum of: the $29,604 awarded by the Final Award, plus the pre-judgment interest owed on the $9,868 compensatory portion of the Final Award, plus the $4,200 of attorney's fees) at the federal statutory rate that shall accrue until all sums set forth in the Judgment are paid in full.

Judgment will be entered simultaneously with this Order.

This, the 9th day of May 2023.

/s/Loretta C. Biggs
United States District Judge