# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| AARON GOINS, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>TITLEMAX OF VIRGINIA, *et al.*, )<br>)<br>Defendants. )<br>)<br>) | 1:19CV489 |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Before the Court is Plaintiff Alicia Adams's Motion to Enforce Award and Enter Judgment, (ECF No. 204). The motion requests that the Court confirm a Final Award issued by Arbitrator Edward F. Hennessey ("Final Award") pursuant to 9 U.S.C. § 9 and enter judgment on behalf of Plaintiff against Defendant TitleMax of South Carolina, Inc. ("TitleMax") consistent with the Final Award. (*Id.*) Plaintiff also requests attorneys' fees. (*Id.*) For the reasons stated herein, Plaintiff's motion will be granted in part and denied in part.

## I. BACKGROUND

The Plaintiffs in this action allegedly entered into "car title loan" transactions with Defendants at unlawful rates of interest.[1] (*See* ECF No. 3.) Their Complaint alleged violations of the North Carolina Consumer Finance Act ("CFA"), North Carolina's usury statutes, and

---

[1] A "car title loan" is a short-term loan product secured by a lien on the borrower's vehicle.

the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). (ECF No. 3 at 7–8 (citing N.C. Gen. Stat. §§ 24-1.1, 53-165, 75-1.1).) On April 22, 2020, this Court compelled arbitration related to all but a few of the numerous Plaintiffs' claims and ordered parties to notify the Court of any arbitration awards within seven days after arbitration concluded. (ECF No. 76 at 16.) The Plaintiff bringing this motion was a part of the claims ordered to arbitration.

Relevant to the present motion, in addition to considering liability, the Arbitrator considered, among other issues, whether North Carolina law applied to Plaintiff's car title loan and the proper measure of damages. (*See* ECF No. 205-1 at 1–2.) The Arbitrator determined that application of North Carolina law was proper and that TitleMax owed Plaintiff treble what Plaintiff had paid to TitleMax. (*Id.*) The Arbitrator therefore ordered TitleMax to pay to Plaintiff damages, which, after trebling, totaled $46,815.96. (*Id.* at 2.) The Arbitrator awarded pre-award interest at 8% from April 4, 2019, on $15,605.32 of that figure, and the Arbitrator awarded post-award interest at 8% from September 12, 2022, on the remaining $31,210.64. (*Id.*) The Arbitrator also awarded $5,600 of attorney's fees to Plaintiff.[2] (*Id.* at 3.)

Plaintiff then timely filed this motion seeking an order confirming the Arbitrator's award and entering a judgment consistent with the award. (ECF No. 204.) As it has done with every other arbitration award against it related to its car title loans, TitleMax opposes the motion and has asked the Court to vacate the Final Award. (ECF No. 207 at 1.)

---

[2] The Arbitrator's Final Award explicitly incorporated a prior Interim Order of the Arbitrator "as if fully set forth herein." (ECF No. 205-1 at 3 (referring to ECF No. 205-1 at 1–2).) Because resolving the present motion does not require the Court to distinguish between these two documents, the Court will refer to both the Final Award and the fully incorporated Interim Order as the "Final Award" to minimize confusion.

2

## II. STANDARD OF REVIEW

Judicial review of an arbitration award "is among the narrowest known at law." *UBS Fin. Servs., Inc. v. Padussis*, 842 F.3d 336, 339 (4th Cir. 2016) (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998)). Judicial review is "severely circumscribed. . . . [E]ven a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award." *Apex Plumbing*, 142 F.3d at 193–94. The court does not sit to reevaluate evidence or review mistakes of law. *Id.* at 194. Instead, the reviewing court asks only "whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007) (quoting *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994)).

Thus, courts may vacate or modify an arbitration award only under "limited circumstances." *Padussis*, 842 F.3d at 339. The party opposing enforcement of the award bears the "heavy burden" of showing that grounds to vacate the award exist under either the Federal Arbitration Act ("FAA") or common law. *Three S Del., Inc.*, 492 F.3d at 527. Relevant to this case, an award is vacated at common law where "the award evidences a manifest disregard of the law." *Id.* This high bar is reached only where (1) "the disputed legal principle is clearly defined and not subject to reasonable debate," and (2) "the arbitrator refused to apply that legal principle." *Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015). Merely failing to explain a legal conclusion will not justify vacating an award where the legal reasoning can be inferred. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960). Further,

3

"proving manifest disregard require[s] something beyond showing that the arbitrators misconstrued the law." *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 481 (4th Cir. 2012).

Additionally, an award will be vacated under the FAA where the arbitrator "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). An imperfect execution of the agreement is not a sufficient cause to vacate: an award "even arguably construing or applying the contract must stand" under this provision of the FAA "regardless of a court's view of its (de)merits." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). An award that disposes of all issues is "mutual, final, and definite" even where the award does not detail the arbitrator's full reasoning. *See Remmey*, 32 F.3d at 150. "Arbitrators have no obligation to the court to give their reasons for an award." *Enter. Wheel & Car Corp.*, 363 U.S. at 598.

### III. DISCUSSION

#### A. The Arbitrator Did Not Exceed His Authority by Not Directly Addressing one of TitleMax's Arguments in the Final Award

TitleMax first argues that the award should be vacated because the Arbitrator exceeded his authority by ignoring a choice of law provision in the loan agreement that stated that Virginia law governed the contract. (ECF No. 207 at 5.) TitleMax advances this argument relying on two cases, one from the Fourth Circuit, *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230 (4th Cir. 2006), and one from the North Carolina Court of Appeals, *Snipes v. TitleMax of Virginia, Inc.*, 876 S.E.2d 864 (N.C. Ct. App. 2022).

In *Patten*, the Fourth Circuit reviewed a district court's denial of a motion to vacate an arbitration award where the arbitrator, despite recognizing that the contract governing the litigants' dispute did not contain any explicit time limitation on bringing an arbitration demand

4

Case 1:19-cv-00489-LCB-JLW   Document 390   Filed 05/09/23   Page 4 of 12

nevertheless imposed a one-year limitations period. 441 F.3d at 235. The arbitrator selected one year as an appropriate limitations period based on a limitations period that was used in a different contract between the parties that the parties had since set aside. *Id.* at 236. The Fourth Circuit vacated the district court's order and remanded for further proceedings, explaining that the award had "failed to draw its essence from the governing arbitration agreement," *id.* at 237, because it was "not rationally inferable from the contract," *id.* at 236 (quoting *Apex Plumbing*, 142 F.3d at 193 n.5). The Fourth Circuit explained that, rather than look to a contract that had been set aside, "[i]f the arbitrator felt the need to import a limitations period . . ., the most obvious source was [the body of law] which governed [the] agreement: Massachusetts law." *Id.* at 236.

In *Snipes*, the North Carolina Court of Appeals applied *Patten* to affirm a state trial court order under the FAA that vacated an arbitration award in favor of a plaintiff who had sued TitleMax for a usurious car loan. 876 S.E.2d at 866–73. The trial court vacated the award because it determined that "the award fail[ed] to draw its essence from the Loan Agreement as the application of North Carolina law [wa]s inconsistent with the plain language of the Loan Agreement stating that Virginia law applies." *Id.* at 872. The Court of Appeals noted that "[t]he arbitration award recognized the arbitrator needed to decide whether to apply North Carolina law or Virginia law," but in its legal analysis the award "exclusively focuse[d] on North Carolina's Consumer Finance Act" and "never consider[ed] or even mention[ed] the Loan Agreement's Virginia choice of law provision." *Id.* The court viewed this as a total failure to construe the governing contract and therefore proper grounds to vacate the award. *Id.* Additionally, the court explained that *Patten* supported this conclusion because insofar the

5

award "'disregarded the plain and unambiguous language of the' Loan Agreement requiring application of Virginia law, the award 'simply was not rationally inferable from the contract.'" *Id.* at 873 (quoting *Patten*, 441 F.3d at 235–37).

Emphasizing that *Snipes* concerned a TitleMax arbitration, TitleMax argues that because the Final Award here discusses whether North Carolina law applies but does not mention the choice of law provision in its loan contract with Plaintiff, the award must be vacated under the essence of the contract doctrine as described in *Patten*. (ECF No. 199 at 6.)

However, this Court finds that *Snipes*, which is not binding on this Court, is not persuasive because *Patten* is distinguishable. In *Patten*, the arbitrator did not just make a mistake of law, the arbitrator went several steps further and added an entire contract provision that the parties had deliberately rejected when they made their agreement. 441 F.3d at 236. The Fourth Circuit therefore explained that the arbitrator had not merely misinterpreted the contract, in which case the award would not be disturbed, but had "amended or altered the agreement" and thus "acted without authority." *Id.* (quoting *Mo. River Servs., Inc. v. Omaha Tribe of Nebraska*, 267 F.3d 848, 855 (8th Cir. 2011)). Here, TitleMax does not contend that the Arbitrator added an unauthorized term to a contract; instead, TitleMax construes *Patten* to require an arbitrator to recite and formally reject each and every argument made in by a litigant that involves a contract provision. *Patten* does not demand this. Instead, *Patten* only requires that the result reached in an arbitration award be "rationally inferable," 441 F.3d at 235, and the result in this case—application North Carolina's CFA to a loan agreement with a choice of law provision favoring the law of another jurisdiction—meets that standard.

6

In a recent case involving usurious car title loans that contained choice-of-law provisions stating they were governed by Virginia law, the North Carolina Court of Appeals analyzed the CFA and determined that it would apply to the loans if any contractual activities occurred within North Carolina regardless of the choice-of-law provisions. *Wall v. Automoney, Inc.*, 877 S.E.2d 37, 48–49 (N.C. Ct. App. 2022). With respect to what constitutes a contractual activity occurring within North Carolina in this context, the court gave the specific example of soliciting consumers in North Carolina and using the North Carolina Department of Motor Vehicles to perfect security interests on cars. *Id.*; *see also Troublefield v. AutoMoney, Inc.*, 876 S.E.2d 790, 801–803 (N.C. Ct. App. 2022) (concluding that because defendant "discuss[ed] its business and the terms of [its usurious car title loans] by phone with North Carolina residents," the loans were subject to N.C. Gen. Stat. § 53-190 and the choice of law provision in the loan agreement was void as a matter of public policy). Here, the Arbitrator found that Plaintiff had been a North Carolina resident at all times to the loans at issue. (ECF No. 205-1 at 1.) It follows that to perfect an interest on Plaintiff's car pursuant to the car title loan, TitleMax would have had to reach into North Carolina; thus, guided by *Wall*, the Court can rationally infer a basis for the application of North Carolina law in this case. Accordingly, the Court finds that the Arbitrator did not exceed his authority.

    **B.    The Arbitrator Did Not Manifestly Disregard North Carolina Law Regarding the Calculation of Damages**

TitleMax also argues that the Arbitrator manifestly disregarded North Carolina law by conflating the frameworks for determining damages under North Carolina's CFA and UDTPA. (ECF No. 207 at 6–9.) Specifically, TitleMax argues that the Arbitrator improperly calculated the treble damages available to Plaintiff under the UDTPA by using a CFA penalty

7

as the base of the treble damages calculation, rather than the "injury done" or "actual damages" suffered by Plaintiff. (*Id.*) TitleMax contends that by choosing the wrong base damages figure to treble, the Arbitrator manifestly disregarded North Carolina law against duplicate recoveries of punitive damages. (*Id.*)

TitleMax has failed to satisfy its burden of showing that the Arbitrator manifestly disregarded the law. TitleMax's argument does nothing more than challenge the Arbitrator's interpretation of applicable law—something courts have consistently held will not warrant the vacating of an arbitration award. *See, e.g.*, *Interactive Brokers LLC v. Saroop*, 969 F.3d 438, 443 (4th Cir. 2020) ("When parties consent to arbitration, and thereby consent to extremely limited appellate review, they assume the risk that the arbitrator may interpret the law in a way with which they disagree." (quoting *Wachovia*, 671 F.3d at 478 n.5)); *SmartSky Networks, LLC v. Wireless Sys. Sols., LLC*, No. 20-CV-000834, 2022 WL 353801, at *5 (M.D.N.C. Feb. 7, 2022) ("A district court may not overturn an arbitration award 'just because it believes, however strongly, that the arbitrators misinterpreted the applicable law.'" (quoting *Wachovia*, 671 F.3d at 478 n.5)).

The CFA provides that a party in violation of the CFA "shall not collect, receive, or retain any principal or charges whatsoever with respect to the loan." N.C. Gen. Stat. § 53-166. The UDTPA provides that "if damages are assessed [for committing an unfair and deceptive trade practice] judgment shall be rendered . . . for treble the amount fixed by the verdict." N.C. Gen. Stat. § 75-16. Here, it is evident from the Arbitrator's damages calculation set out in the Final Award the Arbitrator concluded that damages should be everything that TitleMax collected from Plaintiff (pursuant to the CFA), trebled (pursuant to the UDTPA)—

the Arbitrator determined that the amount that Plaintiff had paid to TitleMax was $15,605.32, and then multiplied that figure by three to arrive at a final damages award of $46,815.96. (ECF No. 205-1 at 1–2.)

It is not for this Court to determine whether the Arbitrator's interpretation of the CFA and its interplay with the UDTPA is correct. Under the "severely circumscribed" standard of review of arbitration awards, it is enough that the Arbitrator provided some basis for the assessment and calculations of damages. The Court finds that the Arbitrator did so here—the Arbitrator identified a damages figure based on a statute and then trebled that figure based on another statute. Even if TitleMax were correct that the Arbitrator picked the wrong base damages figure to treble and consequently awarded improper duplicative punitive damages, the Arbitrator's error would be merely a mistake of statutory interpretation, which is not grounds to vacate the award.

### C.     Plaintiff Is Not Entitled to Attorneys' Fees

Finally, Plaintiff requests that "additional attorneys' fees should be awarded for having to continue to file these Motions and Replies." (ECF No. 191 at 2–3.) In TitleMax's opposition brief, TitleMax does not address Plaintiff's request for attorneys' fees. (*See* ECF No. 199.)

"[W]ithout statutory authorization or contractual agreement between the parties, the prevailing American rule is that each party in federal litigation pays his own attorney's fees." *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 320 (4th Cir. 2003) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 263–64 (1975)). The burden is on the party seeking

attorneys' fees to "identify [a] statutory or common law basis that would support" such an award. *Id.*

Here, Plaintiff identifies two authorities to support an award of attorneys' fees. (ECF No. 191 at 3.) First, Plaintiff argues that the North Carolina Revised Uniform Arbitration Act allows for an award of "reasonable attorneys' fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming . . . an award." (*Id.*); N.C. Gen. Stat. § 1-569.25(c). Under this standard, a court has discretion to award attorneys' fees to "promote[] the statutory policy of finality of arbitration awards" and discourage "all but the most meritorious challenges." *Astanza Design, LLC v. Giemme Stile, S.p.A.*, 220 F. Supp. 3d 641, 653 (M.D.N.C. 2016) (quoting § 1-569.25(c) cmt. 3). Alternatively, Plaintiff argues that awarding attorneys' fees is within the Court's "inherent authority." (ECF No. 191 at 3 (citing *Int'l Chem. Workers Union (AFL-CIO), Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985)).) "[I]n narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980)). One such circumstance occurs "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . .'" *Roadway Express*, 447 U.S. at 766 (*quoting F. D. Rich Co. v. U. S. ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974)). A party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Chambers*, 501 U.S. at 46 (quoting *Hutto v. Finney*, 437 U.S. 678, 690 n.14 (1978)).[3]

---

[3] A court sitting in diversity may exercise this inherent power even when state law does not allow for such an award, since "neither of [*Erie's*] twin aims," to discourage forum-shopping and avoid inequitable administration of the laws, "is implicated by the assessment of attorney's fees as a sanction for bad-faith conduct." *Chambers*, 501 U.S. at 52.

The Court finds that the purposes of N.C. Gen. Stat. § 1-569.25(c) are not served by awarding attorneys' fees to Plaintiffs in this instance, nor are attorneys' fees warranted under this court's inherent authority.

Here, TitleMax advanced two arguments in support of vacating the award. This Court has previously set out that one of these arguments, the improper trebling argument, lacks merit and this Court has awarded attorneys' fees against TitleMax on that basis. (*See* ECF No. 171 at 5–9). However, TitleMax's other argument here, the essence of the contract argument, was colorable insofar as the North Carolina Court of Appeals decision in *Snipes* directly supported it and this Court had not yet rejected it when TitleMax filed its brief. Accordingly, the Court denies Plaintiff's request for attorney's fees.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Plaintiff Alicia Adams's Motion to Enforce Award and Enter Judgment, (ECF No. 204), is **GRANTED in part** and **DENIED in part.**

**IT IS FURTHER ORDERED** that Defendant TitleMax of South Carolina, Inc., is **ORDERED** to pay to Plaintiff Alicia Adams damages of $46,815.96 as set forth in the Arbitrator's Final Award, (ECF No. 205-1 at 2). This sum is due and payable immediately upon filing of the Judgment.

**IT IS FURTHER ORDERED** that Defendant TitleMax of South Carolina, Inc., is **ORDERED** to pay to Plaintiff pre-award prejudgment interest on the compensatory portion of the damages award (that is, on the $15,605.32 attributable to the amounts that TitleMax collected from Plaintiff) as set forth in the Arbitrator's Final Award. This prejudgment interest

accrued at the North Carolina legal rate of eight percent from April 4, 2019, until the date of entry of the Judgment. This pre-award prejudgment interest is due and payable immediately upon filing of the Judgment.

**IT IS FURTHER ORDERED** that Defendant TitleMax of South Carolina, Inc., is **ORDERED** to pay to Plaintiff post-award prejudgment interest on the remainder of the damages award (that is, on the $31,210.64 attributable to UDTPA trebling) as set forth in the Arbitrator's Final Award. This prejudgment interest accrued at the North Carolina legal rate of eight percent from September 12, 2022, until the date of entry of the Judgment. This post-award prejudgment interest is due and payable immediately upon filing of the Judgment.

**IT IS FURTHER ORDERED** that Defendant TitleMax of South Carolina, Inc., is **ORDERED** to pay to Plaintiff attorney's fees of $5,600 as set forth in the Arbitrator's Final Award, which shall be due and payable immediately upon filing of the Judgment.

**IT IS FURTHER ORDERED** that Defendant TitleMax of South Carolina, Inc., is **ORDERED** to pay to Plaintiff post-judgment interest on the total of all sums set forth in the Judgment (that is, the sum of: the $46,815.96 awarded by the Final Award, plus the pre-award pre-judgment interest owed on the $15,605.32 compensatory portion of the Final Award, plus the post-award pre-judgment interest owed on the $31,210.64 UDTPA portion of the Final Award, plus the $5,600 of attorneys' fees) at the federal statutory rate that shall accrue until all sums set forth in the Judgment are paid in full.

Judgment will be entered simultaneously with this Order.

This, the 9th day of May 2023.

          /s/Loretta C. Biggs
          United States District Judge

12

Case 1:19-cv-00489-LCB-JLW   Document 390   Filed 05/09/23   Page 12 of 12