IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| AARON GOINS, *et al.*, | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | 1:19CV489 |
| TITLEMAX OF VIRGINIA, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Before the Court is Plaintiff Annette Ridgeway's Motion to Enforce Award and Enter Judgment, (ECF No. 303). The motion requests that the Court confirm a Final Award issued by Arbitrator Sabrina Hsin Hua Lee ("Final Award") pursuant to 9 U.S.C. § 9 and enter judgment on behalf of Plaintiff against Defendant TitleMax of South Carolina, Inc. ("TitleMax") consistent with the Final Award. (*Id.*) Plaintiff also requests attorneys' fees. (*Id.*) For the reasons stated herein, Plaintiff's motion will be granted.

**I. BACKGROUND**

The Plaintiffs in this action allegedly entered into "car title loan" transactions with Defendants at unlawful rates of interest.[1] (*See* ECF No. 3.) Their Complaint alleged violations of the North Carolina Consumer Finance Act ("CFA"), North Carolina's usury statutes, and

---

[1] A "car title loan" is a short-term loan product secured by a lien on the borrower's vehicle.

the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). (ECF No. 3 at 7–8 (citing N.C. Gen. Stat. §§ 24-1.1, 53-165, 75-1.1).) On April 22, 2020, this Court compelled arbitration related to all but a few of the numerous Plaintiffs' claims and ordered parties to notify the Court of any arbitration awards within seven days after arbitration concluded. (ECF No. 76 at 16.) The Plaintiff bringing this motion was a part of the claims ordered to arbitration.

Relevant to the present motion, in addition to considering liability, the Arbitrator considered, among other issues, whether application of North Carolina law to Plaintiff's loans violated the Commerce Clause of the United States Constitution, whether the UDTPA's statute of limitations barred any claims arising from loans that Plaintiff took out more than four years prior to commencing the action, and the proper measure of damages. (*See* ECF Nos. 303-1 at 4–6.) The Arbitrator determined that application of North Carolina law was proper, that the statute of limitations did not bar any claims due to the continuing wrongs doctrine, and that TitleMax owed Plaintiff treble what she had paid to TitleMax. (*Id.*) The Arbitrator therefore ordered TitleMax to pay to Plaintiff damages, which, after trebling pursuant to the UDTPA, totaled $67,686.54. (*Id.* at 5–6.) The Arbitrator described this sum as having "two components." (*Id.* at 6.) The first component was $22,562.18 of compensatory damages, for which the Arbitrator awarded pre-award interest at the North Carolina legal rate of eight percent, which accrued beginning April 2, 2019. (*Id.*) The second component was $45,124.36 of damages to account for the UDPTA trebling ($22,562.18 x 2 = $45,124.36), for which the Arbitrator awarded post-award interest at the North Carolina legal rate of eight percent, which accrued from the date of the Final Award, that is, February 28, 2023. (*Id.*)

Plaintiff then timely filed this motion seeking an order confirming the Arbitrator's award and entering a judgment consistent with the award. (ECF No. 303.) As it has done with every other arbitration award against it related to its car title loans, TitleMax opposes the motion and has asked the Court to vacate the Final Award. (ECF No. 323 at 1.)

## II. STANDARD OF REVIEW

Judicial review of an arbitration award "is among the narrowest known at law." *UBS Fin. Servs., Inc. v. Padussis*, 842 F.3d 336, 339 (4th Cir. 2016) (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 (4th Cir. 1998)). Judicial review is "severely circumscribed. . . . [E]ven a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award." *Apex Plumbing*, 142 F.3d at 193–94. The court does not sit to reevaluate evidence or review mistakes of law. *Id.* at 194. Instead, the reviewing court asks only "whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Three S Del., Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007) (quoting *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994)).

Thus, courts may vacate or modify an arbitration award only under "limited circumstances." *Padussis*, 842 F.3d at 339. The party opposing enforcement of the award bears the "heavy burden" of showing that grounds to vacate the award exist under either the Federal Arbitration Act ("FAA") or common law. *Three S Del., Inc.*, 492 F.3d at 527. Relevant to this case, an award is vacated at common law where "the award evidences a manifest disregard of the law." *Id.* This high bar is reached only where (1) "the disputed legal principle is clearly defined and not subject to reasonable debate," and (2) "the arbitrator refused to apply

3

that legal principle." *Jones v. Dancel*, 792 F.3d 395, 402 (4th Cir. 2015). Merely failing to explain a legal conclusion will not justify vacating an award where the legal reasoning can be inferred. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960). Further, "proving manifest disregard require[s] something beyond showing that the arbitrators misconstrued the law." *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 481 (4th Cir. 2012).

Additionally, an award will be vacated under the FAA where the arbitrator "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). An imperfect execution of the agreement is not a sufficient cause to vacate: an award "even arguably construing or applying the contract must stand" under this provision of the FAA "regardless of a court's view of its (de)merits." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). An award that disposes of all issues is "mutual, final, and definite" even where the award does not detail the arbitrator's full reasoning. *See Remmey*, 32 F.3d at 150. "Arbitrators have no obligation to the court to give their reasons for an award." *Enter. Wheel & Car Corp.*, 363 U.S. at 598.

### III. DISCUSSION

#### A. The Arbitrator Did Not Manifestly Disregard the Dormant Commerce Clause

TitleMax first argues that the Final Award evidences a manifest disregard of the dormant Commerce Clause because it applies North Carolina law to loans that were executed outside of North Carolina. (ECF No. 323 at 5–16.) TitleMax claims that pursuant to the Fourth Circuit case *Carolina Trucks & Equipment, Inc. v. Volvo Trucks of North America, Inc.*, 492 F.3d 484 (4th Cir. 2007), this application of North Carolina law to the loans violates the clearly defined principle of law that "one state may not project its legislation into another, as the

4

Commerce Clause precludes the application of a state statute to conduct that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." (ECF No. 323 at 6 (quoting *Carolina Trucks*, 492 F.3d at 489–90).)

However, as this Court explained the last time that TitleMax sought to vacate an arbitration award using this argument, "the law as applied to the facts in this case is not so 'well-established.'" *See Goins v. TitleMax of Va., Inc.*, No. 19-CV-489, 2021 WL 3856164, at *2 (M.D.N.C. Aug. 27, 2021) (quoting ECF No. 104 at 8).

A statute can violate the dormant Commerce Clause in two ways. *See McBurney v. Young*, 667 F.3d 454, 468 (4th Cir. 2012); *Env't Tech. Council v. Sierra Club*, 98 F.3d 774, 785 (4th Cir. 1996). First, a law is per se unconstitutional if it discriminates against out-of-state transactions. *Sierra Club*, 98 F.3d at 785. Second, where a law does not discriminate, it is constitutional "unless the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits." *McBurney*, 667 F.3d at 468 (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). This second test "frequently requires judges to make highly subjective calls" in evaluating state interests. *Colon Health Ctrs. of Am., LLC, v. Hazel*, 813 F.3d 145, 156 (4th Cir. 2016). Because judges are "ill-equipped to second-guess the empirical judgments of lawmakers concerning the utility of legislation," courts presume that nondiscriminatory statutes are constitutional and give "due deference to the body whose primary responsibility it is to judge the benefits and burdens of . . . legislation: the [state] legislature." *Id.* (internal quotations omitted). Consequently, nondiscriminatory laws receive rational basis review under the dormant Commerce Clause. *Id.*

First, contrary to TitleMax's contentions here, *Carolina Trucks* does not plainly and definitively establish that the Commerce Clause prohibits North Carolina from regulating car title loans made outside its boundaries. As this Court previously noted, *Carolina Trucks* was decided on statutory and not constitutional grounds. *Goins*, No. 19-CV-489, 2021 WL 3856164, at *3 ("[T]he one Fourth Circuit case [that TitleMax] cited, *Carolina Trucks* . . . was decided on statutory and not constitutional grounds."); *Carolina Trucks*, 492 F.3d at 489 ("By reaching this holding as a matter of statutory construction, we avoid constitutional problems inherent in a broader interpretation of South Carolina law."). Additionally, as the Third Circuit recently observed in a case involving, among other things, car title loans made by TitleMax of Virginia, Inc., *Carolina Trucks* "involved transactions in goods that ended at the point of sale," and such transactions are not analogous to TitleMax loans, which have "a longer lifespan," and "involve[] later payments and permit[] a physical taking (repossession) from inside another state." *TitleMax of Del., Inc. v. Weissmann*, 24 F.4th 230, 239 (3d Cir.), *cert. denied sub nom. TitleMax of Del., Inc. v. Vague*, 142 S. Ct. 2870 (2022). Accordingly, the Arbitrator's failure to reach TitleMax's preferred legal conclusion does not evidence a manifest disregard for the Commerce Clause as interpreted by the Fourth Circuit in *Carolina Trucks*.

Second, as demonstrated by the Third Circuit case, there is ample room to reasonably argue that a state can regulate car title loans made to its residents while they were outside its borders. In *Weissmann*, the Third Circuit considered whether Pennsylvania's usury laws could be applied to TitleMax loans made outside of Pennsylvania, and, after conducting a full constitutional analysis, the Third Circuit concluded that application of Pennsylvania law to the loans did not violate the Commerce Clause. *Id.* at 234–35, 237–41 ("Pennsylvania may

6

Case 1:19-cv-00489-LCB-JLW   Document 398   Filed 05/09/23   Page 6 of 17

therefore investigate and apply its usury laws to TitleMax without violating the Commerce Clause."). That the Third Circuit has rejected TitleMax's interpretation of the dormant Commerce Clause as applied to its car title loans and state usury laws suggests a weakness in TitleMax's arguments. However, with respect to the issue before the court—whether the Final Award must be vacated because the Arbitrator manifestly disregarded the Commerce Clause—this Court does review whether the Arbitrator's legal conclusion was correct or not. The question for this Court is whether the Arbitrator refused to apply a clearly defined principle of law not subject to reasonable debate, and *Weissmann* demonstrates that TitleMax's proposed principle of law is, at minimum, subject to reasonable debate.[2]

Accordingly, the Court finds that the Arbitrator did not manifestly disregard the Commerce Clause by applying North Carolina law to Plaintiff's loan.

### B. The Arbitrator Did Not Manifestly Disregard North Carolina Law Regarding the Calculation of Damages

TitleMax also argues that the Arbitrator manifestly disregarded North Carolina law by conflating the frameworks for determining damages under North Carolina's CFA and UDTPA. (ECF No. 323 at 7–11.) Specifically, TitleMax argues that the Arbitrator improperly calculated the treble damages available to Plaintiff under the UDTPA by using a CFA penalty as the base of the treble damages calculation, rather than the "injury done" or "actual damages" suffered by Plaintiff. (*Id.*) TitleMax contends that by choosing the wrong base damages figure

---

[2] TitleMax has argued that the Arbitrator erred by citing *Weissman* as supporting the Final Award because, according to TitleMax, *Weissman* created a circuit split between the Third Circuit and the Fourth Circuit, and the Arbitrator should therefore have rejected *Weissman* in favor of *Carolina Trucks*. (ECF No. 323 at 6 n.4.) However, the existence of a circuit split only bolsters the point that reasonable minds can disagree about TitleMax's proposed legal principle, and, moreover, unlike decisions of this Court, decisions of the Arbitrator are not appealable to the Fourth Circuit.

7

to treble, the Arbitrator manifestly disregarded North Carolina law against duplicate recoveries of punitive damages. (*Id.*)

TitleMax has failed to satisfy its burden of showing that the Arbitrator manifestly disregarded the law. TitleMax's argument does nothing more than challenge the Arbitrator's interpretation of applicable law—something courts have consistently held will not warrant the vacating of an arbitration award. *See, e.g.*, *Interactive Brokers LLC v. Saroop*, 969 F.3d 438, 443 (4th Cir. 2020) ("When parties consent to arbitration, and thereby consent to extremely limited appellate review, they assume the risk that the arbitrator may interpret the law in a way with which they disagree." (quoting *Wachovia*, 671 F.3d at 478 n.5)); *SmartSky Networks, LLC v. Wireless Sys. Sols., LLC*, No. 20-CV-000834, 2022 WL 353801, at *5 (M.D.N.C. Feb. 7, 2022) ("A district court may not overturn an arbitration award 'just because it believes, however strongly, that the arbitrators misinterpreted the applicable law.'" (quoting *Wachovia*, 671 F.3d at 478 n.5)).

The CFA provides that a party in violation of the CFA "shall not collect, receive, or retain any principal or charges whatsoever with respect to the loan." N.C. Gen. Stat. § 53-166. The UDTPA provides that "if damages are assessed [for committing an unfair and deceptive trade practice] judgment shall be rendered . . . for treble the amount fixed by the verdict." N.C. Gen. Stat. § 75-16. Here, it is evident that the Arbitrator determined that damages should be everything that TitleMax collected from Plaintiff (pursuant to the CFA), trebled (pursuant to the UDTPA). The Arbitrator identified both N.C. Gen. Stat. § 53-166 and N.C. Gen. Stat. 75-16 as the basis for awarding damages. (ECF No. 303-1 at 2.) The Arbitrator specified that under the statutory language of N.C. Gen. Stat. § 53-166, damages

for a violation of the statute should include "both the principal and interest cha[r]ges," and she determined that this amount totaled $22,562.18 in this case. (*Id.* at 5.) The Arbitrator then multiplied that amount by three pursuant to the UDTPA to arrive at $67,686.54 in damages. (*Id.*) The Arbitrator specifically rejected TitleMax's argument that she should calculate damages by instead multiplying only excess interest amounts by three. (*Id.*)

It is not for this Court to determine whether the Arbitrator's interpretation of the CFA and its interplay with the UDTPA is correct. Under the "severely circumscribed" standard of review of arbitration awards, it is enough that the Arbitrator provided some basis for the assessment and calculations of damages. The Court finds that the Arbitrator did so here—the Arbitrator identified a damages figure based on a statute and then trebled that figure based on another statute. Even if TitleMax were correct that the Arbitrator picked the wrong base damages figure to treble and consequently awarded improper duplicative punitive damages, the Arbitrator's error would be merely a mistake of statutory interpretation, which is not grounds to vacate the award.

### C. The Arbitrator Did Not Manifestly Disregard the Statute of Limitations

TitleMax additionally argues that the Arbitrator "ignored and improperly failed to account for" the UDTPA's four-year statute of limitations. (ECF No. 303 at 11.) TitleMax argues that the statute of limitations on any loans it issued to Plaintiff began to run at the time the loans were executed, and that they did not restart under the continuing wrong doctrine. (*Id.*) Thus, TitleMax contends that any claim brought more than four years after the execution of a TitleMax loan should be time-barred. (*Id.* at 11–12.)

9

This argument amounts only to another disagreement with the Arbitrator's interpretation of North Carolina law.

"[The North Carolina] Supreme Court has recognized the continuing wrong doctrine as an exception to the general rule that a claim accrues when the right to maintain a suit arises." *Babb v. Graham*, 660 S.E.2d 626, 637 (N.C. Ct. App. 2008) (citing *Williams v. Blue Cross Blue Shield of N.C.*, 581 S.E.2d 415, 423 (N.C. 2003)). "When this doctrine applies, a statute of limitations does not begin to run until the violative act ceases." *Id.* (quoting *Williams*, 581 S.E.2d at 423). "[A] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Id.* (quoting *Williams*, 581 S.E.2d at 423). "In order to determine whether a continuing violation exists, [a court] examine[s] 'the particular policies of the statute of limitations in question, as well as the nature of the wrongful conduct and harm alleged." *Id.* (quoting *Williams*, 581 S.E.2d at 423).

Here, the Arbitrator plainly considered the UDTPA's statute of limitations, the continuing wrong doctrine, and the proper application of both to the circumstances of this case. The Arbitrator wrote:

> [N.C. Gen. Stat. §] 53-166(d) makes it a violation to 'collect, receive, or retain any principal or charges whatsoever with respect to' loans that violate the North Carolina Consumer Finance Act. [TitleMax] continues to violate 53-166(d) because it continues to retain the funds that it obtained from [Plaintiff]. Under the continuing wrong doctrine, a 'statute of limitations does not begin to run until the violative act ceases.' The statute of limitations therefore has not begun to run on the [Plaintiff's] North Carolina Consumer Finance Act claim.

(ECF No. 303-1 at 5 (footnote citations omitted).) The Arbitrator thus determined that the statute of limitations did not bar any of Plaintiff's claims in this case. (*Id.*)

10

Based on the above explanation, the Court finds that the Arbitrator recognized the issue, addressed the issue, and did not manifestly disregard the law.

### D. Plaintiff Is Entitled to Attorneys' Fees

Finally, Plaintiff requests that "additional attorneys' fees or some other remedy should be awarded for having to continue to file these Motions and Replies and then requiring the Court [to devote] significant resources to [enter] Orders and Judgment." (ECF No. 304 at 2.) In TitleMax's opposition brief, TitleMax does not address Plaintiff's request for attorneys' fees. (*See* ECF No. 323.)

"[W]ithout statutory authorization or contractual agreement between the parties, the prevailing American rule is that each party in federal litigation pays his own attorney's fees." *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 320 (4th Cir. 2003) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 263–64 (1975)). The burden is on the party seeking attorneys' fees to "identify [a] statutory or common law basis that would support" such an award. *Id.*

Here, Plaintiff identifies two authorities to support an award of attorneys' fees. (ECF No. 304 at 3.) First, Plaintiff argues that the North Carolina Revised Uniform Arbitration Act allows for an award of "reasonable attorneys' fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming . . . an award." (*Id.*); N.C. Gen. Stat. § 1-569.25(c). Under this standard, a court has discretion to award attorneys' fees to "promote[] the statutory policy of finality of arbitration awards" and discourage "all but the most meritorious challenges." *Astanza Design, LLC v. Giemme Stile, S.p.A.*, 220 F. Supp. 3d 641, 653 (M.D.N.C. 2016) (quoting § 1-569.25(c) cmt. 3). Alternatively,

11

Plaintiff argues that awarding attorneys' fees is within the Court's "inherent authority." (ECF No. 304 at 3 (citing *Int'l Chem. Workers Union (AFL-CIO), Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985)).) "[I]n narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980)). One such circumstance occurs "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . .'" *Roadway Express*, 447 U.S. at 766 (*quoting F. D. Rich Co. v. U. S. ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974)). A party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Chambers*, 501 U.S. at 46 (quoting *Hutto v. Finney*, 437 U.S. 678, 690 n.14 (1978)).[3]

The Court finds that the purposes of N.C. Gen. Stat. § 1-569.25(c) are served by awarding attorneys' fees to Plaintiffs.

TitleMax's objections to the arbitration awards are not meritorious. As discussed in this Order and the Court's previous Orders confirming other arbitration awards in this case, judicial review of an arbitration award "is among the narrowest known at law." *Padussis*, 842 F.3d at 339. "[E]ven a mistake of fact or misinterpretation of law by an arbitrator provides insufficient grounds for the modification of an award," and a reviewing court will not reevaluate evidence or review mistakes of law. *Apex Plumbing*, 142 F.3d at 194. Nevertheless, TitleMax advances arguments that amount only to contentions that the Arbitrator applied the law in ways that TitleMax disagreed with. These arguments do not warrant vacating the award,

---

[3] A court sitting in diversity may exercise this inherent power even when state law does not allow for such an award, since "neither of [*Erie's*] twin aims," to discourage forum-shopping and avoid inequitable administration of the laws, "is implicated by the assessment of attorney's fees as a sanction for bad-faith conduct." *Chambers*, 501 U.S. at 52.

12

and, given the history of this case, TitleMax was well aware of this when it decided to oppose Plaintiff's motion. This Court has previously considered and rejected two of the three arguments that TitleMax made here. (ECF Nos. 141 at 5–7 (finding that it was not a well-established principle of constitutional law that North Carolina cannot regulate TitleMax loans made to North Carolina residents while they were outside the boundaries of the North Carolina)); 171 at 5–7 (finding that TitleMax's argument about trebling damages without first subtracting the value of the original loan was "nothing more than [a] challenge [to] the Arbitrator's interpretation of applicable law").) Indeed, TitleMax's argument here regarding trebling of damages was copied and pasted from a prior filing. (*Compare* ECF No. 323 at 7–11, *with* ECF No. 163 at 9–14.) Moreover, this Court has previously awarded attorneys' fees against TitleMax in this case for making that specific non-meritorious argument instead of complying with an arbitrator's award. (ECF No. 171 at 8–9.)

For the foregoing reasons, the Court in its discretion will award attorneys' fees.

Regarding the amount of such fees, Plaintiff's attorney has filed a declaration stating that he spent 3 hours on this matter since the award of the arbitrator and requesting a rate of $350 per hour for that time, which he represents is the customary hourly rate in this market for attorneys of similar experience. (ECF No. 332-1 ¶¶ 5–6.) Three hours at $350 per hour totals $1,050.

TitleMax having not mentioned any objections in its opposition brief and the Court having considered the record in this case, Plaintiff's declaration, the course of this litigation, and the factors affecting the lodestar analysis set out in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 & n.28 (4th Cir. 1978), the Court finds that Plaintiff's requested attorney's fees for 3 hours

13

at the rate of $350 per hour is reasonable. The Court has previously found that $350 per hour is a reasonable rate for Plaintiff's counsel's work dealing with TitleMax's meritless oppositions to arbitration awards in this case given the market rate in this area. (ECF No. 249 at 4.) Additionally, while Plaintiff's counsel's declaration could be clearer regarding the precise breakdown of the time that he spent confirming the award, (ECF No. 332-1 ¶ 7), in light of the amount of time that this Court has spent on this matter and TitleMax's opposition, this Court finds that 3 hours is a reasonable amount of time for Plaintiff's counsel to take in obtaining confirmation of the Final Award.

### E. Additional Remedy Sought

Finally, with respect to Plaintiff's request for "some other remedy . . . for having to continue to file these Motions and Replies and then requiring the Court [to devote] significant resources to [enter] Orders and Judgment," (ECF No. 304 at 2), the Court cautions TitleMax and its attorneys that Rule 11 of the Federal Rules of Civil Procedure states that an attorney who presents a paper to a court certifies that to the best of his or her knowledge "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(1) & (2). TitleMax's pattern of resisting every arbitration award entered against it by repeating, verbatim, arguments which this Court has deemed meritless and has previously rejected appears to suggest an improper purpose.[4] Several courts have recognized that "attempt[s] to

---

[4] TitleMax claims in its opposition brief that it "recognizes that this Court has previously denied [its] motions to vacate arbitration awards," but contends that it submitted its present opposition "to

salvage arbitration losses through litigation that has no sound basis in the law" justify "consider[ing] imposing sanctions in appropriate cases." *B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 914 (11th Cir. 2006), *abrogated on other grounds by Frazier v. CitiFinancial Corp.*, 604 F.3d 1313, 1321 (11th Cir. 2010).[5]

Accordingly, this Court hereby places TitleMax on notice that what appears to be its litigation strategy of opposing confirmation of arbitration awards routinely using meritless arguments that this Court has already considered and rejected may result in imposition of Rule 11 sanctions.

For the reasons stated herein, the Court enters the following:

---

preserve its appellate rights on all matters referenced herein." (ECF No. 323 at 4 n.3.) The record of this case does not support that assertion. During the course of this litigation, TitleMax has filed only one appeal (which was consolidated with an appeal from a companion case). (*See* ECF Nos. 171; 172; 178; 183; 184.) Specifically, TitleMax appealed a Memorandum Opinion and Order and an accompanying Judgment that rejected the argument about improper trebling of damages that TitleMax repeated almost verbatim in its present opposition. (*See* ECF No. 171 at 4–7.) TitleMax moved this Court to certify its Judgment as final for the purposes of facilitating the appeal, (ECF Nos. 176; 177), and this Court granted that motion, (ECF No. 248). However, TitleMax then voluntarily dismissed its consolidated appeal a few days after Plaintiffs-Appellees filed their response brief. (*See Goines v. TitleMax of Va., Inc.*, No. 22-2005, ECF Nos. 30–35 (4th Cir.).) Under the circumstances of this case, this behavior does not appear consistent with a sincere desire for the Fourth Circuit to pass on TitleMax's contentions.

[5] *Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1028 (7th Cir. 2013) ("[C]hallenges to commercial arbitral awards bear a high risk of sanctions. Attempts to obtain judicial review of an arbitrator's decision undermine the integrity of the arbitral process." (citation omitted)); *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1279 (10th Cir. 2005) (finding that district court did not abuse its discretion in imposing sanctions where "given the narrow standard of review [for arbitration awards], the arguments presented . . . were completely meritless . . . [and] [the] attorneys need not have filed lengthy briefs at every stage of the arbitration and court proceedings in order to preserve . . . arguments for appeal."); *Manning v. Smith Barney, Harris Upham & Co.*, 822 F. Supp. 1081, 1083–84 (S.D.N.Y. 1993) ("[S]anctions are peculiarly appropriate in the context of a challenge to an arbitration award which appears to be a largely dilatory effort."); *see also CarMax Auto Superstores, Inc. v. Sibley*, 767 F. App'x 462, 464 (4th Cir. 2019) (unpublished) ("A district court may sanction a party for attempting to relitigate issues already decided by the court.").

# ORDER

**IT IS THEREFORE ORDERED** that Plaintiff Annette Ridgeway's Motion to Enforce Award and Enter Judgment, (ECF No. 303), is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant TitleMax of South Carolina, Inc., is **ORDERED** to pay to Plaintiff Annette Ridgeway damages of $67,686.54 as set forth in the Arbitrator's Final Award, (ECF No. 303-1 at 6). This sum is due and payable immediately upon filing of the Judgment.

**IT IS FURTHER ORDERED** that Defendant TitleMax of South Carolina, Inc., is **ORDERED** to pay to Plaintiff pre-award prejudgment interest on the compensatory portion of the damages award (that is, on the $22,562.18 attributable to the amounts that TitleMax collected from Plaintiff) as set forth in the Arbitrator's Final Award. This prejudgment interest accrued at the North Carolina legal rate of eight percent from April 2, 2019, until the date of entry of the Judgment. This pre-award prejudgment interest is due and payable immediately upon filing of the Judgment.

**IT IS FURTHER ORDERED** that Defendant TitleMax of South Carolina, Inc., is **ORDERED** to pay to Plaintiff post-award prejudgment interest on the remainder of the damages award (that is, on the $45,124.36 attributable to UDTPA trebling) as set forth in the Arbitrator's Final Award. This prejudgment interest accrued at the North Carolina legal rate of eight percent from February 28, 2023, until the date of entry of the Judgment. This post-award prejudgment interest is due and payable immediately upon filing of the Judgment.

**IT IS FURTHER ORDERED** that Defendant TitleMax of South Carolina, Inc., is **ORDERED** to pay to Plaintiff attorney's fees of $1,050, which shall be due and payable immediately upon filing of the Judgment.

**IT IS FURTHER ORDERED** that Defendant TitleMax of South Carolina, Inc., is **ORDERED** to pay to Plaintiff post-judgment interest on the total of all sums set forth in the Judgment (that is, the sum of: the $67,686.54 awarded by the Final Award, plus the pre-award pre-judgment interest owed on the $22,562.18 compensatory portion of the Final Award, plus the post-award pre-judgment interest owed on the $45,124.36 UDTPA portion of the Final Award, plus the $1,050 of attorney's fees) at the federal statutory rate that shall accrue until all sums set forth in the Judgment are paid in full.

Judgment will be entered simultaneously with this Order.

This, the 9th day of May 2023.

/s/Loretta C. Biggs
United States District Judge