

# AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration between

Case Number: 01-22-0002-5141

Latonia Boyd
    Claimant
-vs-
TitleMax of Virginia, Inc.
d/b/a Titlemax
    Respondent

## AWARD OF ARBITRATOR

I, Jonathan B. Gilbert, the UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, each represented by counsel, at an evidentiary hearing held on April 12, 2023, do hereby issue this AWARD as follows:

### Hearing

The following documents were admitted into evidence and considered:

Claimant

| Exhibit | 1 | Customer Applications |
|---|---|---|
| | 2 | Loan Agreements |
| | 3 | Transaction History |
| | 4 | Lien Recording Application |
| | 5 | Affidavit of Jessica Crowley |
| | 6 | Declaration of Darren Medley |
| | 7 | Deposition of Taylor Pack |
| | J | Declaration of Andrew Brown |

Respondent

| Exhibit | 1 | Customer Applications |
|---|---|---|
| | 2 | Loan Agreements |
| | 3 | Vehicle Titles |
| | 4 | Transaction History |
| | 5 | Title Loan Notices |
| | 6 | Lien Application (5/19/2015) |

Case Number: 01-22-0002-5141      1

| | 7 | Consent to Electronic Documentation |
|---|---|---|
| | 8 | Default Notice |

Note: Both parties submitted court and arbitration decisions which were marked as "exhibits" and are not listed above. In addition, both parties submitted written closing arguments with citations of authority, which were also considered.

The following witnesses testified under oath: Latonia Boyd, Christopher Dunn, Ansley Trapani.

## Decision

Ms. Boyd was a North Carolina resident who took out three vehicle title loans from the TitleMax store in Danville, Va. The first loan was made August 4, 2014 and repaid in full on February 16, 2015. The second loan was made May 19, 2015 and repaid in full on March 3, 2016. Loan number three was made on April 11, 2017 and repaid in full on February 23, 2018. In each case TitleMax recorded a title lien with the State of North Carolina and the transactions were otherwise uneventful. The other significant common element is that each loan agreement stipulates that Virginia law governs the contractual relationship, which is important because the interest rate charged is illegal in North Carolina but allowable in Virginia. Any extended discussion or consideration on my part of what this means was obviated by the decision in *Troublefield v. AutoMoney, Inc.* (22-NCCOA-497, July 19, 2022). Also, in my opinion, *Troublefield* is consistent with subsection (b) of the Restatement (Second) of Conflict of Laws § 187. The agreement to follow Virginia law is unenforceable. What remains is consideration of the facts of this case in the context of N.C. Gen. Stat. § 53-190.

The underlying lawsuit which resulted in this arbitration was filed on April 4, 2019. According to Claimant's Ex. 3, the first loan was fully repaid on February 16, 2015. I agree with TitleMax that any recovery related to the first loan is barred by the four-year statute of limitations. Loans two and three are a different story.

The only direct evidence presented regarding the transactions at issue was the documents referenced above and the testimony of Ms. Boyd. All the other witnesses (in person or otherwise) talked about policies and practices and no one had any information about Ms. Boyd's loans. In particular, Christopher Dunn and Ansley Trapani offered no information regarding the Boyd loans or the operations of the Danville store.

Ms. Boyd said that she initiated contact with TitleMax regarding the first loan, but that the second two were made after TitleMax employees in Danville contacted her advertising a lower interest rate. Ms. Trapani said that TitleMax routinely follows up with existing customers to solicit further business, but employees are not supposed to contact North Carolina residents. Although Ms. Boyd's version of events is not consistent with TitleMax corporate policy, it makes sense and is credible.

I find that the calls to Ms. Boyd constituted soliciting in North Carolina. This, coupled with the filing of a lien with the state, brings the loans within the scope of the North Carolina statute:

> N.C.G.S. 53-190(b): if any lender or agent of a lender who makes loan contracts outside this State in the amount or of the value of fifteen thousand dollars ($15,000) or less, comes into this State to solicit or otherwise conduct activities in regard to such loan contracts, then such lender shall be subject to the requirements of this Article.

Under North Carolina case law, TitleMax also violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. §75.1.1 *et seq.*, which requires treble damages:

> Moreover, our Supreme Court has previously concluded "violations of statutes designed to protect the consuming public and violations of established public policy may constitute unfair and deceptive practices." *Stanley v. Moore*, 339 N.C. 717, 723, 454 S.E.2d 225, 228 (1995). Indeed, this Court has consistently held defendants who offer usurious loans to residents of North Carolina commit unfair and deceptive trade practices as a matter of law. *See State of N.C. v. NCCS Loans*, 174 N.C.App. 630, 641, 624 S.E.2d 371, 378 (2005); *Odell v. Legal Bucks, LLC*, 192 N.C.App. 298, 320, 665 S.E.2d 767, 781 (2008).

*Wall v. AutoMoney, Inc.*, 2022 NCCOA 498 (N.C. App. 2022), pg. 20.

Ms. Boyd also asks for an award of attorney's fees and interest, citing ch. 75-16.1:

> § 75-16.1. Attorney fee. In any suit instituted by a person who alleges that the defendant violated G.S. §75-1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party, such attorney fee to be taxed as a part of the court costs and payable by the losing party, upon a finding by the presiding judge that: (1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit; or (2) The party instituting the action knew, or should have known, the action was frivolous and malicious. (1973, c. 614, s. 1; 1983, c. 417, s. 2.)

Claimant argues: "Likewise, the Arbitrator should award attorney's fees pursuant to 75-16.1 as both the conduct was willful and their [sic] has been an unwarranted refusal to settle the matter. TitleMax made no offers at all until the month of the hearing (after four years of litigation and two hearings had been postponed." Both parties focus on the course of settlement negotiations as the issue. The important fact is that settlement discussions did take place and there is no discussion or proof of any willful pattern of delay or obstruction during the course of the litigation. See, for example *Envirosafe Paints, Inc. v. Conklin*, No. COA04-1234 (NC 8/16/2005) (N.C. 2005):

> The 21 August 2003 order found that defendant failed to serve a response to plaintiffs' request for production of documents and failed to offer any justification for his failure to respond. Additionally, defendant failed to appear for the mediation conference. These actions display defendant's "unwarranted refusal to fully resolve the matter."

I find that TitleMax did not engaged in any "unwarranted refusal ... to fully resolve the matter which constitutes the basis of such suit." I also doubt that TitleMax acted "willfully" when the Danville employees made these loans, given its stated corporate policy against soliciting existing customers who live in North Carolina. Finally, underlying Claimant's argument (here and with respect to the "continuing tort") is an assumption that TitleMax should have immediately refunded all of Ms. Boyd's payments without investigating the facts or forwarding the several legal arguments made. If there were a statute in North Carolina that prohibited all small high-interest loans to its residents without regard to the circumstances, Claimant would be right. As far as I know, no such statute exists. Claimant's request for interest and attorney's fees is denied.

Claimant dropped her original request for punitive damages. According to Claimant's Exhibit 2, the total amount she paid to TitleMax for the two loans is $2,445.60. Claimant is awarded three times that amount, or the sum of $7,336.80, against Respondent.

The administrative fees of the American Arbitration Association (AAA) totaling $2,400.00 shall be borne as incurred, and the compensation of the arbitrator totaling $5,000.00 shall be borne as incurred.

The above sums are to be paid on or before thirty (30) days from the date of this Award.

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

*Jonathan B. Gilbert*

Jonathan B. Gilbert
Arbitrator

May 5, 2023